**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

Micheli & Shel, LLC, *individually and on behalf of others similarly situated*,

Plaintiffs,

v.

GRUBHUB INC., GRUBHUB INC. d/b/a SEAMLESS, SEAMLESS NORTH AMERICA, LLC, UBER TECHNOLOGIES INC., UBER EATS, POSTMATES LLC, and DOORDASH INC.,

Defendants.

Case No.:

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

---

Plaintiff Micheli & Shel, LLC ("Micheli & Shel" or "Plaintiff"), brings this class action on behalf of itself and those similarly situated (the "Class"), by and through the undersigned attorneys, against Defendants GrubHub Inc. ("Grubhub"), GrubHub Inc. d/b/a Seamless. Seamless North America LLC ("Seamless"), Postmates, LLC ("Postmates"), Uber Technologies Inc. ("Uber"), Uber Eats ("Uber Eats") and DoorDash Inc. ("DoorDash") (collectively, "Defendants"). The allegations are made on information and belief, and pursuant to investigation by Plaintiff's counsel.

## NATURE OF THE CASE

1.     On March 7, 2020, due to the widespread COVID-19 pandemic, Governor Andrew Cuomo declared a state of emergency for the entire State of New York.

2.     On March 16, 2020, Governor Cuomo issued Executive Order Number 202.3 prohibiting restaurants and bars in the State of New York from serving food or beverages on-premises due to the spread of COVID-19 and limiting orders to takeout or delivery only.

3.      Effective      March      22,      2020,      Governor      Cuomo's "New York on Pause" Program began requiring all non-essential businesses to close in-office functions.

4.      In the following days, weeks and months, as part of Governor Cuomo's "New York State on Pause" executive order, New York City residents were encouraged to stay home to prevent the spread of COVID-19. Additionally, restaurants and bars were limited to providing take-out and delivery services only creating an unprecedented demand for delivery services.

5.      On May 13, 2020, the New York City Counsel, in an effort to curb the imbalance of power between small locally owned restaurants and powerful national third-party delivery companies, passed emergency legislation placing a cap on the exorbitant delivery fees that third-party delivery companies such as Defendants were charging restaurants for their services.

6.      Effective June 2, 2020, Local Law No. 52 of 2020, Council Int. No. 1908-B of 2020 (the "Delivery App. Legislation") placed a twenty percent (20%) cap on all fees that Defendants could charge their customers with a specific cap of fifteen percent (15%) on all fees charged for delivery and a five percent (5%) cap for any additional fees including for marketing, credit card processing or any other fees.

7.      The Delivery App. Legislation was amended pursuant to Local Law No. 88 of 2020, Council Int. No. 2054-A of 2020 (the "Amended Delivery App. Legislation"), effective September 14, 2020, to allow for "pass-through" costs, such as credit card fees, to be charged to the restaurant above the fifteen percent (15%) and five percent (5%) fee caps.

8.      Despite the passage of the the Delivery App. Legislation and the Amended Delivery App. Legislation, Defendants proceeded to continue their prior practices of bleeding New York

City's restaurants dry while collecting millions of dollars at their expense in blatant disregard for the laws of the City of New York.

9.     In fact, despite the passing of the Delivery App. Legislation and the Amended Delivery App. Legislation, Plaintiff and the Class members, continued to be charged in excess of the fifteen percent (15%) delivery fee cap and five (5%) cap on all additional fees.

10.     Notably, these fees are in addition to the fees Defendants' also collect from the individuals placing the delivery orders. Put in another way, Defendants continue to profit on both ends of the transaction, yet nevertheless still refused to abide by the mandated fee caps.

11.     Defendants restructured their fees to appear to comply with the laws, but in actuality continued to charge Plaintiff and the class members above the permitted fee caps. In some cases, for example, Defendants charged a flat twenty percent (20%) service fee without clearly identifying what the fee was for. This ambiguity violates both the delivery fee and the additional fee cap as neither fee may be twenty percent (20%) under the law.

12.     Other Defendants disingenuously appeared to comply with the cap by keeping their delivery fee under the fifteen percent (15%) fee cap, charging thirteen percent (13%) or fourteen and half percent (14.5%), but then overcharged Defendants with respect to the category of "other" non-delivery fees. These other fees were charged for several categories of fees each individually under the five percent (5%) threshold, but cumulatively added up to well over the five percent (5%) threshold.

13.     Upon information and belief, Defendants also fraudulently inflated their credit card processing fees in order to further extort fees from Plaintiff and the Class members.

14.     This Class Action seeks to hold Defendants accountable for their predatory behavior on businesses most impacted by the COVID 19 Pandemic. The Defendants extorted the

Plaintiff and other similarly situated Class members that were desperately dependent on their delivery services during a time when the restaurant industry was experiencing a historic decline in sales and the largest disruption the restaurant industry had faced in NYC since Hurricane Sandy in 2012 and the September 11, 2001, terrorist attacks.

## JURISDICTION AND VENUE

15.     The Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2) and (5) because this is a class action in which: (i) the proposed Class consists of more than 100 persons or entities; (ii) the amount in controversy exceeds the sum or value of $5,000,0000 in the aggregate; and (iii) at least some of the members of the proposed Class have different citizenship from Defendants.

16.     This Court has personal jurisdiction over Defendants because Defendants are authorized to do business and regularly conduct business in this District, and a substantial number of the events giving rise to the claims alleges herein took place in New York.

17.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the alleged claims occurred in this District, Defendants are authorized to conduct business in this District, and Defendants regularly conduct and transact business in this District and are therefore subject to personal jurisdiction in this District.

## PARTIES

18.     Micheli & Shel is a limited liability company existing and operating in good standing under the law of the State of New York with its principal place of business located in New York County, New York. Micheli & Shel operates an Israeli-style bakery located in Manhattan's Lower East Side neighborhood.

19.     Upon information and belief, Defendant GrubHub is a corporation organized and existing under the law of the State of Delaware with its principle place of business located at 111 W. Washington Street, Suite 2100, Chicago, Illinois 60602. GrubHub is the parent corporation of Seamless and, upon information and belief, also separately operates as doing business as Seamless. GrubHub is authorized to do business in the State of New York.

20.     Upon information and belief, Defendant Seamless is a limited liability company organized and existing under the law of the State of Delaware with its principle place of business located at 1065 S. Avenue of the Americas, New York, NY 10018.  Seamless is a subsidiary of GrubHub and is authorized to do business in the State of New York.

21.     Upon information and belief, Defendant Postmates is a limited liability company organized and existing under the law of the State of Delaware with its principle place of business located at 425 Market Street, Suite 8, San Francisco, CA.  Postmates is a wholly owned subsidiary of Uber and is authorized to do business in the State of New York.

22.     Upon information and belief, Defendant Uber is a corporation organized and existing under the law of the State of Delaware with its principle place of business located at 1455 Market State, Suite 400, San Francisco, California 94103.  Uber is the parent corporation of Uber Eats. Uber is authorized to do business in the State of New York.

23.     Upon information and belief, Defendant Uber Eats is a wholly owned subsidiary of Uber with its principal place of business located at 1455 Market State, Suite 400, San Francisco, California 94103 and conducts substantial business in the State of New York.

24.     Upon information and belief, Defendant DoorDash is a corporation organized and existing under the law of the State of Delaware with its principle place of business located at 901

Market Street 6ᵗʰ Fl., San Francisco, CA 94103.  DoorDash is authorized to do business in the State of New York.

## FACTUAL ALLEGATIONS

*THE PANDEMIC'S EFFECT ON*
*NEW YORK CITY'S RESTAURANTS*

25.     On January 21, 2020, the first U.S. case of the COVID-19 virus was confirmed by the Center of Disease Control and Prevention.[1]

26.     On January 30, 2020, the World Health Organization declared the COVID-19 virus a "public health emergency of international concern."[2]

27.     On March 7, 2020, Governor Cuomo issued Executive Order Number 202 declaring a state of emergency for the entire State of New York.[3]

28.     On March 16, 2020, Governor Cuomo issued Executive Order Number 202.3 prohibiting restaurants and bars in the State of New York from serving food or beverages on-premises due to the spread of COVID-19.[4]

29.     On March 22, 2020, Governor Cuomo's executive order "New York State on PAUSE" required all non-essential businesses to close in-office personnel functions to help stop the infection rate of the COVID-19 virus.[5]

---

[1] *See* https://www.cdc.gov/media/releases/2020/p0121-novel-coronavirus-travel-case.html (last accessed on May 9, 2021).
[2] *See* https://www.cnn.com/2020/01/30/health/coronavirus-who-public-health-emergency-international-concern-declaration/index.html (last accessed on May 9, 2021).
[3] *See* https://www.governor.ny.gov/news/no-202-declaring-disaster-emergency-state-new-york (last accessed on May 9, 2021).
[4] *See* https://www.governor.ny.gov/news/no-2023-continuing-temporary-suspension-and-modification-laws-relating-disaster-emergency (last accessed on May 9, 2021).
[5] *See* https://www.governor.ny.gov/news/governor-cuomo-issues-guidance-essential-services-under-new-york-state-pause-executive-order (last accessed on May 9, 2021).

30.     The "New York State on PAUSE" executive order also encouraged New York City's residents to stay home to prevent the spread of COVID-19 and limited restaurants and bars to providing take-out and delivery services only.

31.     According to a survey conducted by the New York State Restaurant Association in April 2020, restaurant sales declined by seventy-nine percent (79%) compared to the same period in 2019, approximately eighty percent (80%) of restaurant workers lost their jobs and fifty-one percent (51%) of restaurant operators moved to takeout and delivery only business models since the start of the pandemic.[6]

32.     On May 13, 2020, the New York City Council, in an effort to curb the already powerful influence of third-party delivery companies, passed emergency legislation placing a cap on the delivery fees that third-party delivery companies such as Defendants could charge restaurants for their services.

33.     Effective June 2, 2020, the Delivery App. Legislation prohibited third-party food delivery services from charging restaurants a fee of more than fifteen percent (15%) of the purchase price of each order, exclusive of taxes, for providing delivery services, and a fee of more than five percent (5%) per order for all other types of charges.

34.     On June 22, 2020, NYC launched its Open Restaurants program allowing restaurants to open for outdoor dining and to increase the number of customers by expanding on to sidewalks, parking spaces and courtyards.

---

[6] *See*
https://www.nysra.org/uploads/1/2/1/3/121352550/restaurant_industry_impact_survey___new_york_state__2_.pdf
(last accessed on May 9, 2021).

35.      By August 2020, six months since the start of the pandemic, approximately 1000 bars and restaurants had permanently closed in New York City.[7]

36.      Effective September 14, 2020, the Amended Delivery App. Legislation amended the Delivery App. Legislation to allow for "pass-through" charges, such as credit card fees to be charged to the restaurant beyond the fifteen percent (15%) and five percent (5%) fee caps. The amendment was not retroactive.

37.      On September 30, 2020, indoor dining in New York City was allowed to resume with a 25% occupancy limit.[8]

38.      On November 13, 2020, with approximately a half-million of confirmed COVID-19 cases, NYC restaurants were required to stop indoor and outdoor service at 10 p.m. but were allowed to continue takeout and delivery after the curfew.[9]

39.      On November 21, 2020, indoor dining restrictions were put back into effect for New York City restaurants.[10]

40.      It was not until February 12, 2021, that indoor dining was allowed to reopen in New York City at twenty-five percent (25%) capacity.[11]

---

[7] *See* https://ny.eater.com/2020/8/12/21336334/nyc-closings-lookback-coronavirus-pandemic-2020 (last accessed on May 9, 2021).

[8] *See* https://www.governor.ny.gov/news/governor-cuomo-announces-indoor-dining-new-york-city-allowed-resume-beginning-september-30-25#:~:text=September%209%2C%202020-,Governor%20Cuomo%20Announces%20Indoor%20Dining%20in%20New%20York%20City%20Allowed,with%2025%20Percent%20Occupancy%20Limit&text=to%20Encourage%20Compliance-,Governor%20Andrew%20M.,a%2025%20percent%20occupancy%20limit (last accessed on May 9, 2021).

[9] *See* https://www.nbcnewyork.com/news/coronavirus/new-ny-nj-cases-soar-nearly-50-in-a-week-u-s-could-hit-20-million-cases-by-christmas/2716714/ (last accessed on May 9, 2021).

[10] *See* https://www.ny1.com/nyc/all-boroughs/coronavirus-blog/2020/11/19/city-restaurant-owners-brace-for-another-shutdown-of-indoor-dining (last accessed on May 9, 2021).

[11] *See* https://www.governor.ny.gov/news/governor-cuomo-announces-new-york-city-indoor-dining-can-reopen-early-february-12 (last accessed on May 9, 2021).

41.     On March 19, 2021, nearly a year after the State of New York declared a state of emergency, NYC indoor dining capacity finally expanded to fifty percent (50%) capacity.[12]

42.     On May 7, 2021, Governor Cuomo announced that indoor dining in NYC will expand to seventy-five percent (75%).[13]

43.     On May 19, 2021, NYC restaurants will finally be able reopen at full capacity on provided that customers remain six feet apart.[14]

*THE DEFENDANTS*

44.     In an unprecedented time, New York City's restaurants were forced to fight for their existence reporting massive layoffs and substantial dips in revenue as a result of the pandemic.

45.     Plaintiff, and the Class members, leaned on Defendants' third-party delivery services to maximize sales and marketing as a lifeline to their businesses as approximately half of New York City's restaurants moved to online platforms for delivery and takeout services.

46.     As expected, third-party platforms for delivery and takeout experienced an extreme increase in order volume during the COVID-19 pandemic.

---

[12] *See* https://www.governor.ny.gov/news/governor-cuomo-and-governor-murphy-announce-indoor-dining-new-york-city-and-new-jersey-will (last accessed on May 9, 2021).

[13] *See* https://www.governor.ny.gov/news/governor-cuomo-announces-new-york-city-indoor-dining-will-expand-75-percent-capacity-beginning - :~:text=April 30, 2021-,Governor Cuomo Announces New York City Indoor Dining Will Expand,Percent Capacity Beginning May 7&text=State Health Guidance-,Governor Andrew M.,capacity beginning Friday, May 7 (last accessed on May 9, 2021).

[14] *See* https://gothamist.com/news/new-york-reopen-without-most-capacity-restrictions-may-19th (last accessed on May 9, 2021).

47.     Defendants represent the four major third-party delivery platforms in New York City.[15] As of April 2021, Grubhub/Seamless represented 37% of New York City's sales, DoorDash represented 34%, Uber Eats with 28% and Postmates (also owned by Uber) with 1%.[16]

48.     Grubhub (which also owns and operates Seamless) the largest delivery platform operating in New York City, reported tremendous revenue growth of $363 million in the first quarter of 2020, no doubt at the expense of struggling restaurants nationwide.[17] By the third quarter of 2020, ending on September 30, 2020, Grubhub reported a fifty-three percent (53%) revenue growth reporting $494 million, which is a 53% year-over-year increase from $322 million in the same period in 2019.[18] Grubhub's success has continued into 2021 with reports of a fifty-two percent (52%) revenue growth in the first quarter reporting revenues of $551 million.[19]

49.     DoorDash is the second largest meal delivery platform and earned a 34% share of New York City's sales in March 2021.[20] DoorDash reported first quarter revenues of 2020 to be $362 million, second quarter revenues of $675 million, third quarter revenues of $879 million and fourth quarter revenues of 2020 to be $970 million.[21] DoorDash reported an enormous revenue increase of 198% from the first quarter of 2020 with first quarter revenues of the first quarter of 2021 measuring an astonishing amount of $1.1 billion.

---

[15] *See* "Minutes of the Proceedings for the Stated Meeting of Wednesday, May 13, 2020," The New York City Council, May 13, 2020, New York.

[16] *See* Liyin Yeo, "Which company is winning the restaurant food delivery war?" available at https://secondmeasure.com/datapoints/food-delivery-services-grubhub-uber-eats-doordash-postmates/

[17] *See* https://media.grubhub.com/media/News/press-release-details/2020/Grubhub-Reports-First-Quarter-2020-Results/default.aspx (last accessed on May 9, 2021).

[18] *See* https://media.grubhub.com/media/News/press-release-details/2020/Grubhub-Reports-Third-Quarter-2020-Results/default.aspx (last accessed on May 9, 2021).

[19] *See* *https://media.grubhub.com/media/News/press-release-details/2021/Grubhub-Reports-First-Quarter-2021-Results/default.aspx* (last accessed on May 9, 2021).

[20] *See* https://secondmeasure.com/datapoints/food-delivery-services-grubhub-uber-eats-doordash-postmates/ (last accessed on May 9, 2021).

[21] *See* https://s22.q4cdn.com/280253921/files/doc_financials/2020/q4/Investor-letter_2020_Q4_FINAL-(2).pdf (last accessed on May 9, 2021).

50.     Uber Eats and Postmates are wholly owned subsidiaries of Uber. Uber Eats is the

third largest delivery application serving New York City earning 28% of delivery sales in March

2021.[22] Postmates trails with 1% of New York City's delivery sales as of March 2021.[23] Uber

Eats reported a total revenue of $4.8 billion in 2020.[24] Postmates generated $500 million in

revenue in 2019 and was acquired by Uber in 2020 for $2.65 billion making a reported 5 million

deliveries.[25]

*DEFENDANTS FLAGRENTLY VIOLATED*
*THE DELIVERY APP. LEGISLATION AND*
*THE AMENDED DELIVERY APP. LEGISLATION*

51.     While 2020 (and continuing into 2021) proved to be a crushing year full of

extreme financial hardship for Plaintiff and the restaurant industry, Defendants each reported

2020 as the most profitable year yet and appear to show signs of being on a path to topping

2020's revenue in 2021.

52.     Despite the protections first put in place by the Delivery App. Legislation and

then the Amended Delivery App. Legislation, Defendants nevertheless acted brazenly as though

they were above the law by continuing to bleed restaurants dry by taking advantage of Plaintiff's

reliance on Defendants' services and charge above the permissible twenty percent (20%) fee

threshold.

53.     The Delivery App. Legislation states:

(a) It shall be unlawful for a third-party food delivery service to charge a food
service establishment a delivery fee that totals more than 15% of the purchase
price of each online order…. (b) It shall be unlawful for a third-party food delivery
service to charge a food service establishment any fee or fees other than a delivery

---

[22] *See* https://secondmeasure.com/datapoints/food-delivery-services-grubhub-uber-eats-doordash-postmates/ (last accessed on May 9, 2021).
[23] *See* https://secondmeasure.com/datapoints/food-delivery-services-grubhub-uber-eats-doordash-postmates/ (last accessed on May 9, 2021).
[24] *See* https://www.businessofapps.com/data/uber-eats-statistics/ (last accessed on May 9, 2021).
[25] *See* https://www.businessofapps.com/data/postmates-statistics/ (last accessed on May 9, 2021).

fee for the use of their service greater than 5% of the purchase price of each online order. Any fees or other charges from a third-party food delivery service to a food service establishment beyond such maximum 5% fee per order, and a delivery fee collected pursuant to subdivision (a) of this section, are unlawful.

NYC Local Law No. 52 of 2020 (Int. No. 1908-B).

54.     The Delivery App. Legislation defines the term "delivery fee" as follows:

[A] fee charged by a third-party food delivery service for providing a food service establishment with a service that delivers food from such establishment to customers. The term does not include any other fee that may be charged by a third-party food delivery service to a food service establishment, such as fees for listing or advertising the food service establishment on the third-party delivery service platform or fees related to processing the online order.

NYC Local Law No. 52 of 2020 (Int. No. 1908-B).

55.     The Amended Delivery App. Legislation amended the Delivery App. Legislation as follows:

It shall be unlawful for a third-party delivery service to charge a food service establishment any fee [or fees] other than a delivery fee for the use of their service greater than 5% of the purchase price of each online order, *provided that such cap shall not apply to a credit card fee that is charged to the third-party food delivery service and is charged in the same amount by the third-party food delivery service to such food service establishment*. [Any fees or other charges from a third-party food delivery service to a food service establishment beyond such maximum 5% fee per order, and a delivery fee collected pursuant to subdivision a of this section, are unlawful].

NYC Local Law No. 88 of 2020 (Int. No. 2054-A) (emphasis in original).

56.     Defendants violated the Delivery App. Legislation and the Amended Delivery App. Legislation by continuing to charge Plaintiff in excess of the caps set forth in the legislation.

57.     Following the enactment of the Delivery App. Legislation, Uber Eats charged Plaintiff a flat twenty percent (20%) "Uber Service Fee" of the online order. The monthly invoice presented to Plaintiff showed the flat 20% "Uber Service Fee" was the only fee charged, and other fee categories listed on the invoice such as "Delivery Network Fee, Order Processing Fee, Dispatch Fee, and Service Fee %" were recorded as no fee or $0.

58.     Following the enactment of the Amended Delivery App. Legislation, Uber Eats charged Plaintiff an additional flat 2.3% "Order Processing Fee" (as presumably allowed) on top of its flat ambiguous twenty percent (20%) "Uber Service Fee".

59.     The Delivery App. Legislation and the Amended Delivery App. Legislation is clear. Defendants were not permitted to charge more than 15% for any delivery fee and more than 5% of any other fee. Uber Eats' flat 20% "Uber Service Fee" clearly violates the unambiguous cap set forth in the statute.

60.     Grubhub also blatantly violated the Delivery App. Legislation by keeping its fees for deliveries within the fifteen percent (15%) cap, but exceeding the five percent (5%) cap with respect to the "other" fees as required by the legislation by charging for both marketing and order processing fees resulting in total fees charged to Plaintiff to be in excess of the twenty (20%) cap.

61.     Grubhub deceitfully charged two separate fees (both under the 5% cap) for marketing and order processing services, appearing to keep all "other" fees under the five percent (5%) cap, yet taken together, the marketing and order processing fees yielded a combined fee that in total exceeded the allowed five percent (5%) threshold and in some cases reached combined fees as high as 8.7%.

62.     Even after the enactment of the Amended Delivery App. Legislation, Grubhub still could not help itself and continued to charge Plaintiff in exceed of the caps set forth in the legislation by overcharging Plaintiff in excess of the five percent (5%) fee cap for non-delivery fees in addition to credit card processing and delivery fees.

63.     Postmates also blatantly violated caps imposed by the Delivery App. Legislation by continuing to charge Plaintiff fees in some cases as high as twenty-seven and a half percent

(27.5%) of the total order. These practices did not change following the enactment of the Amended Delivery App. Legislation as Postmates set up a flat twenty percent (20%) "commission" fee which again violated the spirit and the letter of the Delivery App. Legislation.

64. Similarly, DoorDash charged in excess of the delivery caps set forth in the Delivery App. Legislation and continued to defy the legislation following the enactment of the Amended Delivery App. Legislation by also setting up an indiscriminate flat twenty percent (20%) "commission" fee.

65. Upon information and belief, Defendants also wrongfully inflated their credit card processing fees to as high at four and half percent (4.5%) in order to further extort fees from Plaintiff and the Class members.

## CLASS ACTION ALLEGATIONS

66. Pursuant to Federal Rule of Civil Procedure 23, Plaintiff brings its claim against Defendants for violation of Local Law No. 52 of 2020, Council Int. No. 1908-B of 2020 and Local Law No. 88 of 2020, Council Int. No. 2054-A of 2020, on behalf of itself and the following "Class" defined below.

67. Plaintiff seeks to represent a Class composed of and defined as follows:

    a. All food service establishments that contracted with Defendants for delivery services, with businesses located within New York City that were improperly charged by Defendants for delivery services.

    b. The term "food service establishment" shall mean the defined term set forth in §81.03 of the health code of the city of New York defined as "a place where food is provided for individual portion service directly to the consumer whether such

food is provided free of charge or sold, and whether consumption occurs on or off

the premises or is provided from a pushcart, stand or vehicle."

68.     Plaintiff reserves the right to expand, limit, modify, or amend this Class definition

including the addition of one or more subclasses, in connection with Plaintiff's motion for class

certification, or any time, based upon, *inter alia*, changing circumstances and/or new facts

obtained during discovery.

69.     *Numerosity*: The Class is composed of thousands of restaurants (the "Class

members") whose joinder in this action would be impracticable. The disposition of their claims

through this class action will benefit all Class members, the parties, and the court system.

70.     *Commonality*: There is a commonality in questions of law and fact affecting the

Class. These questions of law and fact predominate over individual questions affecting individual

Class members, including, but not limited to the following:

    a.  Did Defendants comply with their legal obligations under the terms of the Local

        Law No. 52 of 2020, Council Int. No. 1908-B of 2020 by limiting their delivery

        fees to 15% of the total order and 5% of other fees?

    b.  Did Defendants comply with their legal obligations under the terms of the Local

        Law No. 88 of 2020, Council Int. No. 2054-A of 2020 by limiting their delivery

        fees to 15% of the total order and 5% of other fees?

    c.  How did Defendants calculate the delivery fees?

    d.  How did Defendants calculate the "other" fees?

    e.  How did Defendants calculate the processing fees?

f.  Did Defendants possess exclusive knowledge of material facts with respect to the methodology of the calculation of the fees charged to the restaurants, i.e., that their delivery fees and other fees would exceed the permissible 20% threshold?

g.  Did Defendants actively conceal a material fact or facts from the Plaintiff, i.e., that their fees would exceed the permissible 20% threshold?

h.  Whether Defendants' conduct, as alleged herein, was intentional and knowing?

i.  Whether, as a result of Defendants' conduct, Plaintiff and other Class members have been injured, and if so, the appropriate measure of damages to which they are entitled?

j.  What is the amount of revenue and/or profits Defendants received as a result of the conduct alleged herein?

k.  Whether Defendants will continue to mislead the public and Class members and continue to violate NYC regulations regarding charging Class members in excess of the allowable 20% fee? and

l.  Whether Plaintiff and Class members are entitled to an award of reasonable attorney's fees, pre-judgment interest and costs of suit?

71.  *Superiority*: In engaging in the conduct described herein, Defendants have acted and/or failed to act on grounds generally applicable to Plaintiff and other Class members. Such conduct requires the Court's imposition of uniform relief to ensure compatible standards of conduct towards Class members. A class action is superior to all other available means for the fair and efficient adjudication of Plaintiff's and the Class members' claims. Few, if any, Class members could afford to seek legal redress of the wrongs complained herein on an individual basis. Absent a class action, Class members and the general public would not likely recover, or

have the chance to recover, damages or restitution, and Defendants would be permitted to retain the fruits of their misdeed.

72.     *Typicality*: Plaintiff's claims are typical of, and are not antagonistic to, the claims of all Class members. Plaintiff and the Class members have all be deceived by Defendants' unfair and unlawful practices in inflating their delivery fees, as alleged herein. The factual and legal basis of Defendants' liability to Plaintiff and each Class member as a result of Defendants' actions are described herein.

73.     *Adequacy*: Plaintiff is an adequate representative of the Class because it is a member of the Class, and Plaintiff's interests do not conflict with the interest of the other Class members that Plaintiff seeks to represent. Plaintiff will fairly and adequately represent and protect the interest of the other Class members. Plaintiff has retained counsel with substantial experience in litigating complex cases, including consumer fraud and class actions. Both Plaintiff and its counsel will vigorously prosecute this action on behalf of the Class and have the financial ability to do so. Neither Plaintiff nor its counsel have any interest adverse to other Class members.

74.     *Ascertainability:* Plaintiff is informed and believes that Defendants keep extensive computerized records of their customers and the calculations of their delivery fees. Defendants have one or more databases of internal records (including receipts of purchases and monthly invoices) through which all of the Class members may be identified and ascertained, as well as contact information for each Class member, including email and mailing addresses. From this information, the existence of the Class members can be determined, and thereafter, notice of this action can be disseminated in accordance with due process requirements.

<u>**COUNT I**</u>
**(VIOLATION OF LOCAL LAW NO. 52 OF 2020,**
**COUNCIL INT. NO. 1908-B OF 2020**
**AGAINST ALL DEFENDANTS)**

75.     Plaintiff hereby incorporates by reference the foregoing allegations as if fully set forth herein.

76.     Plaintiff, and the other Class members, are food service establishments as used in Local Law No. 52 of 2020, Council Int. No. 1908-B of 2020.

77.     Plaintiff, and the other Class members, contracted with Defendants for "third-party delivery service(s)" as defined by Local Law No. 52 of 2020, Council Int. No. 1908-B of 2020 while the State of New York was in a state of emergency.

78.     Upon information and belief, from June 7, 2020, through and including September 13, 2020, Defendants violated Local Law No. 52 of 2020, Council Int. No. 1908-B of 2020 by charging Plaintiff, and the other Class members, in excess of the mandated fifteen percent (15%) and five percent (5%) fee caps specified by the legislation.

79.     As a result of Defendants' actions, Plaintiff and the other Class members have suffered damages in the form of overcharges and lost profits in an amount to be determined at trial.

<u>**COUNT II**</u>
**(VIOLATION OF LOCAL LAW NO. 88 OF 2020,**
**COUNCIL INT. NO. 2054-A OF 2020 AGAINST UBER, UBER EATS)**

80.     Plaintiff hereby incorporates by reference the foregoing allegations as if fully set forth herein.

81.     Plaintiff, and the other Class members, are food service establishments as used in Local Law No. 88 of 2020, Council Int. No. 2054-A of 2020.

82.     Plaintiff, and the other Class members, contracted with Defendants for "third-party delivery service(s)" as defined by Local Law No. 52 of 2020, Council Int. No. 1908-B of 2020 while the State of New York was in a state of emergency.

83.     Upon information and belief, from September 14, 2020, to the present, Defendants violated, and continue to violate, Local Law No. 88 of 2020, Council Int.   No. 2054-A of 2020by charging Plaintiff, and the other Class members, in excess of the mandated fifteen percent (15%) and five percent (5%) fee caps specified by the legislation.

84.     As a result of Defendants' actions, Plaintiff and the other Class members have suffered damages in the form of overcharges and lost profits in an amount to be determined at trial.

**COUNT III**
**(DECLARATORY RELIEF**
**AGAINST ALL DEFENDANTS)**

85.     Plaintiff hereby incorporates by reference the foregoing allegations as if fully set forth herein.

86.     Plaintiff contracted with Defendants for their delivery services during a state of emergency.

87.     Defendants overcharged Plaintiff, and the other Class members, for their delivery and other associated services in direct violation of the Delivery App. Legislation and the Amended Delivery App. Legislation.

88.     An actual controversy has arisen between Plaintiff and Defendants as to the amount of fees that Defendants overcharged Plaintiff in connection with their delivery service fees.

89.     Plaintiff and the Class members seek a declaration in accordance with the Delivery App. Legislation and the Amended Delivery App. Legislation that the amount of fees that

Defendants overcharged Plaintiff and the Class members must be paid back to Plaintiff and the Class.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff, individually and on behalf of the Class, demands a trial by jury on all issues so triable in the Complaint.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the other Class members, respectfully requests that this Honorable Court enter judgment in its favor and against Defendants by entering an Order:

(a) Certifying the Class as defined above; appointing Plaintiff as Class representative, and appointing Plaintiff's attorney as Class counsel;

(b) Granting permanent injunctive relief to prohibit Defendants from continuing to engage in the unlawful actions, omissions, and practices described herein;

(c) Adjudging and declaring that the unlawful acts, omissions, and practices described herein constitute violations of New York Council's Local Law No. 52 of 2020, Council Int. No. 1908-B of 2020 and Local Law No. 88 of 2020, Council Int. No. 2054-A of 2020;

(d) Awarding Plaintiff and Class members compensatory, statutory, consequential, and other damages in an amount to be determined at trial;

(e) Ordering disgorgement and restitution of all earnings, profits, compensation, and benefits received by Defendants as a result of their unlawful acts, omissions, and practices described herein;

(f) Awarding punitive damages to the fullest extent permitted by law;

(g) Awarding Plaintiffs and the other Class members the costs and disbursements of this action, along with reasonable attorneys' fees and expenses, to the extent permitted by law;

(h) Awarding pre- and post-judgment interest as permitted by law; and

(i) Granting all such other relief as the Court deems just, equitable and proper.

Dated:          New York, New York
                June 7, 2021

                                    Respectfully submitted,

                                    **Helbraun & Levey LLP**

                                    By: *_/s/ Hamutal G. Lieberman_*
                                    Hamutal G. Lieberman (HG9798)
                                    Lee N. Jacobs (LJ1800)
                                    Joe D. Taylor (JT2497)
                                    110 William Street, Ste. 1410
                                    New York, NY 10038
                                    Telephone: (212) 219-1193
                                    Facsimile: (917) 398-8682
                                    hamutal.lieberman@helbraunlevey.com
                                    lee.jacobs@helbraunlevey.com
                                    joe.taylor@helbraunlevey.com
                                    *Attorneys for Plaintiff and*
                                    *the Proposed Class*