**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

MICHELI & SHEL, LLC, *individually and on behalf of others similarly situated*,

                    Plaintiff,

        v.

GRUBHUB INC., *et al.*,

                  Defendants.

Case No. 21-cv-04995-JMH

---

### GRUBHUB INC. AND SEAMLESS NORTH AMERICA, LLC'S MEMORANDUM OF LAW IN SUPPORT OF THEIR <u>MOTION TO COMPEL ARBITRATION AND STAY THIS ACTION</u>

COZEN O'CONNOR
Michael W. McTigue Jr. (*pro hac vice*)
Meredith C. Slawe (*pro hac vice*)
Max E. Kaplan
One Liberty Place
1650 Market Street, Suite 2800
Philadelphia, PA 19103
Telephone:  (215) 665-2000
Fax:  (215) 665-2013
Email:  mmctigue@cozen.com
Email:  mslawe@cozen.com
Email:  mkaplan@cozen.com

*Counsel for Defendants Grubhub Inc.
and Seamless North America, LLC*

## <u>TABLE OF CONTENTS</u>

**Page**

INTRODUCTION ............................................................................................................ 1

BACKGROUND ............................................................................................................. 2

   I.  Grubhub Provides Partner Restaurants Services................................................... 2

   II.  Plaintiff Partnered with Grubhub and Agreed to Individually Arbitrate This Dispute....... 2

   III.  Plaintiff Filed This Putative Class Action Despite Its Agreement to Arbitrate This Dispute on an Individual Basis ............................................................................... 4

ARGUMENT .................................................................................................................. 4

   I.  The FAA Establishes a Strong Policy Favoring Arbitration ............................................. 4

   II.  Plaintiff Is Bound to Arbitrate This Dispute ....................................................... 6

      A.  Plaintiff Agreed to Delegate Gateway Issues to the Arbitrator ................................... 7

      B.  The Gateway Arbitration Requirements Are Satisfied ................................................. 8

         1.  Plaintiff Assented to the Arbitration Agreement ................................................... 8

         2.  Plaintiff's Claims Are Within the Scope of the Arbitration Agreement................. 9

   III.  This Action Should Be Stayed Pending Resolution of an Individual Arbitration Proceeding........................................................................................................... 10

CONCLUSION................................................................................................................ 11

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Am. E Grp. LLC v. Livewire Ergogenics Inc.*,
432 F. Supp. 3d 390 (S.D.N.Y. 2020)..........................................................................5

*Arthur Andersen LLP v. Carlisle*,
556 U.S. 624 (2009)......................................................................................................8

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011)......................................................................................................5

*AT&T Techs., Inc. v. Commc'ns Workers of Am.*,
475 U.S. 643 (1986)..................................................................................................6, 9

*Boule v. Credit One Bank*,
No. 15-8562, 2016 WL 3015251 (S.D.N.Y. May 5, 2016) ...........................................6

*Burks v. Autonomy, Inc.*,
No. 11–62677, 2012 WL 13005954 (S.D. Fla. May 15, 2012) ....................................5

*Bynum v. Maplebear Inc.*,
No. 15-6263, 2016 WL 5373643 (E.D.N.Y. Sept. 19, 2016) ......................................6

*Contec Corp. v. Remote So., Co.*,
398 F.3d 205 (2d Cir. 2005)..........................................................................................7

*Dean Witter Reynolds, Inc. v. Byrd*,
470 U.S. 213 (1985)................................................................................................5, 11

*Doctor's Assocs., Inc. v. Alemayehu*,
934 F.3d 245 (2d Cir. 2019)..........................................................................................8

*Epic Sys. Corp. v. Lewis*,
138 S. Ct. 1612 (2018)..................................................................................................6

*First Options of Chicago, Inc. v. Kaplan*,
514 U.S. 938 (1995)......................................................................................................7

*Genesco, Inc. v. T. Kakiuchi & Co.*,
815 F.2d 840 (2d Cir.1987)...........................................................................................8

*Gillman v. Chase Manhattan Bank*,
73 N.Y.2d 1 (1988).......................................................................................................8

*Gilmer v. Interstate/Johnson Lane Corp.*,
    500 U.S. 20 (1991)......................................................................................................5

*Green Tree Fin. Corp.-Ala. v. Randolph*,
    531 U.S. 79 (2000).....................................................................................................9

*Hartford Acc. & Indem. Co. v. Swiss Reinsurance Am. Corp.*,
    246 F.3d 219 (2d Cir. 2001)......................................................................................6

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
    139 S. Ct. 524 (2019)................................................................................................7

*Katz v. Cellco P'ship*,
    794 F.3d 341 (2d Cir. 2015).....................................................................................11

*LAIF X SPRL v. Axtel, S.A. de C.V.*,
    390 F.3d 194 (2d Cir. 2004)......................................................................................5

*Marciano v. DCH Auto Grp.*,
    14 F. Supp. 3d 322 (S.D.N.Y. 2014).........................................................................8

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
    473 U.S. 614 (1985)..................................................................................................5

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
    460 U.S. 1 (1983)......................................................................................6, 9, 10, 11

*Patterson v. Raymours Furniture Co.*,
    96 F. Supp. 3d 71 (S.D.N.Y. 2015), *aff'd*, 659 F. App'x 40 (2d Cir. 2016)............6

*Perry v. Thomas*,
    482 U.S. 483 (1987)..................................................................................................5

*Rent-A-Center, W., Inc. v. Jackson*,
    561 U.S. 63 (2010)....................................................................................................7

*Scott v. Yoho*,
    248 Cal. App. 4th 392 (2016) ...................................................................................6

*Suqin Zhu v. Hakkasan NYC LLC*,
    291 F. Supp. 3d 378 (S.D.N.Y. 2017).......................................................................8

*Worthington v. JetSmarter, Inc.*,
    No. 18-12113, 2019 WL 4933635 (S.D.N.Y. Oct. 7, 2019)....................................7

**Statutes**

9 U.S.C. § 2...............................................................................................................4, 5

9 U.S.C. § 3 ....................................................................................................................10, 11

9 U.S.C. § 4 ....................................................................................................................5, 6, 11

Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* ....................................................... *passim*

**Other Authorities**

AAA, Commercial Arbitration Rules and Mediation Procedures (Oct. 1, 2013),
    *available at* https://adr.org/sites/default/files/CommercialRules_Web-
    Final.pdf ...................................................................................................................7

Defendants Grubhub Inc., which has been named individually and as d/b/a Seamless, and Seamless North America, LLC (collectively "Grubhub")[1] respectfully submit this Memorandum of Law in support of their Motion to Compel Arbitration and Stay this Action ("Motion") pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* ("FAA").  While the claims of Plaintiff Micheli & Shel, LLC ("Plaintiff") against Grubhub lack merit, that is for an arbitrator to decide on an individual basis pursuant to the terms of a binding arbitration agreement.  For the reasons set forth herein, Grubhub's Motion should be granted.

## INTRODUCTION

Plaintiff entered into a relationship with Grubhub on October 30, 2019, when it executed the Grubhub Restaurant and Services Form ("Services Form") and agreed to pay Grubhub certain marketing and delivery commissions and other fees (including order processing fees)[2] in exchange for access to Grubhub's systems and services.  Wilson Decl. ¶¶ 5–6, Ex. A at 1–2 ("Package," "Financial Terms," "GH Commissions," "Payment," "Restaurant (authorized signatory)"); *id.*, Ex. B § 3.  In executing the Services Form, Plaintiff also agreed to be bound by the Grubhub Restaurant Terms ("Terms"), including its mandatory arbitration agreement.  *Id.* ¶¶ 7, 10, Ex. A at 2. Specifically, Plaintiff agreed to arbitrate "all claims or disputes arising out of th[is] Agreement" on an individual basis pursuant to the Commercial Arbitration Rules of the American Arbitration Association ("AAA").  *Id.* ¶ 10, Ex. B § 5.

Plaintiff filed this putative class action on June 7, 2021, alleging that Grubhub (and others) overcharged Plaintiff for marketing and order processing fees.  *See* Compl. ¶¶ 9, 12, 56, 60–61.

---

[1]     Effective December 31, 2014, Defendant Seamless North America, LLC merged into and with Grubhub Holdings Inc.  Declaration of Adam Wilson dated August 2, 2021 ("Wilson Decl."), ¶ 11.  Prior to June 15, 2021, Grubhub Holdings Inc. was a wholly owned subsidiary of Defendant Grubhub Inc.  *Id.* ¶ 1.  Effective June 15, 2021, Grubhub Inc. completed a merger with and into Checkers Merger Sub II, Inc., a wholly owned subsidiary of Just Eat Takeaway.com N.V.  *Id.*

[2]     A "processing fee"—e.g., a fee to cover third-party credit card charges—is not a fee for the use of Grubhub's services.

1

While Plaintiff's claims against Grubhub lack merit, Plaintiff agreed to arbitrate, not litigate, this dispute with Grubhub and waived any right to pursue its claims on a class-wide basis. As required by the FAA, this Court should compel Plaintiff to arbitrate its claims against Grubhub on an individual basis and stay this action pending resolution of any arbitration proceeding.

## BACKGROUND

### I.    Grubhub Provides Partner Restaurants Services

Grubhub is an online and mobile platform for restaurant pick-up and delivery orders, connecting restaurants with diners. Wilson Decl. ¶ 3. Through its platform, Grubhub helps restaurants grow their businesses by, among other things, creating an online and mobile presence to reach more diners, providing access to a broader base of local diners, increasing logistical efficiencies and reducing order inaccuracies, and helping restaurants optimize their online profiles and delivery footprint. *Id.* ¶ 4. Many restaurants have chosen to partner with Grubhub, thereby gaining direct access to Grubhub's revenue-boosting marketing, information-technology, and delivery services in exchange for negotiated commissions on orders. *Id.*

### II.   Plaintiff Partnered with Grubhub and Agreed to Individually Arbitrate This Dispute

Plaintiff operates a bakery located in Manhattan's Lower East Side neighborhood. Compl. ¶ 18. On October 30, 2019, Plaintiff completed, signed, and submitted to Grubhub the Services Form. In executing the Services Form, Plaintiff agreed to be bound by the Terms and to pay to Grubhub certain marketing and delivery commissions and other fees (including order processing fees) in connection with Grubhub's services. Wilson Decl. ¶¶ 5–6, Ex. A at 1–2 ("Package" includes "Marketing Commission," "Delivery Commission," and "Additional Processing Fee"; "Financial Terms" provide "Restaurant agrees to pay GH the Marketing Commission . . . and Delivery Commission selected above," and that Grubhub will withhold from any "Payment Amount" "(i) the applicable Commissions, [and] (ii) the processing fee (inclusive of credit

2

charges)"); *see also id.*, Ex. B. § 3 ("**Payment Terms**[:]  In consideration for Restaurant's access

to the applicable Systems and Services, Restaurant will pay to GH the commissions and other fees

set forth in the Services Form.").

Adir Michaeli—as "owner" of Plaintiff—checked a box next to his signature on the

Services Form affirming that:

> I certify that I am the duly authorized representative of Restaurant, and that I have
> carefully reviewed and agree to the Grubhub Restaurant Terms set forth at
> https://get.grubhub.com/legal/restaurant-terms ("Terms"), which are incorporated
> herein and made a part of this Agreement. . . .  You should review the Terms before
> using the Services.  **The Terms contain a mandatory arbitration provision that
> affects your legal rights.  Please read it.**

*Id.* ¶ 7, Ex. A at 2 (emphasis in original).  A restaurant cannot execute the Services Form and sign

up to use Grubhub's services without first checking the box to confirm agreement with the above

statement.  *Id.* ¶ 8.  Grubhub's electronic signature platform will not allow a restaurant to submit

the Services Form unless this box is checked.  *Id.*

The Terms, together with the Services Form (the "Agreement"), govern "the service

relationship between Grubhub Holdings Inc., its subsidiaries and affiliates . . . and the restaurant."

*Id.*, Ex. B at 1.  The Terms further clearly and conspicuously highlight in the very first paragraph

in all caps and bold font that they contain an arbitration provision:

> **THE SECTION BELOW ENTITLED "DISPUTE RESOLUTION" HAS A
> MANDATORY   ARBITRATION   PROVISION.      IT   AFFECTS
> RESTAURANT'S LEGAL RIGHTS.  PLEASE READ IT.**

*Id.*, Ex. B at 1 (emphasis and capitalization in original).

Section 5 of the Terms—titled "**Dispute Resolution**"—specifies that the parties "agree

that all claims or disputes arising out of the Agreement will be decided by an arbitrator through

arbitration and not by a judge or jury ('**Arbitration Agreement**')."  *Id.*, Ex. B § 5.  This Arbitration

Agreement further provides that "[t]he arbitration will be conducted before a single arbitrator

under the Commercial Arbitration Rules of the American Arbitration Association ('**AAA**'), which are available at www.adr.org," and that "[t]he arbitration proceeding will take place in New York, NY, unless otherwise agreed."  *Id.*  When Plaintiff entered into the Arbitration Agreement, it expressly agreed "to bring any claim or dispute in arbitration on an individual basis only, and not as a class or collective action, and [that] there will be no right or authority for any claim or dispute to be brought, heard or arbitrated as a class or collective action ('**Class Action Waiver**')."  *Id.*

### III.   Plaintiff Filed This Putative Class Action Despite Its Agreement to Arbitrate This Dispute on an Individual Basis

Plaintiff filed this putative class action against Grubhub and four other defendants on June 7, 2021.  Plaintiff alleges that it "contracted with [d]efendants for their delivery services," but that defendants "overcharged Plaintiff, and the other Class members, for their delivery and other associated services."  Compl. ¶¶ 86–87; *see also id.* ¶¶ 77, 82.  Plaintiff alleges that Grubhub "overcharged" it for "marketing and order processing fees."  *Id.* ¶¶ 12, 60–61.  Based on these allegations, Plaintiff purports to assert two causes of action against Grubhub: (a) for violation of Local Law No. 52 of 2020—which was amended on September 14, 2020, by Local Law No. 88 of 2020 (*id.* ¶¶ 7, 36); and (b) for declaratory relief.  *Id.* ¶¶ 75–79, 85–89.  Plaintiff seeks to represent a class of "[a]ll food service establishments that contracted with Defendants for delivery services, with businesses located within New York City that were improperly charged by Defendants for delivery services."  *Id.* ¶ 67.

<u>**ARGUMENT**</u>

### I.   The FAA Establishes a Strong Policy Favoring Arbitration

Section 2 of the FAA mandates that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.  Congress has expressed a strong public policy favoring arbitration, requiring courts

to "rigorously enforce" arbitration agreements. *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985).  In order to "reverse the longstanding judicial hostility to arbitration agreements," Congress enacted the FAA, placing arbitration agreements on "the same footing as other contracts." *Gilmer v. Interstate/Johnson Lane Corp*., 500 U.S. 20, 24 (1991); *see also AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) ("[C]ourts must place arbitration agreements on an equal footing with other contracts . . . and enforce them according to their terms."); *Perry v. Thomas*, 482 U.S. 483, 489 (1987) (describing the FAA as "'a congressional declaration of a liberal federal policy favoring arbitration agreements'" (citation omitted)); *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 631 (1985) (noting the "emphatic federal policy in favor of arbitral dispute resolution").

For the FAA to apply, an arbitration agreement need meet only two conditions: (1) it must be in writing; and (2) it must be part of "a contract evidencing a transaction involving [interstate] commerce."  9 U.S.C. § 2.  Where such an agreement exists, "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate . . . may petition any United States district court . . . for an order directing that such arbitration proceed."  9 U.S.C. § 4.  A party "'refuse[s] to arbitrate' within the meaning of Section 4 [of the FAA] if it 'commences litigation.'"  *Am. E Grp. LLC v. Livewire Ergogenics Inc*., 432 F. Supp. 3d 390, 396 (S.D.N.Y. 2020) (quoting *LAIF X SPRL v. Axtel, S.A. de C.V.*, 390 F.3d 194, 198 (2d Cir. 2004)).

The FAA applies.  Plaintiff's agreement to arbitrate is both in writing, *see* Wilson Decl., Ex. B § 5, and evidences a transaction involving interstate commerce—namely, the provision of marketing, information-technology, and delivery services to restaurants and consumers *via* the internet, *see id.* ¶¶ 3–4, Ex. B § 1.  *See, e.g, Burks v. Autonomy, Inc.*, No. 11–62677, 2012 WL 13005954, at *3 (S.D. Fla. May 15, 2012) (contract with "software company dealing in internet

content management solutions" subject to FAA); *Scott v. Yoho*, 248 Cal. App. 4th 392, 402 (2016) (local medical practitioner's use of internet advertising subjected agreement to FAA).   Indeed, Plaintiff expressly agreed that the "Arbitration Agreement is governed by the [FAA] and evidences a transaction involving commerce."   Wilson Decl., Ex. B § 5.   This alone is sufficient.   *See, e.g.*, *Bynum v. Maplebear Inc.*, No. 15-6263, 2016 WL 5373643, at \*4 (E.D.N.Y. Sept. 19, 2016) (compelling arbitration under FAA where parties contractually agreed to be governed by FAA); *Boule v. Credit One Bank*, No. 15-8562, 2016 WL 3015251, at \*1 (S.D.N.Y. May 11, 2016) (same); *see also Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1619 (2018) (courts must "enforce arbitration agreements according to their terms").

## II.   Plaintiff Is Bound to Arbitrate This Dispute

The FAA requires courts to compel arbitration "in accordance with the terms of the agreement."   9 U.S.C. § 4.   To effectuate this directive, courts generally examine two "gateway" issues on a motion to compel: "(1) whether there exists a valid agreement to arbitrate at all under the contract in question . . . and if so, (2) whether the particular dispute sought to be arbitrated falls within the scope of the arbitration agreement."   *Hartford Accident & Indem. Co. v. Swiss Reinsurance Am. Corp.*, 246 F.3d 219, 226 (2d Cir. 2001) (citation omitted).   If a court finds that both factors are satisfied, as they are here, it must compel arbitration and either dismiss or stay the action.   *See Patterson v. Raymours Furniture Co.*, 96 F. Supp. 3d 71, 75 (S.D.N.Y. 2015), *aff'd*, 659 F. App'x 40 (2d Cir. 2016).   Further, "any doubts" concerning the arbitrability of a dispute "should be resolved in favor of arbitration."   *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983); *see also AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986).

### A.      Plaintiff Agreed to Delegate Gateway Issues to the Arbitrator

This Court, however, need not reach these gateway issues.  Parties to an arbitration agreement may—as Grubhub and Plaintiff did here—"agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68–69 (2010) (citations omitted).  If parties to an arbitration agreement have "clear[ly] and unmistakab[ly] agreed to delegate issues of arbitrability to the arbitrator, then the court cannot override that intention and the arbitrator must decide these threshold issues. *See Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 531 (2019); *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).

Here, the parties agreed that the arbitrator—not this Court—would decide issues of arbitrability when they agreed to arbitrate disputes "under the Commercial Arbitration Rules of the American Arbitration Association" ("AAA Commercial Rules").  Wilson Decl., Ex. A at 2, Ex. B § 5.  The AAA Commercial Rules expressly reserve to the arbitrator "the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim."  AAA, Commercial Arbitration Rules and Mediation Procedures R-7(a) (Oct. 1, 2013), *available at* https://adr.org/sites/default/files/CommercialRules_Web-Final.pdf.   The incorporation by reference of such a rule constitutes "clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator" and must be honored.  *Contec Corp. v. Remote Sol., Co.*, 398 F.3d 205, 208 (2d Cir. 2005) (invocation of AAA Commercial Rules satisfies test for delegation); *see also Worthington v. JetSmarter, Inc.*, No. 18-12113, 2019 WL 4933635, at *7 n.5 (S.D.N.Y. Oct. 7, 2019) (invocation of AAA Commercial Rules presented alternative basis to defer arbitrability).

The Arbitration Agreement reserves to this Court only "the interpretation, applicability or enforceability of the Class Action Waiver." Wilson Decl., Ex. B § 5. This carve-out confirms the parties' intent for the arbitrator, not this Court, to decide all other threshold issues as provided in the AAA Commercial Rules. Given the parties' clear and unmistakable intent, this Court should compel Plaintiff to raise any threshold arbitrability issues to the arbitrator.

### B.     The Gateway Arbitration Requirements Are Satisfied

Even if the parties had not delegated the two threshold "gateway" issues to the arbitrator, both are satisfied.

### 1.     Plaintiff Assented to the Arbitration Agreement

Arbitration is "a creature of contract." *Doctor's Assocs., Inc. v. Alemayehu*, 934 F.3d 245, 250 (2d Cir. 2019). Thus, when determining whether a contract is binding under the FAA, courts should apply ordinary state contract law principles. *See Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 630–31 (2009). Under New York law,[3] "[b]y signing a written instrument, a party creates presumptive evidence of its assent to enter into a binding agreement." *Suqin Zhu v. Hakkasan NYC LLC*, 291 F. Supp. 3d 378, 387 (S.D.N.Y. 2017) (citing *Gillman v. Chase Manhattan Bank*, 73 N.Y.2d 1, 11 (1988)). Thus, "'a party is bound by the provisions of a contract that [s]he signs, unless [s]he can show special circumstances that would relieve h[er] of such an obligation.'" *Marciano v. DCH Auto Grp.*, 14 F. Supp. 3d 322, 328 (S.D.N.Y. 2014) (alterations in original) (quoting *Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840, 845 (2d Cir.1987)). Once such assent is established, "the party resisting arbitration bears the burden of proving that the

---

[3]     The Terms provide that, "[w]ith the exception of the Arbitration Agreement, which will be governed by the FAA, the Agreement will be governed by New York law, without regard to conflict of law principles." Wilson Decl., Ex. B § 6.

claims at issue are unsuitable for arbitration." *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91 (2000).

Here, there can be no dispute that Plaintiff entered into a valid, binding Arbitration Agreement.  On October 30, 2019, Plaintiff completed, signed, and submitted to Grubhub its Services Form, thereby agreeing to pay Grubhub certain commissions in exchange for access to Grubhub's services.  Wilson Decl. ¶¶ 4–6, Ex. A at 1–2.  In executing the Services Form, Plaintiff's owner, Adir Michaeli, checked a box next to his signature expressly affirming that:

> I certify that I am the duly authorized representative of Restaurant, and that I have carefully reviewed and agree to the Grubhub Restaurant Terms set forth at https://get.grubhub.com/legal/restaurant-terms ("Terms"), which are incorporated herein and made a part of this Agreement. . . .  You should review the Terms before using the Services.  **The Terms contain a mandatory arbitration provision that affects your legal rights. Please read it.**

*Id.*, Ex. A at 2 (emphasis in original).  The Terms similarly provide in the first paragraph that:

> **THE SECTION BELOW ENTITLED "DISPUTE RESOLUTION" HAS A MANDATORY ARBITRATION PROVISION.  IT AFFECTS RESTAURANT'S LEGAL RIGHTS.  PLEASE READ IT.**

*Id.*, Ex. B at 1 (emphasis and capitalization in original).  Thus, by its principal's signature and express certification, Plaintiff manifested its intent to be bound by the Terms, including the Arbitration Agreement, the existence of which was conspicuously and repeatedly disclosed to Plaintiff at the time of contracting.

### 2.    Plaintiff's Claims Are Within the Scope of the Arbitration Agreement

The strong public policy favoring arbitration requires that questions of arbitrability be decided "with a healthy regard for the federal policy favoring arbitration." *Moses H. Cone Mem'l*, 460 U.S. at 24.  As such, "'[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Commc'ns Workers*, 475 U.S. at 650 (citations

omitted).  "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."  *Moses H. Cone Mem'l*, 460 U.S. at 24–25.

Here, Plaintiff's claims fall squarely within the Arbitration Agreement, which extends to "all claims or disputes arising out of the Agreement."  Wilson Decl., Ex. B § 5.  Plaintiff alleges that Grubhub charged it fees for "marketing and order processing services" greater than Grubhub was permitted to charge.  Compl. ¶ 61; *see also id.* ¶ 60 (alleging Grubhub improperly "exceed[ed] the five percent (5%) cap . . . by charging for both marketing and order processing fees").  Any "fees" assessed by Grubhub, however, were charged pursuant to both the Terms and Services Form.  *See* Compl. ¶ 86 ("Plaintiff contracted with Defendants for their delivery services. . . ."); Wilson Decl., Ex. B § 3 ("In consideration for Restaurant's access to the applicable Systems and Services, Restaurant will pay to GH the commissions and other fees set forth in the Services Form.").  Indeed, the Services Form expressly provides that Grubhub can charge, and Plaintiff will pay, for such marketing and order processing services according to its terms.  *See* Wilson Decl., Ex. A at 1 ("Restaurant agrees to pay GH the Marketing Commission . . . selected above"); *id.* ("GH will transmit . . . to Restaurant the 'Payment Amount,'" which "means the 'Grand Total' . . . received by GH . . . less (i) the applicable Commissions, [and] (ii) the processing fee (inclusive of credit charges) . . . .").  Any challenge to the fees or commissions charged by Grubhub necessarily "aris[es] out of" the parties' agreement, and is therefore subject to arbitration.

## III.  This Action Should Be Stayed Pending Resolution of an Individual Arbitration Proceeding

Once a lawsuit is "referable to arbitration," the court "**shall** on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement."  9 U.S.C. § 3 (emphasis added).  Thus, if an arbitration agreement is governed by the FAA and a dispute is within its scope, a court's duty is clear: it must compel the parties to

comply with their arbitration agreement and stay further judicial proceedings.  *See* 9 U.S.C. §§ 3, 4; *Moses H. Cone Mem'l*, 460 U.S. at 22 ("[The FAA] provides two parallel devices for enforcing an arbitration agreement: a stay of litigation in any case raising a dispute referable to arbitration, 9 U.S.C. § 3, and an affirmative order to engage in arbitration, § 4.").

Here, Plaintiff is bound by the Arbitration Agreement, which encompasses Plaintiff's claims.  As such, Plaintiff must comply with its agreement to arbitrate this dispute on an individual basis and this action should be stayed pending the outcome of any arbitration.  *See id.*; *see also Dean Witter Reynolds*, 470 U.S. at 218 ("By its terms, the [FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed."); *Katz v. Cellco P'ship*, 794 F.3d 341, 347 (2d Cir. 2015) ("[T]he FAA mandate[s] a stay of proceedings when all of the claims in an action have been referred to arbitration and a stay requested.").

## <u>CONCLUSION</u>

For the foregoing reasons, Grubhub respectfully requests that this Court compel Plaintiff to comply with the written arbitration agreement and stay this action pending the resolution of any arbitration proceeding.

Respectfully submitted,

Dated: August 2, 2021

**COZEN O'CONNOR**

<u>/s/ Michael W. McTigue Jr.</u>
Michael W. McTigue Jr. (*pro hac vice*)
Meredith C. Slawe (*pro hac vice*)
Max E. Kaplan
One Liberty Place
1650 Market Street, Suite 2800
Philadelphia, PA 19103
Telephone:  (215) 665-2000
Fax:  (215) 665-2013
Email:  mmctigue@cozen.com
Email:  mslawe@cozen.com
Email:  mkaplan@cozen.com

*Counsel for Defendants Grubhub Inc. and Seamless North America, LLC*

12