**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x

Micheli & Shel, LLC, individually and on
behalf of others similarly situated,

               Plaintiffs,

     v.

GRUBHUB INC., GRUBHUB INC. d/b/a
SEAMLESS, SEAMLESS NORTH
AMERICA, LLC, UBER TECHNOLOGIES
INC., UBER EATS, POSTMATES LLC, and
DOORDASH INC.,

               Defendants.

------------------------------------------------------------x

Case No. 1:21-cv-04995-JMF

**DEFENDANT DOORDASH, INC.'S MEMORANDUM OF LAW IN
SUPPORT OF ITS MOTION TO COMPEL ARBITRATION AND STAY**

Joshua Lipshutz (*PHV forthcoming*)
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC  20036-5306
Telephone:  202.955.8500
Facsimile:  202.467.0539

Ilissa Samplin (IS2937)
Michael Holecek (*PHV forthcoming*)
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA  90071-3197
Telephone:  213.229.7000
Facsimile: 213.229.7520

*Attorneys for Defendant DoorDash, Inc.*

**TABLE OF CONTENTS**

Page

I.   INTRODUCTION .................................................................................................. 1

II.  STATEMENT OF RELEVANT FACTS ............................................................. 2

    A.   DoorDash's Platform Connects Customers, Restaurants, And Delivery Contractors .................................................................................................. 2

    B.   Plaintiff Consented To The TOS Upon Signing Up For DoorDash In January 2020 .............................................................................................. 3

    C.   The TOS To Which Plaintiff Assented In January 2020 Included An Arbitration Agreement And Class-Action Waiver ................................. 4

    D.   Plaintiff Repeatedly Agreed To Revised TOS By Continuing To Use DoorDash's Services—Including Twice After Receiving Express Notice Of Updates .......................................................................................... 5

        1.   December 2020 TOS ........................................................................ 5

        2.   June 2021 TOS ................................................................................. 6

    E.   Plaintiff Filed This Lawsuit Against DoorDash Notwithstanding Its Agreement To Individually Arbitrate Disputes ................................... 7

III. PLAINTIFF SHOULD BE COMPELLED TO ARBITRATE THIS DISPUTE ON AN INDIVIDUAL BASIS ...................................... 8

    A.   The Arbitration Agreement Is Governed By The Federal Arbitration Act ............ 9

    B.   The Arbitration Agreement Is Valid And Must Be Enforced ............................. 11

        1.   The Agreement's Delegation Clause Is Valid And Enforceable ............. 12

        2.   The Gateway Issues Under The FAA Have Been Satisfied ................... 15

            a.   A Valid Agreement To Arbitrate Exists ..................................... 15

            b.   Plaintiff's Claims Are Covered By The Arbitration Agreement ................................................................................ 20

    C.   The Class-Action Waiver Is Valid And Enforceable ......................................... 21

    D.   Even Under New York Law, Plaintiff Must Individually Arbitrate Its Claims ....................................................................................................... 22

IV.  CONCLUSION .................................................................................................... 24

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Allied-Bruce Terminix Cos. v. Dobson*,
   513 U.S. 265 (1995)..............................................................................................10

*Am. Express Corp. v. Italian Colors Rest.*,
   570 U.S. 228 (2013)............................................................................................2, 22

*Anonymous v. JP Morgan Chase & Co.*,
   2005 WL 2861589 (S.D.N.Y. Oct. 31, 2005) ........................................................19

*Arkin v. DoorDash, Inc.*,
   2020 WL 4937825 (E.D.N.Y. Aug. 24, 2020)..............................................9, 11, 21

*AT&T Mobility LLC v. Concepcion*,
   563 U.S. 333 (2011)...................................................................................2, 9, 21, 22

*Badinelli v. Tuxedo Club*,
   183 F. Supp. 3d 450 (S.D.N.Y. 2016).....................................................................23

*Bassett v. Elec. Arts, Inc.*,
   93 F. Supp. 3d 95 (E.D.N.Y. 2015) ........................................................................14

*Belnap v. Iasis Healthcare*,
   844 F.3d 1272 (10th Cir. 2017) ..............................................................................13

*Boule v. Credit One Bank*,
   2016 WL 3015251 (S.D.N.Y. May 11, 2016) .........................................................10

*Burks v. Autonomy, Inc.*,
   2012 WL 13005954 (S.D. Fla. May 15, 2012) .......................................................11

*Bynum v. Maplebear Inc.*,
   2016 WL 5373643 (E.D.N.Y. Sept. 19, 2016) .......................................................10

*Camilo v. Lyft, Inc.*,
   384 F. Supp. 3d 435 (S.D.N.Y. 2019).....................................................................11

*Cayea v. Lake Placid Granite Co.*,
   665 N.Y.S.2d 127 (App. Div. 1997) ........................................................................16

*Citizens Bank v. Alafabco, Inc.*,
   539 U.S. 52 (2003)..................................................................................................10

**TABLE OF AUTHORITIES** *(continued)*

Page(s)

*Contec Corp. v. Remote Sol., Co.*,
398 F.3d 205 (2d Cir. 2005)...................................................................23

*Cooper v. WestEnd Capital Mgmt., L.L.C.*,
832 F.3d 534 (5th Cir. 2016) ................................................................13

*David L. Threlkeld & Co. v. Metallgesellschaft Ltd. (London)*,
923 F.2d 245 (2d Cir. 1991)...................................................................20

*DeVries v. Experian Info. Sols., Inc.*,
2017 WL 733096 (N.D. Cal. Feb. 24, 2017) .........................................19

*DIRECTV, Inc. v. Imburgia*,
577 U.S. 47 (2015)..................................................................................10

*Dzanoucakis v. Chase Manhattan Bank, USA*,
2009 WL 910691 (E.D.N.Y. Mar. 31, 2009) .........................................14

*Edwards v. DoorDash, Inc.*,
2017 WL 5514302 (S.D. Tex. Oct. 18, 2017)....................................9, 11

*EEOC v. Waffle House, Inc.*,
534 U.S. 279 (2002)................................................................................20

*Emilio v. Sprint Spectrum L.P.*,
508 F. App'x 3 (2d Cir. 2013) ...............................................................13

*Epic Sys. Corp. v. Lewis*,
138 S. Ct. 1612 (2018)..............................................................2, 9, 10, 21, 22

*In re Facebook Biometric Info. Privacy Litig.*,
185 F. Supp. 3d 1155 (N.D. Cal. 2016) .................................................17

*First Options of Chi., Inc. v. Kaplan*,
514 U.S. 938 (1995)............................................................................15, 20

*Foran v. NFL*,
2019 WL 2408030 (S.D.N.Y. June 7, 2019) .........................................12

*Gillam v. Branch Banking & Tr. Co.*,
2018 WL 3744019 (E.D. Va. Aug. 7, 2018).............................................19

*Hellenic Lines, Ltd. v. Louis Dreyfus Corp.*,
372 F.2d 753 (2d Cir. 1967)...................................................................16

# TABLE OF AUTHORITIES *(continued)*

Page(s)

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
 139 S. Ct. 524 (2019) .................................................................................12

*Howsam v. Dean Witter Reynolds, Inc.*,
 537 U.S. 79 (2002) ....................................................................................12

*Kai Peng v. Uber Techs., Inc.*,
 237 F. Supp. 3d 36 (E.D.N.Y. 2017) ..............................................14, 24

*Katz v. Cellco P'ship*,
 794 F.3d 341 (2d Cir. 2015) .................................................................2, 22

*Kilgore v. KeyBank, Nat'l Ass'n*,
 718 F.3d 1052 (9th Cir. 2013) ................................................................14

*Korea Week, Inc. v. Got Capital, LLC*,
 2016 WL 3049490 (E.D. Pa. May 27, 2016) ........................................23

*Levin v. Caviar*,
 146 F. Supp. 3d 1146 (N.D. Cal. 2015) .................................................17

*LG Elecs., Inc. v. Wi-LAN USA, Inc.*,
 2014 WL 3610796 (S.D.N.Y. July 21, 2014) ........................................13

*Magana v. DoorDash, Inc.*,
 343 F. Supp. 3d 891 (N.D. Cal. 2018) .......................................9, 11, 22

*Manard v. Knology, Inc.*,
 2010 WL 2528320 (M.D. Ga. June 18, 2010) ........................................11

*Marciano v. DCH Auto Grp.*,
 14 F. Supp. 3d 322 (S.D.N.Y. 2014) .......................................................16

*Mastrobuono v. Shearson Lehman Hutton, Inc.*,
 514 U.S. 52 (1995) ...............................................................................10, 21

*McGrath v. DoorDash, Inc.*,
 2020 WL 6526129 (N.D. Cal. Nov. 5, 2020) .......................................9, 21

*Meyer v. Uber Techs., Inc.*,
 868 F.3d 66 (2d Cir. 2017) .......................................................................20

*Mohamed v. Uber Techs., Inc.*,
 109 F. Supp. 3d 1185 (N.D. Cal. 2015), *rev'd in part on other grounds*,
 848 F.3d 1201 (9th Cir. 2016) ................................................................17

**TABLE OF AUTHORITIES** *(continued)*

Page(s)

*Mohamed v. Uber Techs., Inc.*,
  848 F.3d 1201 (9th Cir. 2016) .......................................................................................12, 14

*Montes v. San Joaquin Cmty. Hosp.*,
  2014 WL 334912 (E.D. Cal. Jan. 29, 2014) .........................................................................10

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
  460 U.S. 1 (1983) ...............................................................................................................9, 12

*Nayal v. HIP Network Servs. IPA, Inc.*,
  620 F. Supp. 2d 566 (S.D.N.Y. 2009) .....................................................................................24

*Personalized Media Commc'ns, L.L.C. v. StarSight Telecast, Inc.*,
  2000 WL 1457079 (S.D.N.Y. Sept. 28, 2000) .......................................................................16

*Peter v. DoorDash, Inc.*,
  445 F. Supp. 3d 580 (N.D. Cal. Apr. 23, 2020) .........................................................9, 11, 21

*Pincaro v. Glassdoor, Inc.*,
  2017 WL 4046317 (S.D.N.Y. Sept. 12, 2017) .......................................................................18

*Porcelli v. JetSmarter, Inc.*,
  2019 WL 2371896 (S.D.N.Y. June 5, 2019) .........................................................................12

*Progressive Cas. Ins. Co. v. C.A. Reaseguradora Nacional de Venezuela*,
  991 F.2d 42 (2d Cir. 1993)......................................................................................................15

*Ragone v. Atl. Video at Manhattan Ctr.*,
  2008 WL 4058480 (S.D.N.Y. Aug. 29, 2008) .......................................................................20

*Register.com, Inc. v. Verio, Inc.*,
  356 F.3d 393 (2d Cir. 2004).....................................................................................................17

*Rent-A-Center, W., Inc. v. Jackson*,
  561 U.S. 63 (2010).....................................................................................................................12

*Sacchi v. Verizon Online LLC*,
  2015 WL 765940 (S.D.N.Y. Feb. 23, 2015)....................................................................18, 20

*Selden v. Airbnb, Inc.*,
  2016 WL 6476934 (D.D.C. Nov. 1, 2016) .............................................................................17

*Siegel v. Lewis*,
  358 N.E.2d 484 (N.Y. 1976)....................................................................................................20

**TABLE OF AUTHORITIES** *(continued)*

Page(s)

*Smith Barney Shearson Inc. v. Sacharow*,
    666 N.Y.S.2d 990 (App. Div. 1997) ...................................................................23

*Specht v. Netscape Commc'ns Corp.*,
    150 F. Supp. 2d 585 (S.D.N.Y. 2001) ................................................................17

*Starkey v. G Adventures, Inc.*,
    796 F.3d 193 (2d Cir. 2015) ...............................................................................18

*T.Co Metals, LLC v. Dempsey Pipe & Supply, Inc.*,
    592 F.3d 329 (2d Cir. 2010) .......................................................................15, 20

*Teah v. Macy's Inc.*,
    2011 WL 6838151 (E.D.N.Y. Dec. 29, 2011) ....................................................16

*TIC Park Centre 9, LLC v. Wojnar*,
    2016 WL 6068136 (E.D.N.Y. Oct. 14, 2016) .....................................................12

*Tompkins v. 23andMe, Inc.*,
    2014 WL 2903752 (N.D. Cal. 2014) ..................................................................17

*Tsadilas v. Providian Nat'l Bank*,
    13 A.D.3d 190 (N.Y. App. Div. 2004) ...............................................................19

*U1it4Less, Inc. v. FedEx Corp.*,
    2015 WL 3916247 (S.D.N.Y. June 25, 2015) ................................................2, 23

*United Steelworkers v. Warrior & Gulf Navigation Co.*,
    363 U.S. 574 (1960) ....................................................................................15, 20

*Valle v. ATM Nat'l, LLC*,
    2015 WL 413449 (S.D.N.Y. Jan. 30, 2015) ..................................................18, 19

*Volt Info. Scis. v. Bd. of Trustees of Leland Stanford Junior Univ.*,
    489 U.S. 468 (1989) ............................................................................................21

*Webb v. DoorDash, Inc.*,
    451 F. Supp. 3d 1360 (N.D. Ga. 2020) ..............................................................11

*Zafar v. Fast Track Leasing, LLC*,
    79 N.Y.S.3d 280 (App. Div. 2018) .....................................................................24

*Zambrano v. Strategic Delivery Sols., LLC*,
    2016 WL 5339552 (S.D.N.Y. Sept. 22, 2016) ...............................................23, 24

**TABLE OF AUTHORITIES** *(continued)*

Page(s)

**Statutes**

9 U.S.C. § 2..................................................................................................................10

9 U.S.C. § 3..............................................................................................................2, 23

9 U.S.C. § 4..................................................................................................................12

**Rules**

N.Y. C.P.L.R. § 7501.....................................................................................................23

N.Y. C.P.L.R. § 7503.....................................................................................................24

## I.    INTRODUCTION

Plaintiff Micheli & Shel, LLC—which does business as Michaeli Bakery—alleges that Defendant DoorDash, Inc. and other third-party food-ordering and food-delivery platforms violated New York City laws that placed temporary price controls on the fees that DoorDash and others could charge for their services during the COVID-19 pandemic.  DoorDash disputes the merits of Plaintiff's claims, but as a threshold matter, Plaintiff cannot litigate these claims in this Court because it has agreed—several times—to arbitrate disputes with DoorDash on an individual basis.  This Court should not permit Plaintiff to avoid its contractual obligation to arbitrate.

Plaintiff agreed to the Terms of Service ("TOS") applicable to DoorDash merchants on multiple occasions—first upon signing up for a DoorDash account in January 2020 and then several times after that, including as recently as June 1, 2021, less than one week before filing this lawsuit.  Each iteration of these binding TOS required the parties to resolve any disputes arising from or relating to their contract, including with respect to any fees DoorDash charged Plaintiff, in binding individual arbitration.  Each iteration of the TOS also notified Plaintiff that DoorDash reserved the right to update the TOS from time to time, that DoorDash would alert Plaintiff by email of material changes to the TOS, and that Plaintiff's continued use of DoorDash's services after such changes went into effect would constitute acceptance of the revised TOS.

Upon signing up for a DoorDash account in January 2020, Plaintiff affirmatively manifested assent to the TOS by checking a box next to the words "I understand and agree to … Merchant Terms of Use," where the words "Merchant Terms of Use" were in blue font and hyperlinked to the TOS.  Plaintiff subsequently manifested assent to revised versions of the TOS at least five times since then by continuing to use DoorDash's services, including twice after receiving email notifications from DoorDash regarding updated TOS.  And yet, by filing this lawsuit, Plaintiff has ignored its clear contractual agreement to arbitrate its claims with DoorDash.

Under the Federal Arbitration Act ("FAA") and New York law, courts are required to enforce arbitration agreements requiring individualized arbitration. *See Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1619 (2018); *Am. Express Corp. v. Italian Colors Rest.*, 570 U.S. 228, 238–39 (2013); *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 352 (2011); *U1it4Less, Inc. v. FedEx Corp.*, 2015 WL 3916247, at *3–5 (S.D.N.Y. June 25, 2015).

The parties' arbitration agreement indisputably covers the claims asserted here, and their agreement to arbitrate is enforceable under both the FAA and New York law. DoorDash thus asks the Court to compel Plaintiff to abide by its contractual obligation to pursue its claims in individual arbitration—and to stay this action for the pendency of arbitration proceedings.[1] *See* 9 U.S.C. § 3; *Katz v. Cellco P'ship*, 794 F.3d 341, 347 (2d Cir. 2015). This case cannot proceed in court.

## II.   STATEMENT OF RELEVANT FACTS

### A.   DoorDash's Platform Connects Customers, Restaurants, And Delivery Contractors

DoorDash is a California-based technology company that, among other services, facilitates food ordering and food delivery through its online platform. Sommers Decl. ¶ 4. The platform connects consumers, a broad array of restaurants ("merchants"), and independent-contractor delivery providers ("contractors"). *Id.* Merchants sign up to use DoorDash's services via the DoorDash website, and consumers typically place orders with merchants via the DoorDash website or a mobile application ("DoorDash app") on a smartphone or other Internet-enabled mobile device. *Id.* Merchants have significant flexibility in how they partner with DoorDash to facilitate food ordering and delivery, and they are free to leave DoorDash's platform at any time for any reason upon minimal notice to DoorDash. *Id.*

---

[1]   To be clear, if the Court compels Plaintiff's claims to arbitration, Plaintiff is also bound by its agreement to participate in informal dispute resolution with DoorDash *before* initiating formal arbitration proceedings. *See* Sommers Decl. ¶ 22 & Ex. H § 19(b) (June 2021 TOS); *id.* Ex. F § 19(2) (December 2020 TOS).

**B.      Plaintiff Consented To The TOS Upon Signing Up For DoorDash In January 2020**

Before accessing and using DoorDash's services, merchants like Plaintiff must manifest assent to the TOS.  *See* Sommers Decl. ¶¶ 6–8.  Plaintiff agreed to the TOS applicable to DoorDash merchants, including the arbitration agreement therein, when it signed up for a DoorDash account in January 2020.  *Id.* ¶ 6.

In January 2020, when Plaintiff joined the DoorDash platform, prospective merchants could sign up for DoorDash accounts via the DoorDash website.  *Id.* ¶ 7.  As a first step, prospective merchants entered the name and address of their restaurant, as well as an email address and phone number, and clicked a button reading "Get Started."  *Id.*  Prospective merchants then proceeded through a series of screens on which they entered information about, among other things, the size of their restaurant, their menu(s), and their hours of operation.  *Id.*  On the final screen, prospective merchants entered their bank account and Tax ID information, as well as information about their business name and owner.  *Id.*  At the bottom of that screen there was a checkbox next to the statement: "I understand and agree to DoorDash Mx Sign-Up Sheet (SSMO) and Merchant Terms of Use," where the words "DoorDash Mx Sign-Up Sheet (SSMO)" and "Merchant Terms of Use" were in blue font and hyperlinked to the merchant sign-up sheet and TOS, respectively.  *Id.*  Prospective merchants then completed the sign-up process by clicking a button reading "Submit."  *Id.*  Prospective merchants could not complete enrollment (*i.e.*, sign up for a DoorDash merchant account) or use DoorDash's services without clicking "Submit."  *Id.* And prospective merchants could not click "Submit" without checking the box indicating their understanding of, and agreement to, the TOS.  *Id.*

DoorDash's records reflect that Plaintiff completed the merchant sign-up process on January 21, 2020.  *Id.* ¶ 6 & Ex. A.  Plaintiff could not have done so without manifesting its assent to the TOS by checking a box appearing next to an unambiguous statement of its assent.  *Id.* ¶ 8.

3

C.      **The TOS To Which Plaintiff Assented In January 2020 Included An Arbitration Agreement And Class-Action Waiver**

Included within the TOS to which Plaintiff manifestly agreed during sign-up in January 2020 was a dispute resolution provision requiring Plaintiff and DoorDash to arbitrate their disputes on an individual basis.  *See* Sommers Decl. ¶ 6 & Ex. B § 17.  Pursuant to that agreement, with limited exceptions not relevant here, Plaintiff and DoorDash mutually agreed that "[a]ny dispute, controversy or claim arising out of, relating to or in connection with" their contract "shall be finally resolved by binding arbitration, rather than in court."  *Id.* § 17(1).

The parties' arbitration agreement contained an explicit Waiver of Class or Consolidated Actions in capitalized text:

> YOU AND THE COMPANY AGREE TO WAIVE ANY RIGHT TO RESOLVE CLAIMS WITHIN THE SCOPE OF THIS ARBITRATION AGREEMENT ON A CLASS, COLLECTIVE, OR REPRESENTATIVE BASIS.  ALL CLAIMS AND DISPUTES WITHIN THE SCOPE OF THIS ARBITRATION AGREEMENT MUST BE ARBITRATED ON AN INDIVIDUAL BASIS AND NOT ON A CLASS BASIS.  CLAIMS OF MORE THAN ONE CUSTOMER OR USER CANNOT BE ARBITRATED OR LITIGATED JOINTLY OR CONSOLIDATED WITH THOSE OF ANY OTHER CUSTOMER OR USER.

*Id.* § 17(5).

The parties' arbitration agreement further contained an express delegation clause, giving "[t]he arbitrator, and not any federal, state, or local court or agency, … exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of this Arbitration Agreement including, but not limited to any claim that all or any part of this Arbitration Agreement is void or voidable."  *See id.* § 17(3).

And although Plaintiff had to agree to the TOS, including its arbitration agreement, in order to sign up for a DoorDash account, arbitration was not a mandatory condition of Plaintiff's contractual relationship with DoorDash.  Indeed, the agreement afforded Plaintiff (and all other merchants) a clear and unmistakable opportunity to opt out of arbitration by emailing

4

merchantoptout@doordash.com within 30 days of signing up for an account. *See id.* § 17(6). However, DoorDash's records reflect that Plaintiff elected not to exercise its right to opt out of arbitration within the allotted time period. *See id.* ¶ 11.

Finally, the TOS to which Plaintiff agreed in January 2020 included a modification provision stating that "DoorDash … may revise these Terms from time to time"; that DoorDash would "notify Merchants of material revisions via a service notification or an email to the email address associated with [their] account"; and that by "continuing to access or use [DoorDash's] Services after those revisions become effective, [Merchants] agree to be bound by the revised Terms." *Id.* ¶ 6 & Ex. B § 12.

**D.      Plaintiff Repeatedly Agreed To Revised TOS By Continuing To Use DoorDash's Services—Including Twice After Receiving Express Notice Of Updates**

Not only did Plaintiff expressly agree to the TOS upon signing up for a DoorDash account in January 2020, Plaintiff also agreed to at least five subsequent changes to the TOS by continuing to use DoorDash's services after those changes went into effect (and, in two cases, after receiving emails from DoorDash notifying it of the changes).

**1.      December 2020 TOS**

For example, DoorDash updated the TOS on December 2, 2020. *See* Sommers Decl. ¶ 17 & Ex. F. The same day, it sent an email to merchants, including Plaintiff (whose email address DoorDash has on file), notifying them of the revised terms. *See id.* ¶ 18. In that message, which was accompanied by the subject line "We've updated our Online Merchant Terms," DoorDash informed merchants like Plaintiff that DoorDash was "updating [its] Merchant Terms" and that "[b]y continuing to remain on the DoorDash platform after December 9, 2020, you agree to be bound by these terms." *Id.* The email further advised merchants like Plaintiff to "review the new Merchant Terms carefully" and explicitly noted that changes had been made to the dispute resolution process. *Id.*

Like the TOS to which Plaintiff agreed in January 2020, the TOS as updated in December 2020 contained a mutual arbitration agreement with a class-action waiver and delegation clause. *See id.* ¶ 17 & Ex. F § 19(1), (4), (6). And like the TOS to which Plaintiff agreed in January 2020, the December 2020 TOS included a modification provision stating that continued use of DoorDash's services after the effective date of the revised TOS would constitute acceptance of those revised TOS. *See id.* § 14.

The December 2020 TOS also included an "Informal Resolution" provision requiring DoorDash and merchants like Plaintiff to agree to "personally meet and confer, via telephone or videoconference, in a good-faith effort to resolve informally any claim covered by this mutual Arbitration Agreement" *before* initiating arbitration proceedings. *Id.* § 19(2). Indeed, the email that Plaintiff received from DoorDash on December 2, 2020 specifically explained that DoorDash had "add[ed] an informal dispute resolution process to more quickly and efficiently resolve disputes without having to commence formal arbitration." *See id.* ¶ 18.

DoorDash's records reflect that Plaintiff continued to use DoorDash's services after the effective date of the December 2020 TOS. *See id.* ¶ 19. Plaintiff thus necessarily agreed to the December 2020 TOS, including the informal dispute resolution and arbitration provisions therein.

## 2.   June 2021 TOS

DoorDash again updated the TOS on June 1, 2021. *See* Sommers Decl. ¶ 22 & Ex. H. The same day, it sent an email to merchants, including Plaintiff, notifying them of the revised terms. *See id.* ¶ 23. In that message, which was accompanied by the subject line "We've updated our Online Merchant Terms," DoorDash explained to merchants like Plaintiff that DoorDash had "updated our Merchant Terms and their arbitration agreement to clarify our respective rights and responsibilities." *Id.* The words "Merchant Terms" were in blue font, underlined, and hyperlinked to a website containing the June 2021 TOS. *See id.* The email advised merchants like Plaintiff

that "[b]y continuing to remain on the DoorDash platform after June 8, 2021, you agree to be bound by these new terms." *Id.*

Like the TOS to which Plaintiff agreed in January 2020 and December 2020, the TOS as updated in June 2021—which are the operative TOS here—contain a mutual arbitration agreement with a class-action waiver and delegation clause materially identical to those in the January 2020 and December 2020 TOS. *See id.* ¶ 22 & Ex. H § 19(a), (e), (g). And like the TOS to which Plaintiff agreed in December 2020, the operative June 2021 TOS include an informal dispute resolution requirement before initiation of formal arbitration proceedings. *See id.* § 19(b). Finally, like the TOS to which Plaintiff agreed in January 2020 and December 2020, the June 2021 TOS include a modification provision stating that continued use of DoorDash's services after the effective date of the revised TOS constitutes acceptance of those revised TOS. *See id.* § 14.

DoorDash's records reflect that Plaintiff continued to use DoorDash's services after the effective date of the June 2021 TOS. *See id.* ¶ 24. Plaintiff thus necessarily agreed to the June 2021 TOS, reaffirming its assent to the informal dispute resolution and arbitration provisions therein.[2]

### E. Plaintiff Filed This Lawsuit Against DoorDash Notwithstanding Its Agreement To Individually Arbitrate Disputes

Despite agreeing to arbitrate its disputes with DoorDash, Plaintiff filed this lawsuit on June 7, 2021, alleging that DoorDash and other third-party food-ordering and food-delivery platforms violated temporary price controls on the fees that DoorDash and others could charge New York City restaurants during the COVID-19 pandemic. *See* Compl. ¶ 64. Plaintiff purports to represent

---

[2] DoorDash also updated the TOS in May 2020, June 2020, and February 2021, and each of those revised TOS contained arbitration and modification provisions that were materially identical to those in the TOS to which Plaintiff agreed in January 2020, December 2020, and June 2021. *See* Sommers Decl. ¶¶ 12, 14, 20 & Exs. D, E, G. By continuing to use the DoorDash platform after the effective dates of the May 2020 TOS, June 2020 TOS, and February 2021 TOS, Plaintiff adopted those versions of the TOS as well. *See id.* ¶¶ 13, 15, 21.

a class of "[a]ll food service establishments that contracted with [DoorDash] for delivery services, with businesses located within New York City that were improperly charged by [DoorDash] for delivery services."  Compl. ¶ 67(a).

On July 27, 2021, DoorDash sent a letter to Plaintiff advising Plaintiff of its agreement to arbitrate this dispute and requesting that Plaintiff "dismiss the complaint as against DoorDash so that the mutually agreed-upon informal dispute resolution and (if necessary) arbitration can proceed."  Holecek Decl. ¶ 2 & Ex. A at 1.   DoorDash informed Plaintiff that every court to consider its arbitration agreements has found them binding and enforceable, including provisions barring class-action proceedings, and requested that Plaintiff "reconsider its decision to file this lawsuit" and "save the parties and the Court the burden and expense of litigating and resolving an unnecessary motion to compel arbitration."  *Id.*  Plaintiff never responded to DoorDash's letter. *See id.* ¶ 2.

### III.   PLAINTIFF SHOULD BE COMPELLED TO ARBITRATE THIS DISPUTE ON AN INDIVIDUAL BASIS

The June 2021 TOS and the FAA govern this dispute.[3]  Here, the parties delegated *to the arbitrator* the two primary "gateway" issues—whether there is a valid arbitration agreement and whether it covers this dispute.  The Court must compel arbitration for this reason alone.  In any event, both gateway issues are satisfied here.  Moreover, the Supreme Court's decision in *Epic Systems Corp. v. Lewis* confirms that the class-action waiver in the parties' arbitration agreement

---

[3]  Although it is indisputably the June 2021 TOS that apply here, *see infra* pp. 15–20, the analysis is the same for the TOS to which Plaintiff assented in January 2020—and for the revised TOS that Plaintiff adopted in May 2020, June 2020, December 2020, and February 2021 through continued use of DoorDash's services—because each version includes materially identical arbitration and modification provisions.  *Compare* Sommers Decl. Ex. H §§ 14, 19 (June 2021 TOS), *with id.* Ex. G §§ 14, 19 (February 2021 TOS); *and id.* Ex. F §§ 14, 19 (December 2020 TOS) *and id.* Ex. E §§ 14, 19 (June 2020 TOS) *and id.* Ex. D §§ 14, 19 (May 2020 TOS) *and id.* Ex. B §§ 12, 17 (TOS to which Plaintiff agreed upon signing up for DoorDash account in January 2020).

is enforceable.  *See* 138 S. Ct. at 1619.  And even if it is New York law (and not the FAA) that governs here, Plaintiff's claims still must be arbitrated.

Courts evaluating motions to compel arbitration under DoorDash's arbitration agreements—including materially identical arbitration agreements in the contracts that DoorDash enters into with independent-contractor delivery providers and with consumers—routinely compel arbitration and stay court proceedings pending arbitration.[4]  Plaintiff can offer this Court no reason to reach an aberrant result.

## A.   The Arbitration Agreement Is Governed By The Federal Arbitration Act

The FAA declares a "liberal federal policy" favoring arbitration.  *Concepcion*, 563 U.S. at 346; *Epic Sys.*, 138 S. Ct. at 1621.  The FAA provides: "A written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising . . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  Under the FAA, courts must "move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible."  *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 22 (1983).

Here, the parties' arbitration agreement is governed by the FAA for two independent reasons.  *First*, the agreement expressly states that it is governed by the FAA.  *See* Sommers Decl. ¶ 22 & Ex. H § 19(c) ("This Arbitration Agreement is governed by the Federal Arbitration Act in

---

[4]  *See, e.g.*, *Arkin v. DoorDash, Inc.*, 2020 WL 4937825 (E.D.N.Y. Aug. 24, 2020) (granting motion to compel arbitration under consumer agreement); *Peter v. DoorDash, Inc.*, 445 F. Supp. 3d 580 (N.D. Cal. Apr. 23, 2020) (same); *Asaturyan v. DoorDash, Inc.*, No. 20STCV30480 (L.A. Cnty. Super. Ct. Jan. 27, 2021) (granting motion to compel arbitration under independent contractor agreement) (Holecek Decl. Ex. E); *McGrath v. DoorDash, Inc.*, 2020 WL 6526129 (N.D. Cal. Nov. 5, 2020) (same); *Corbin v. DoorDash, Inc.*, No. CGC-20-584342 (S.F. Cnty. Super. Ct. Sept. 24, 2020) (Holecek Decl. Ex. D) (same); *Magana v. DoorDash, Inc.*, 343 F. Supp. 3d 891 (N.D. Cal. 2018) (same); *Edwards v. DoorDash, Inc.*, 2017 WL 5514302 (S.D. Tex. Oct. 18, 2017); *DoorDash, Inc. v. Marciano*, No. 2015-1-CV-287843 (Santa Clara Cnty. Super. Ct.) (Holecek Decl. Ex. H).

all respects.").  That alone is sufficient to bring it within the purview of the FAA.  *See Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 63–64 (1995); *DIRECTV, Inc. v. Imburgia*, 577 U.S. 47, 53–59 (2015).  Courts must "enforce arbitration agreements according to their terms," including this choice-of-law provision selecting the FAA.  *Epic Sys.*, 138 S. Ct. at 1619; *see also Mastrobuono*, 514 U.S. at 62–64 (construing choice-of-law provision in favor of arbitration).  And Courts apply the FAA—even absent evidence of interstate commerce—if the parties so agree, as here.  *See, e.g., Bynum v. Maplebear Inc.*, 2016 WL 5373643, at *4 (E.D.N.Y. Sept. 19, 2016) (compelling arbitration under FAA where parties contractually agreed to be governed by FAA without a finding of impact on interstate commerce); *Boule v. Credit One Bank*, 2016 WL 3015251, at *1 (S.D.N.Y. May 11, 2016) (same); *see also Montes v. San Joaquin Cmty. Hosp.*, 2014 WL 334912, at *5 (E.D. Cal. Jan. 29, 2014) (courts honor parties' contractual agreement to be bound by the FAA).

 *Second*, the FAA applies because the parties' agreement "affect[s] commerce."  *See Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 273–74, 281 (1995) (FAA's requirement that an agreement "involv[ing] commerce" is "broad and is indeed the functional equivalent of 'affecting'" commerce, "even if the parties did not contemplate an interstate commerce connection").  The phrase "involving commerce" is "functional[ly] equivalent" to the phrase "affecting commerce," which "normally signals Congress' intent to exercise its Commerce Clause powers to the full."  *Id.* at 273.  This is so "even if the parties did not contemplate an interstate commerce connection."  *Id.* at 281; *accord Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003).  For the FAA to apply, a party need not "show[] any specific effect upon interstate commerce," as long as in the aggregate the economic activity in question would represent "a general practice ... subject to federal control."  *Alafabco*, 539 U.S. at 56–57.

Courts regularly apply the FAA where, as here, a contract involves transactions and communications over email and the Internet. *See, e.g.*, *Camilo v. Lyft, Inc.*, 384 F. Supp. 3d 435, 439 (S.D.N.Y. 2019) (FAA governed contract "pertain[ing] to internet transactions and rideshare services"); *Burks v. Autonomy, Inc.*, 2012 WL 13005954, at *3 (S.D. Fla. May 15, 2012) (FAA governed contract with "software company dealing in Internet content management solutions with clients across the United States"); *Manard v. Knology, Inc.*, 2010 WL 2528320, at *3 (M.D. Ga. June 18, 2010) (FAA governed contract for Internet services).

Here, the FAA applies because DoorDash is a technology company that, among other services, facilitates food ordering and food delivery through its online platform, which connects consumers, a broad array of merchants, and contractors. *See* Sommers Decl. ¶ 4. Merchants sign up to use DoorDash's services via the DoorDash website, and consumers typically place orders with merchants via the DoorDash website or via the DoorDash app on a smartphone or other Internet-enabled mobile device. *See id.*; Holecek Decl. Ex. B ¶¶ 4–8 (explaining interstate nature of DoorDash's business).[5]

**B.     The Arbitration Agreement Is Valid And Must Be Enforced**

Because arbitration is a matter of contract, the FAA requires courts to compel arbitration "in accordance with the terms of the agreement" upon the motion of a party to the agreement. 9 U.S.C. § 4. In determining whether to compel arbitration under the FAA, courts generally look at

---

[5]  Indeed, courts unanimously have concluded that the arbitration agreement in the contracts that DoorDash enters into with delivery contractors—which, like the merchant TOS, explicitly provides that the FAA governs—is governed by the FAA. *See Magana*, 343 F. Supp. 3d at 899; *Farran* (Holecek Decl. Ex. F), at 1; *Marko* (Holecek Decl. Ex. G), at 2; *Edwards*, 2017 WL 5514302, at *13; *Marciano* (Holecek Decl. Ex. H), at 4. Likewise, courts unanimously have determined that the FAA governs the materially identical arbitration agreement in the contracts that DoorDash enters into with consumers. *See Arkin*, 2020 WL 4937825, at *4 (finding the FAA governs); *Peter*, 445 F. Supp. 3d at 582 (same); *Webb v. DoorDash, Inc.*, 451 F. Supp. 3d 1360, 1366 (N.D. Ga. 2020) (same).

two "gateway" issues: (i) whether there is a valid agreement to arbitrate between the parties; and (ii) whether the agreement covers the dispute. *See Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83–84 (2002). If there is any doubt as to the proper interpretation of the agreement on any issue related to arbitrability, the FAA "establishes that … [it] should be resolved *in favor of arbitration*, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense of arbitrability." *Moses H. Cone*, 460 U.S. at 24–25 (emphasis added); *see also TIC Park Centre 9, LLC v. Wojnar*, 2016 WL 6068136, at *5 (E.D.N.Y. Oct. 14, 2016) (citing *Moses H. Cone* for same and compelling arbitration).

### 1.     The Agreement's Delegation Clause Is Valid And Enforceable

Before reaching these gateway issues, however, a court must first examine the agreement to determine whether the parties agreed to commit threshold questions of arbitrability to the arbitrator. *See Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 70 (2010) ("An agreement to arbitrate a gateway issue is simply an additional antecedent agreement the party seeking arbitration asks the court to enforce . . . ."). If the parties have "clearly and unmistakably" agreed to delegate questions of arbitrability to the arbitrator, then the arbitrator must decide the threshold issues. *Howsam*, 537 U.S. at 83; *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019) (courts may not override delegation clauses); *see also Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1208–09 (9th Cir. 2016) (same); *Foran v. NFL*, 2019 WL 2408030, at *1–3 (S.D.N.Y. June 7, 2019) (enforcing delegation clause under *Henry Schein*); *Porcelli v. JetSmarter, Inc.*, 2019 WL 2371896, at *4 (S.D.N.Y. June 5, 2019) (same).

Here, the parties' arbitration agreement clearly and unmistakably provides that "[t]he arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of this

Arbitration Agreement." Sommers Decl. ¶ 22 & Ex. H § 19(e). Moreover, the parties' agreement expressly incorporates the rules of the designated arbitration provider, ADR Services, Inc. *See id.* § 19(c). And ADR Services' rules provide: "[T]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement." Holecek Decl. Ex. C at R.8.[6] The express incorporation of the arbitration provider's rules therefore constitutes further clear and unmistakable evidence of the parties' intent to arbitrate the threshold issue of arbitrability. *See Emilio v. Sprint Spectrum L.P.*, 508 F. App'x 3, 4–5 (2d Cir. 2013) (incorporation of arbitration provider's rules shows clear and unmistakable intent to delegate questions of arbitrability); *LG Elecs., Inc. v. Wi-LAN USA, Inc.*, 2014 WL 3610796, at *6 (S.D.N.Y. July 21, 2014) (same); *Belnap v. Iasis Healthcare*, 844 F.3d 1272, 1284 (10th Cir. 2017) (same); *Cooper v. WestEnd Capital Mgmt., L.L.C.*, 832 F.3d 534, 546 (5th Cir. 2016) (same). The Court should enforce this clear and unmistakable agreement and allow the arbitrator to decide any disputes about arbitrability.

Further, there can be no argument here that the parties' arbitration agreement is unconscionable (which is Plaintiff's burden to prove in any event). Indeed, courts repeatedly have held that where, as here, the arbitration agreement provides an opportunity to opt out of arbitration,

---

[6] Even if the Court concludes that it is the February 2021 TOS or December 2020 TOS that apply here, those versions of the TOS contain similar provisions expressly incorporating JAMS' arbitration rules and procedures. *See* Sommers Decl. Ex. G § 19(3) (February 2021 TOS); *id.* Ex. F § 19(3) (December 2020 TOS). And both sets of JAMS' rules similarly provide that "[t]he Arbitrator has the authority to determine jurisdiction and arbitrability issues as a preliminary matter." Holecek Decl. Ex. I at R.8(b) (JAMS Streamlined Arbitration Rules & Procedures); *id.* Ex. J at R.11(b) (JAMS Comprehensive Arbitration Rules & Procedures). The same is true for each of the other versions of the TOS that Plaintiff adopted, including the version to which Plaintiff affirmatively manifested its assent in January 2020. *See* Sommers Decl. Ex. E § 19(2) (June 2020 TOS incorporating JAMS rules); Ex. D § 19(2) (May 2020 TOS incorporating JAMS rules); Ex. B § 17(2) (TOS to which Plaintiff agreed in January 2020 incorporating JAMS rules).

it is not adhesive and there can be no procedural unconscionability.  *See Kai Peng v. Uber Techs., Inc.*, 237 F. Supp. 3d 36, 55–56 (E.D.N.Y. 2017) (no unconscionability where plaintiff was permitted to opt out); *Bassett v. Elec. Arts, Inc.*, 93 F. Supp. 3d 95, 108 (E.D.N.Y. 2015) (same); *Dzanoucakis v. Chase Manhattan Bank, USA*, 2009 WL 910691, at *10 (E.D.N.Y. Mar. 31, 2009) (same); *see also Mohamed*, 848 F.3d at 1211 (opt-out provision meant "the agreements were not procedurally unconscionable"); *Kilgore v. KeyBank, Nat'l Ass'n*, 718 F.3d 1052, 1059 (9th Cir. 2013) (en banc) (same).  Courts have therefore upheld delegation clauses found in voluntary arbitration agreements on the ground that they are not unconscionable.  *See Mohamed*, 848 F.3d at 1211 (upholding delegation clause in arbitration agreement that provided right to opt out).

Here, DoorDash conspicuously notified Plaintiff of the right to opt out of the parties' arbitration agreement in two different places in the TOS to which Plaintiff agreed upon signing up for a DoorDash account in January 2020.[7]  *First*, the very first page of the TOS notified Plaintiff in bold, capitalized text that the arbitration agreement would, with limited exceptions inapplicable here:

> **REQUIRE DISPUTES TO BE SUBMITTED TO BINDING AND FINAL ARBITRATION. <u>UNLESS YOU OPT OUT OF THE ARBITRATION AGREEMENT</u>: (1) YOU WILL ONLY BE PERMITTED TO PURSUE CLAIMS AND SEEK RELIEF AGAINST US ON AN INDIVIDUAL BASIS, NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY CLASS OR REPRESENTATIVE ACTION OR PROCEEDING; AND (2) YOU ARE**

---

[7]  The other versions of the TOS that Plaintiff adopted, including the December 2020 TOS and June 2021 TOS, contain equally clear—and materially similar—language regarding opt-out rights.  However, those agreements expressly did not provide merchants who, like Plaintiff, had agreed to a prior version of the TOS a second opportunity to opt out of arbitration.  *See* Sommers Decl. Ex. H § 19(i) ("DoorDash's updates to these Terms of Service do not provide a new opportunity to opt out of the Arbitration Agreement if you had previously agreed to a version of DoorDash's Terms of Service and did not validly opt out of arbitration. DoorDash will continue to honor the valid opt outs of merchants who validly opted out of the Arbitration Agreement in a prior version of the Terms of Service."); *id.* Ex. F § 19(7) (materially same).  Hence it is the opt-out language in the TOS to which Plaintiff agreed in January 2020 that is relevant here.

14

**WAIVING YOUR RIGHT TO SEEK RELIEF IN A COURT OF LAW AND TO HAVE A JURY TRIAL ON YOUR CLAIMS.**

Sommers Decl. Ex. B at 1 (underlining added for emphasis). *Second*, the arbitration provision itself notified Plaintiff, in a distinct subsection entitled "**Opt Out**," that Plaintiff "may opt out of this Arbitration Agreement" by "notify[ing] the Company in writing no later than 30 days after first becoming subject to this Arbitration Agreement." *Id.* § 17(6). The opt-out provision provided Plaintiff with specific instructions for how to opt out of arbitration, including the required content of a request to opt out, and the email address to which Plaintiff should send such a request. *See id.* Plaintiff had ample opportunity to exercise its right to opt out of arbitration with DoorDash, but it elected not to do so. *See id* ¶ 11.

### 2. The Gateway Issues Under The FAA Have Been Satisfied

Even if the Court were to find that it, and not an arbitrator, should determine arbitrability despite the delegation clause (and it should not), the Court should compel Plaintiff's claims to individual arbitration because both of the "gateway" issues under the FAA have been met here.

### a. A Valid Agreement To Arbitrate Exists

"[A]rbitration is a matter of contract . . . ." *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960). Ordinary state law principles governing the formation of contracts are therefore used to determine whether the parties agreed to arbitrate. *See First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *T.Co Metals, LLC v. Dempsey Pipe & Supply, Inc.*, 592 F.3d 329, 344 (2d Cir. 2010). The moving party's burden is light in this regard: DoorDash need only show, by a preponderance of the evidence, that an agreement to arbitrate exists. *See Progressive Cas. Ins. Co. v. C.A. Reaseguradora Nacional de Venezuela*, 991 F.2d 42, 46 (2d Cir. 1993).

Under New York law, the "minimum . . . essential terms of a contract include [1] the identification of the parties, [2] a sufficient description of the subject matter, and [3] consideration."

*Personalized Media Commc'ns, L.L.C. v. StarSight Telecast, Inc.*, 2000 WL 1457079, at *3 (S.D.N.Y. Sept. 28, 2000) (citing *Cayea v. Lake Placid Granite Co.*, 665 N.Y.S.2d 127, 128 (App. Div. 1997), and compelling arbitration). "A contract is enforceable if there is a meeting of the minds between the parties regarding material elements of the agreement." *Id.* (quotation marks and citations omitted). The parties' arbitration agreement here meets all of these requirements.

*First*, the June 2021 TOS clearly identifies the parties. *See* Sommers Decl. Ex. H § 2 ("Merchant and DoorDash agree they are independent businesses whose relationship is governed by the Sign-Up Sheet, these Terms, and any applicable terms between the Parties.").

*Second*, the June 2021 TOS sufficiently describes the subject matter, stating in capital letters:

> YOU AND DOORDASH AGREE TO WAIVE ANY RIGHT TO RESOLVE CLAIMS WITHIN THE SCOPE OF THIS ARBITRATION AGREEMENT ON A CLASS, COLLECTIVE, OR REPRESENTATIVE BASIS. ALL CLAIMS AND DISPUTES WITHIN THE SCOPE OF THIS ARBITRATION AGREEMENT MUST BE ARBITRATED ON AN INDIVIDUAL BASIS AND NOT ON A CLASS BASIS. CLAIMS OF MORE THAN ONE MERCHANT CANNOT BE ARBITRATED OR LITIGATED JOINTLY OR CONSOLIDATED WITH THOSE OF ANY OTHER CUSTOMER OR USER.

*Id.* § 19(g).

*Third*, the parties' arbitration agreement is supported by valid consideration: the parties' mutual promises to arbitrate disputes. *See Marciano v. DCH Auto Grp.*, 14 F. Supp. 3d 322, 337 (S.D.N.Y. 2014) (compelling arbitration and finding that "the [Arbitration] Agreement by itself contains sufficient consideration because . . . it mutually binds both parties to submit claims exclusively to arbitration"); *Hellenic Lines, Ltd. v. Louis Dreyfus Corp.*, 372 F.2d 753, 758 (2d Cir. 1967) (party's "promise to arbitrate was sufficient consideration to support [the other party's] promise to arbitrate"); *Teah v. Macy's Inc.*, 2011 WL 6838151, at *5 (E.D.N.Y. Dec. 29, 2011) ("There is clearly adequate consideration for the arbitration agreement, as it binds both parties to arbitrate their claims, and formed part of a valid employment agreement.").

16

*Fourth*, there is a meeting of the minds.  Plaintiff affirmatively acknowledged its intent—after ample opportunity for review—to be bound by the TOS to which it agreed in January 2020 and, later (after receiving explicit notice of the update), the December 2020 TOS and June 2021 TOS.

The TOS to which Plaintiff agreed in January 2020 constituted a valid "clickwrap" agreement "in which an internet user accepts a website's terms of use by clicking an 'I agree' or 'I accept' button, with a link to the agreement readily available." *Selden v. Airbnb, Inc.*, 2016 WL 6476934, at \*4 (D.D.C. Nov. 1, 2016).  "'[C]ourts that have had occasion to consider click-wrap agreements have held them to be valid and enforceable.'"  *Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 429 n.41 (2d Cir. 2004), *quoting Specht v. Netscape Commc'ns Corp.*, 150 F. Supp. 2d 585, 594 (S.D.N.Y. 2001); *see also In re Facebook Biometric Info. Privacy Litig.*, 185 F. Supp. 3d 1155, 1165 (N.D. Cal. 2016) ("[T]he closer digital agreements are to the clickwrap end of the spectrum, the more often they have been upheld as valid and enforceable.").

In *Levin v. Caviar*, 146 F. Supp. 3d 1146, 1157 (N.D. Cal. 2015), for example, the court enforced a clickwrap agreement in light of the "[c]onsiderable recent authority … find[ing] agreements such as the one here enforceable."  So, too, in *Mohamed v. Uber Techs., Inc.*, 109 F. Supp. 3d 1185, 1196 (N.D. Cal. 2015) (finding an enforceable contract where "Plaintiffs clicked a 'Yes, I agree' button that appeared near hyperlinks to the relevant contracts"), *rev'd in part on other grounds*, 848 F.3d 1201 (9th Cir. 2016); *Tompkins v. 23andMe, Inc.*, 2014 WL 2903752, at \*8 (N.D. Cal. 2014) (enforceable contract where "each named Plaintiff clicked a box or button that appeared near a hyperlink to the TOS to indicate acceptance of the TOS," even where "the TOS were hyperlinked and not presented on the same screen").

Here, in order to complete enrollment, Plaintiff had to check a box next to the statement: "I understand and agree to DoorDash Mx Sign-Up Sheet (SSMO) and Merchant Terms of Use,"

17

where the words "DoorDash Mx Sign-Up Sheet (SSMO)" and "Merchant Terms of Use" were in blue font and hyperlinked to the merchant sign-up sheet and TOS, respectively.  Sommers Decl. ¶ 7 & Ex. C.  Without checking that box, Plaintiff could not have clicked the "Submit" button and completed enrollment.  *Id.* ¶ 8.  Plaintiff thus unambiguously manifested assent to the TOS, and did not exercise its contractual right to opt out of arbitration within 30 days.  *See id.* ¶ 11.  Plaintiff therefore consented to, and (having subsequently agreed to iterative updates to the TOS) remains bound by, the parties' agreement to arbitrate disputes.

Indeed, numerous courts have held that continued use of a service after email notification of updated terms of use constitutes assent to the updated terms, especially where, as here, the email title and body inform the recipient of the email's content and the presence of an updated arbitration agreement, and the company posts the updated terms to its website.  *See, e.g.*, *Starkey v. G Adventures, Inc.*, 796 F.3d 193, 195–97 (2d Cir. 2015) (emails containing a hyperlink sufficiently directed plaintiff's notice to the terms and conditions regarding forum-selection clause); *Sacchi v. Verizon Online LLC*, 2015 WL 765940, at *7 (S.D.N.Y. Feb. 23, 2015) (finding sufficient notice of a newly inserted arbitration agreement where the agreement was posted to Verizon's website and referred to in an email sent to Plaintiff); *Pincaro v. Glassdoor, Inc.*, 2017 WL 4046317, at *6 (S.D.N.Y. Sept. 12, 2017) ("The Court finds that the design and language used in the July 2016 Email reasonably put Plaintiffs on notice that the Terms were being updated and that by using the website 30 days after receipt of the email, Plaintiffs unambiguously assented to the Terms as a matter of law." (collecting cases)).

Further, courts regularly hold that "customers accept revised terms of their accounts by continuing to use their accounts after receiving the revised terms."  *Valle v. ATM Nat'l, LLC*, 2015

WL 413449, at *3 (S.D.N.Y. Jan. 30, 2015) (citing cases).[8]  In *Valle v. ATM National*, the court

compelled arbitration based on an agreement in the defendant's updated terms of service.  The

updated terms notified the plaintiffs that they could reject the new terms by closing their account.

*Id.* at *2.  The plaintiffs' continued use of their accounts, the court found, constituted assent to the

updated terms, including the arbitration agreement.  *Id.* at *3.  And in *Anonymous v. JP Morgan

Chase & Co.*, 2005 WL 2861589, at *2 (S.D.N.Y. Oct. 31, 2005), the court compelled arbitration

where a credit card contract permitted the defendant to update its terms, the plaintiff received

notice of updated terms (including an updated arbitration agreement), and manifested his assent

by "us[ing] the Chase credit card to make purchases after the effective date of the amendment."

*See also Tsadilas v. Providian Nat'l Bank*, 13 A.D.3d 190, 190 (N.Y. App. Div. 2004) ("Plaintiff

consented to [the arbitration provision] by failing to opt out and by continuing to use her credit

cards." (citations omitted)).

Here, Plaintiff is bound by the June 2021 TOS because it received an email from DoorDash

on the effective date of those terms in which it was advised that it "agree[d] to be bound by these

new terms" by "continuing to remain on the DoorDash platform" after their effective date.

Sommers Decl. ¶ 23.  The email was accompanied by the subject line "Updated Online Merchant

Terms," and the body of the email explained that DoorDash had "updated our Merchant Terms

and their arbitration agreement to clarify our respective rights and responsibilities," where the

words "Merchant Terms" were in blue font, underlined, and hyperlinked to a website containing

the June 2021 TOS.  *See id.*  As the Second Circuit has held, "a reasonably prudent user" would

---

[8]  Courts also regularly enforce modification provisions like the ones contained in every iteration
    of the TOS at issue here.  *See, e.g.*, *DeVries v. Experian Info. Sols., Inc.*, 2017 WL 733096, at
    *7–8 (N.D. Cal. Feb. 24, 2017); *Gillam v. Branch Banking & Tr. Co.*, 2018 WL 3744019, at
    *3 (E.D. Va. Aug. 7, 2018) ("Contracts can contain provisions saying that continued use will
    bind parties to modified contract terms.").

know that this hyperlinked text leads to "to another webpage where additional information will be found." *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 78 (2d Cir. 2017). The email further informed Merchants that "if they d[id] not agree to these new terms and wish[ed] to terminate [their] contract," they should contact DoorDash, and provided a link to do so. *Id.*

Plaintiff's continued use of the DoorDash platform after DoorDash provided notice to Plaintiff of the December 2020 and June 2021 TOS constituted assent to the updated terms. *Sacchi*, 2015 WL 765940, at *7. As noted above, Plaintiff never opted out of arbitration with DoorDash; similarly, Plaintiff has never contacted DoorDash to terminate its account (*see* Sommers Decl. ¶ 25), further evidencing consent to be bound by the terms.

All of the elements for the valid formation of an agreement to arbitrate exist here.

### b.      Plaintiff's Claims Are Covered By The Arbitration Agreement

"[A]bsent some ambiguity in the agreement . . . it is the language of the contract that defines the scope of disputes subject to arbitration." *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002). "To determine whether the parties intended to submit a given matter to arbitration, the general rule is that courts 'should apply ordinary state-law principles that govern the formation of contracts,'" *T.Co Metals*, 592 F.3d at 344 (quoting *First Options*, 514 U.S. at 944), keeping in mind New York's "strong public policy favoring arbitration," *Ragone v. Atl. Video at Manhattan Ctr.*, 2008 WL 4058480, at *6 (S.D.N.Y. Aug. 29, 2008); *accord Siegel v. Lewis*, 358 N.E.2d 484, 485 (N.Y. 1976). Courts must conclude disputes are covered "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *United Steelworkers*, 363 U.S. at 582–83. "Doubts should be resolved in favor of coverage." *Id.* at 583; *accord David L. Threlkeld & Co. v. Metallgesellschaft Ltd. (London)*, 923 F.2d 245, 250 (2d Cir. 1991).

20

Here, there is no ambiguity.  Rather, the language of the parties' arbitration agreement makes clear that Plaintiff's claims must be arbitrated.  Specifically, Plaintiff has agreed, with certain exceptions not relevant here, to arbitrate "[a]ny dispute, controversy or claim arising out of, relating to or in connection with [its] contract" with DoorDash.  Sommers Decl. Ex. H § 19(a). Plaintiff claims DoorDash improperly charged Plaintiff fees in excess of those permitted by New York City law during the COVID-19 pandemic, and Plaintiff's contract with DoorDash addresses, among other things, "Payment & Pricing" and "Fees."  *Id.* Ex. A.  This dispute plainly "relat[es] to" the parties' contract and thus falls squarely within the scope of their arbitration agreement.

**C.      The Class-Action Waiver Is Valid And Enforceable**

It is well settled that class-action waivers in arbitration agreements governed by the FAA are valid and enforceable.  The "primary purpose" of the FAA is "ensuring that private agreements to arbitrate are enforced ***according to their terms***."  *Volt Info. Scis. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989) (emphasis added); *see also Mastrobuono*, 514 U.S. at 53–54 (enforcement of arbitration agreements "according to their terms" is the "central purpose" of the FAA); *Concepcion*, 563 U.S. at 344 (same).  Most recently, the Supreme Court held that this instruction by Congress to enforce arbitration agreements according to their terms "include[s] terms providing for individualized proceedings."  *Epic Sys.*, 138 S. Ct. at 1619.

Accordingly, courts have routinely enforced the materially identical class-action waiver in DoorDash's arbitration agreements with consumers and contractors.  In *Arkin v. DoorDash, Inc.*, for example, the court acknowledged DoorDash's class-action waiver and compelled the plaintiff to arbitration on an individual basis.  *See* 2020 WL 4937825, at *4.  So did the *Peter* court.  *See* 445 F. Supp. 3d at 583, 587.  And the *McGrath* court.  *See* 2020 WL 6526129, at *3, *12.  Other

courts are in accord.  *See, e.g.*, *Corbin* (Holecek Decl. Ex. D) at 2; *Magana*, 343 F. Supp. 3d at 901; *Farran* (Holecek Decl. Ex. F) at 2; *Marko* (Holecek Decl.  Ex. G) at 2.

Here, the class-action waiver in the parties' arbitration agreement specifically prohibits claims from being brought "on a class, collective, or representative basis."  Sommers Decl. Ex. H § 19(g).[9]  The Supreme Court repeatedly has upheld similar class-action waivers.  In *Epic Systems*, for instance, the Supreme Court held that class-action waivers in arbitration agreements governed by the FAA are enforceable, rejecting an argument that they are barred by the National Labor Relations Act.  *See* 138 S. Ct. at 1619.  In *Concepcion*, the Court held that the FAA preempted the California Supreme Court's rule restricting enforcement of class-action waivers because it interfered with the fundamental attributes of arbitration and created a scheme inconsistent with the FAA.  563 U.S. at 352.  Two years later, in *American Express*, the Supreme Court enforced a class-action waiver in an arbitration agreement, noting that courts "must rigorously enforce" arbitration agreements according to their terms, including terms that "specify with whom [the parties] choose to arbitrate their disputes."  570 U.S. at 233.

Under binding Supreme Court precedent, the parties' agreement not to pursue class claims—whether in court or in arbitration—is valid and must be enforced.  Plaintiff should be compelled to arbitrate its claims on an individual basis pursuant to the terms of the parties' arbitration agreement, and this action should be stayed in the interim.  9 U.S.C. § 3; *Katz*, 794 F.3d at 347.

**D.    Even Under New York Law, Plaintiff Must Individually Arbitrate Its Claims**

If this Court were to find that the FAA does not govern here (it does), DoorDash moves in the alternative to compel arbitration under New York law.  And under New York law, too, Plaintiff must submit to arbitration on an individual basis.

---

[9]   Even if this case were allowed to proceed in court (it is not), Plaintiff has also agreed not to assert claims in court on a class-wide basis.  *See* Sommers Decl. Ex. H § 20.

New York's arbitration statute, N.Y. C.P.L.R. § 7501 *et seq.*, mirrors the FAA in all relevant respects. *First*, New York law recognizes a public policy favoring arbitration. *Badinelli v. Tuxedo Club*, 183 F. Supp. 3d 450, 453 n.1 (S.D.N.Y. 2016) (compelling arbitration under FAA but stating that "the result would be the same under both [New York law] and the FAA, as both strongly favor enforcing arbitration agreements"). *Second*, DoorDash has met its burden to establish the formation of a valid contract to arbitrate under New York law. *See supra* pp. 15–20. *Third*, New York law recognizes that courts should give effect to "clear and unmistakable agreement[s] to arbitrate arbitrability." *Contec Corp. v. Remote Sol., Co.*, 398 F.3d 205, 208 n.1 (2d Cir. 2005) (quotation marks and citations omitted); *accord Smith Barney Shearson Inc. v. Sacharow*, 666 N.Y.S.2d 990, 992 (App. Div. 1997). Here, every version of the TOS to which Plaintiff agreed, including the operative June 2021 TOS, clearly and unmistakably provides that an arbitrator will decide substantive arbitrability. *See supra* pp. 12–15. *Fourth*, New York law recognizes the validity of class-action waivers. *U1it4Less, Inc. v. FedEx Corp.*, 2015 WL 3916247, at *3–5 (S.D.N.Y. June 25, 2015); *Korea Week, Inc. v. Got Capital, LLC*, 2016 WL 3049490, at *8–10 (E.D. Pa. May 27, 2016) (interpreting New York law).

"Under New York law, the Court addresses three threshold questions in deciding a motion to compel arbitration: (1) whether the parties made a valid agreement to arbitrate; (2) if so, whether the agreement has been complied with; and (3) whether the claim sought to be arbitrated would be time-barred if it were asserted in state court." *Zambrano v. Strategic Delivery Sols., LLC*, 2016 WL 5339552, at *9 (S.D.N.Y. Sept. 22, 2016). DoorDash has explained that the parties entered into a valid agreement under New York law. *See supra* pp. 15–20. DoorDash has complied with the parties' agreement, and it does not allege that Plaintiff's claims would be time-barred if asserted

23

in state court.  Thus, as in *Zambrano*, "[e]ven if the arbitration provision were entirely exempt from the FAA" (it is not), "New York law also compels arbitration of [Plaintiff's] claims."  *Id.*

Even if the Court were to apply New York law, it nonetheless should compel Plaintiff to arbitration on an individual basis and stay proceedings.  *See* N.Y. C.P.L.R. § 7503 (courts "shall" stay action upon order compelling arbitration); *Zafar v. Fast Track Leasing, LLC*, 79 N.Y.S.3d 280 (App. Div. 2018) (affirming order compelling arbitration and staying proceedings under both FAA and New York law); *Kai Peng*, 237 F. Supp. 3d at 59 n.18 (noting that, "under New York law, class action waivers in arbitration agreements regularly are upheld against challenges of unconscionability" and collecting cases); *Zambrano*, 2016 WL 5339552, at *10 (compelling arbitration and staying action under N.Y. C.P.L.R. § 7503(a)); *Nayal v. HIP Network Servs. IPA, Inc.*, 620 F. Supp. 2d 566, 573 (S.D.N.Y. 2009) ("Courts applying New York law … have uniformly held that class action waivers are not unconscionable.").

## IV.   CONCLUSION

For the foregoing reasons, the Court should compel Plaintiff to arbitrate its claims on an individual basis pursuant to the June 2021 TOS—and stay this action pending the outcome of arbitration.

Dated:   August 2, 2021
        New York, NY

                            **GIBSON, DUNN & CRUTCHER LLP**

By: */s/ Ilissa Samplin*
       Ilissa Samplin (IS2937)
       Michael Holecek (*PHV forthcoming*)
       333 South Grand Avenue
       Los Angeles, CA  90071-3197
       Telephone:  213.229.7000
       Facsimile:  213.229.7520
       Email: isamplin@gibsondunn.com
       Email: mholecek@gibsondunn.com

       Joshua S. Lipshutz (*PHV forthcoming*)
       1050 Connecticut Avenue, N.W.
       Washington, DC  20036-5306
       Telephone:  202.955.8500
       Facsimile:  202.467.0539
       Email: jlipshutz@gibsondunn.com

       *Attorneys for Defendant DoorDash, Inc.*

25