# EXHIBIT B

# Electronic Record of Contracts

This document was generated as a record of certain contracts created, accepted and stored electronically.



## Summary of Contracts

This document contains the following contracts.

| Title | Version | ID |
|---|---|---|
| Merchant Terms of Use | 1.0 | 5cf6bdd085780d5955df70c9 |

Contract accepted by:

**Adir Michaeli**
Owner,
Michaeli Bakery

**Signer ID:** adir@michaelibakery.com
**Email:** adir@michaelibakery.com

| | |
|---|---|
| Date / Time: | Jan 21, 2020 at 2:45 PM GMT |
| IP Address: | 74.64.243.216 |
| User Agent: | Mozilla/5.0 (Macintosh; Intel Mac OS X 10_12_6) AppleWebKit/605.1.15 (KHTML, like Gecko) Version/12.1.2 Safari/605.1.15 |

Metadata provided with the acceptance:

| | |
|---|---|
| first_name | Adir |
| last_name | Michaeli |
| company_name | Michaeli Bakery |
| legal_business_name | Micheli and Shel LLC |
| restaurant_street | 115A Division Street |
| restaurant_city | New York |
| restaurant_state_province | NY |
| restaurant_postal_code | 10002 |
| restaurant_country | US |
| contact_email | adir@michaelibakery.com |

| | |
|---|---|
| contact_phone | 6463602284 |
| promotion_fee | 30 |
| order_protocol | Email |
| order_fax_number | |
| order_protocol_email | adir@michaelibakery.com |
| activation_fee | 0 |
| tablet_fee | $6 |
| printer_fee | $3.15 |
| restaurant_name | Michaeli Bakery |
| contract_source | SSMO |

Merchant Terms of Use                                                                       v1.0  |  5cf6bdd085780d5955df70c9

BEFORE YOU PARTICIPATE IN THE PROGRAM(S) OPERATED BY DOORDASH, INC. ("DOORDASH") THAT ARE COVERED BY THESE DOORDASH MERCHANT TERMS OF USE ("MERCHANT TERMS" OR "TERMS"), PLEASE READ THESE TERMS CAREFULLY. BY EXECUTING THE SIGN-UP SHEET WITH DOORDASH OR OTHERWISE AGREEING TO THESE TERMS, INCLUDING THROUGH AN AUTHORIZED DOORDASH PARTNER, YOU OR THE ENTITY THAT YOU REPRESENT AGREE ON BEHALF OF ALL PARTICIPATING RESTAURANT LOCATIONS TO BE BOUND BY THESE TERMS TO THE EXCLUSION OF ALL OTHER TERMS.

SECTION 17 OF THIS AGREEMENT CONTAINS PROVISIONS THAT GOVERN HOW CLAIMS THAT YOU AND WE HAVE AGAINST EACH OTHER ARE RESOLVED, INCLUDING, WITHOUT LIMITATION, ANY CLAIMS THAT AROSE OR WERE ASSERTED BEFORE THE EFFECTIVE DATE OF THIS AGREEMENT. IN PARTICULAR, SECTION 17 SETS FORTH OUR ARBITRATION AGREEMENT WHICH WILL, WITH LIMITED EXCEPTIONS, REQUIRE DISPUTES BETWEEN US TO BE SUBMITTED TO BINDING AND FINAL ARBITRATION. UNLESS YOU OPT OUT OF THE ARBITRATION AGREEMENT: (1) YOU WILL ONLY BE PERMITTED TO PURSUE CLAIMS AND SEEK RELIEF AGAINST US ON AN INDIVIDUAL BASIS, NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY CLASS OR REPRESENTATIVE ACTION OR PROCEEDING; AND (2) YOU ARE WAIVING YOUR RIGHT TO SEEK RELIEF IN A COURT OF LAW AND TO HAVE A JURY TRIAL ON YOUR CLAIMS. THE ARBITRATION AGREEMENT COULD AFFECT YOUR RIGHT TO PARTICIPATE IN PENDING PROPOSED CLASS ACTION LITIGATION. PLEASE SEE SECTION 17 FOR MORE INFORMATION REGARDING THIS ARBITRATION AGREEMENT, THE POSSIBLE EFFECTS OF THIS ARBITRATION AGREEMENT, AND HOW TO OPT OUT OF THE ARBITRATION AGREEMENT.

- Definitions.
- 1. Marketplace Core Responsibilities.
- 2. DoorDash Drive Core Responsibilities.
- 3. Pickup Core Responsibilities.
- 4. Refunds and Re-Orders.
- 5. Order Equipment.
- 6. Payment, Fees, and Taxes.
- 7. Payment Processing.
- 8. Merchant Content and Trademark; Photographs of Menu Items.
- 9. Confidential Information.
- 10. Data Privacy and Security.
- 11. Termination.
- 12. Modifications.
- 13. Representations and Warranties; Additional Responsibilities; Warranty Disclaimer.
- 14. Indemnification.
- 15. Limitation of Liability.
- 16. Insurance.
- 17. Dispute Resolution.
- 18. General Provisions.

# Definitions

1. **"Dasher"** means third-party delivery contractor.

2. **"Delivery API"** means the DoorDash application programming interface (API) that allows the Merchant to exchange information with DoorDash.

3. **"DoorDash Data"** shall mean any information that DoorDash provides or makes accessible to Merchant through the DoorDash Platform, including without limitation Personal Information.

4. **"DoorDash End Customer"** means the DoorDash customer who places an order through the DoorDash Marketplace.

5. **"DoorDash Marketplace"** means the online ordering platform where DoorDash End Customers can place an order for Merchant Products via the DoorDash website or mobile application.

6. **"DoorDash Drive"** means the platform that enables delivery fulfillment for orders placed directly with the Merchant by the Merchant End Customer.

7. **"DoorDash Services"** means DoorDash Marketplace, DoorDash Drive and PickUp, as applicable.

8. **"Drive Orders"** means orders placed by Merchant for delivery fulfilment by DoorDash.

9. **"Drive Term"** means the term of the agreement between DoorDash and Merchant for DoorDash Drive.

10. **"Marketplace Orders"** means orders for Merchant Products through the DoorDash Marketplace from DoorDash customers.

11. **"Merchant"** means the restaurant or other entity that has agreed to participate in the DoorDash Services.

12. **"Merchant End Customer"** means the Merchant customer who places an order directly with the Merchant.

13. **"Merchant Products"** means all products offered for take-out or delivery orders at Merchant Stores.

14. **"Merchant Stores"** means the Merchant restaurant locations that are within the then-current territory services by DoorDash and that have elected to participate in the DoorDash Services, as may be amended by an exchange of emails.

15. **"Marketplace Term"** means the term of the agreement between DoorDash and Merchant for the DoorDash Marketplace.

16. **"PickUp Term"** means the term of the agreement between DoorDash and Merchant for the DoorDash PickUp program.

17. **"Personal Information"** shall mean any information exchanged under this Agreement that (i) identifies or can be used to identify an individual (including without limitation, names, telephone numbers, addresses, signatures, email addresses or other unique identifiers); or (ii) that can reasonably be used to authenticate an individual (including without limitation, name, contact information, precise location information, access credentials, persistent identifiers and any information that may be considered 'personal data' or 'personal information' under applicable law.

18. **"Schedule for Later Order"** shall mean an Order to be fulfilled at a particular time later in the same day or at a later date.

19. **"Third Party Platform"** means a technology interface, such as a middleware technology platform, other than the online order form and the Delivery API that enables Merchant to request delivery fulfillment and provide information necessary to enable such delivery fulfillment.

# 1. Marketplace Core Responsibilities.

For Merchants that have agreed to participate in the DoorDash Marketplace, DoorDash and Merchant shall have the following responsibilities during the Marketplace Term:

1. <u>DoorDash Core Responsibilities</u>. DoorDash will, in a timely manner:

    a. Display Merchant's logo; a listing of the Merchant Stores; and a menu of all Merchant Products;

    b. Accept Marketplace Orders from DoorDash End Customers;

    c. Forward each Marketplace Order to the relevant Merchant Store; and

    d. Forward each Marketplace Order to a Dasher, so that the Dasher can pick up the applicable Merchant Product(s) from the Merchant Store to deliver to the DoorDash End Customer.

2. <u>Merchant Core Responsibilities</u>. Merchant will, in a timely manner:

    a. Provide DoorDash with the Merchant's in-store or take-out menu, including the price of each item on such menu;

    b. Monitor Merchant's menu and store information on the DoorDash Marketplace, promptly make updates via the Merchant portal to reflect the most up-to-date products, pricing and other information or immediately notify DoorDash of any errors or changes in writing;

    c. Accept all Marketplace Orders placed by DoorDash from Merchant's then-current menu;

    d. Confirm all Marketplace Orders from DoorDash;

    e. Prepare the Merchant Products for each Marketplace Order for pickup by a Dasher at the designated time;

    f. Process Marketplace Orders in the order in which they are received;

    g. Notify DoorDash of any changes to the pricing, availability, description, or other characteristics of the Merchant Products;

    h. Notify DoorDash of its days and hours of operation, and remain open for business on DoorDash the same days and hours of operation as Merchant's in-store business; notify DoorDash of any changes to Merchant's hours of operations on federal holidays; and notify DoorDash if Merchant closes earlier than Merchant's standard hours of operation or plans to close earlier than Merchant's standard hours of operation;

    i. Notify all Merchant store staff members of the relationship with DoorDash immediately upon execution of this Agreement; and

    j. Provide the same utensils, napkins, bags and other materials that Merchant would typically provide in a standard take-out or delivery order, subject to Section 13(3)(i).

# 2. DoorDash Drive Core Responsibilities.

DoorDash Drive Core Responsibilities. For Merchants that have agreed to participate in DoorDash Drive, DoorDash and Merchant shall have the following responsibilities during the Drive Term:

1. <u>DoorDash Core Responsibilities</u>. DoorDash will, in a timely manner:

    a. Provide Merchant with an online order form or access to the Delivery API to submit requests for deliveries, or receive information through a Third Party Platform;

    b. Forward requests to a Dasher, so that the Dasher can pick up the applicable Merchant Product(s) from the Merchant Store to deliver to the Merchant End Customer.

2. <u>Merchant Core Responsibilities</u>. Merchant will:

    a. Via the online order form, the Delivery API, or a Third Party Platform, provide information requested by

DoorDash including the Merchant End Customer's address, contact information, and any special instructions required for delivery;

b. Accept and collect payments from Merchant End Customers for their respective orders;

c. Notify Merchant End Customers prior to placing a Drive Order that their telephone numbers and other personal contact information will be shared with DoorDash to enable deliveries to be made by Dashers and, in connection with the applicable deliveries, request the End Customer's consent to receive delivery status updates by e-mail, text messages, and telephone calls from DoorDash and Dashers; and

d. Notify DoorDash if an End Customer has not consented to receive delivery updates or has placed any restrictions on types of delivery updates such End Customer consents to receive (e.g., no texts). Merchant hereby consents to receiving text messages and email confirmations from DoorDash providing status updates and delivery confirmations in connection with each delivery.

3. <u>Drive Operating Procedures</u>.

   a. *Order Placement.* Merchant agrees to submit a Drive Order for delivery fulfillment at least twenty-four (24) hours in advance of scheduled delivery, and in no event less than two (2) hours in advance of scheduled pick-up. Exceptions will be mutually agreed to by the Parties.

   b. *Hours of Operation.* The pickup and dropoff of deliveries will be scheduled to take place during DoorDash's standard hours of availability, as may be updated from time to time in DoorDash's sole discretion. Merchant agrees to abide by the following standard procedures: (i) to notify DoorDash of any changes to its hours of operations on federal holidays with reasonable advance notice; and (ii) to notify DoorDash with reasonable advance notice if a Merchant location closes earlier than standard hours of operation or plans to close earlier than standard hours of operation.

   c. *Delivery Radii.* DoorDash will only accept Drive Orders to be delivered within a certain preset delivery radius based on either the Merchant or the End-Customer location, which will be communicated to Merchant.

   d. *Cancellations.* Fees owed for any Drive Orders cancelled within twenty-four (24) hours of a Schedule for Later delivery are non-refundable. If provided more than two (2) hours notice, but less than twenty-four (24) hours notice, DoorDash will make reasonable efforts to accommodate changes. Fees owed for any Drive Orders cancelled after a Dasher has accepted a delivery opportunity will be non-refundable.

   e. *Notification.* Merchant agrees to notify all staff members in Merchant Stores of Merchant's relationship with DoorDash prior to submitting any delivery requests to DoorDash.

# 3. PickUp Core Responsibilities.

For Merchants that have agreed to participate in the PickUp program, during the PickUp Term, DoorDash will have the same responsibilities as set forth in Section 1(a)(i) - 1(a)(iii) and Merchant will have the same responsibilities as set forth in Section 1(b)(i) - (ix).

# 4. Refunds and Re-Orders.

Refunds and re-orders will be addressed as follows for Merchants that have agreed to participate in the DoorDash Marketplace, DoorDash Drive, or the PickUp Program as applicable:

1. <u>Marketplace Refunds</u>. In the event that DoorDash, in its sole reasonable discretion, has to issue a refund, credit or re-order on an End Customer's Order, Merchant will prepare the food to the same specifications as the original Order (in the case of a re-order) and bear the full cost of that refund, credit or re-order, as applicable, unless the refund, credit or re-order is

due to the gross negligence or willful misconduct of Dashers or DoorDash.

2. <u>Drive Refunds</u>. Merchant acknowledges and agrees that DoorDash shall be responsible only for facilitating the delivery of Merchant Product(s) to Merchant End Customers, and, if applicable, providing delivery status updates to Merchant End Customers. Merchant shall be solely responsible for any customer complaints regarding Merchant Product(s), including without limitation, complaints regarding the nature, quality, content, number, or packaging of Merchant Product(s). Merchant agrees not to refer any Merchant End Customer complaints directly to DoorDash. Any complaints regarding the timeliness or quality of a Dasher's delivery service shall be reported by Merchant to DoorDash. If the completion of a Drive Order is more than 45 minutes late and due to fault of DoorDash, DoorDash will reimburse Merchant for all or a portion of the delivery cost of the applicable Drive Order. If Merchant elects to refund a Merchant End Customer for any reason, such election shall not obligate DoorDash to provide a corresponding reimbursement to Merchant. In the event that a Merchant Product has been visibly damaged with proof from customer, DoorDash may reimburse Merchant for all or a portion of the order subtotal. For the purposes of this agreement, "Merchant Product" is the actual food or beverage item, not the packaging that contains the Merchant Product. In no event shall DoorDash be obligated to issue any refunds directly to Merchant End Customers.

3. <u>PickUp Refunds</u>. DoorDash shall be responsible for customer support issues relating to the ordering of Merchant Products and issues relating to an End Customer's DoorDash account. All other customer issues or complaints will be Merchant's sole responsibility. In the event that DoorDash, in its sole discretion, has to issue a refund, credit or re-order for an End Customer's Order, Merchant will prepare the food to the same specifications as the original PickUp Order (in the case of a re-order) and bear the full cost of that refund, credit or re-order.

# 5. Order Equipment.

With respect to the DoorDash Marketplace, Merchant will install any equipment reasonably required by DoorDash for Merchant to receive Orders (including, without limitation, a tablet, fax machine, or other automated, electronic means of receiving Orders) ("Order Equipment"). Any Order Equipment provided by DoorDash will remain DoorDash's sole property and may be used solely for purposes related to fulfilling Merchant's responsibilities under this Agreement. Merchant will inspect all hardware, and shall notify DoorDash in writing if any Order Equipment is missing or was damaged as soon as practicable after discovering such damage. DoorDash may restrict or rescind Merchant's right to use the DoorDash Platform at any time. Merchant will be responsible for any damage to or loss of any Order Equipment provided by DoorDash (excluding ordinary wear and tear), which will be promptly reimbursed by Merchant (at the replacement cost thereof). DoorDash may recover the replacement cost of damaged or lost Order Equipment by deducting such amount from weekly payments.

# 6. Payment, Fees, and Taxes.

Payment, fees, and taxes shall be addressed as follows for Merchants that have agreed to participate in the DoorDash Marketplace and DoorDash Drive, as applicable:

1. <u>DoorDash Marketplace</u>.DoorDash will pay for Marketplace Orders prepared by Merchant each week on a consistent day of the week, subject to change with no less than 10 days notice to Merchants by email or service notification, provided that DoorDash shall be entitled to deduct from such payment the Promotion Fee on all Marketplace Orders. If Merchant has opted for a tablet subscription, DoorDash will also deduct a weekly fee, as set forth on the Sign-Up Sheet. For the avoidance of doubt, DoorDash will be entitled to a Promotion Fee on all Marketplace Orders at the rate stated in the Sign-Up Sheet and DoorDash may also elect (in its sole discretion) to charge an End Customer fees, including but not limited to a Delivery Fee and/or a Service Fee, as well as an additional markup for Merchant Products. Merchant shall be responsible for all taxes, duties, and other governmental charges on the sale of Merchant Products under this Agreement and remitting such taxes, duties, and other governmental charges to the appropriate authorities. In the event that Merchant raises the price for a menu item, it shall not charge DoorDash the higher price for 3 business days after it has provided notice to DoorDash of that menu change. For Merchants in Canada, Merchant shall also be responsible for all

taxes, duties, and other governmental charges on the Promotion Fee, which DoorDash shall be responsible for withholding and remitting to the appropriate authorities.

2. <u>DoorDash Drive</u>. Merchant will pay DoorDash a fee per Drive Order as mutually agreed. Merchant shall be responsible for all taxes, duties, and other governmental charges on the sale of Merchant Products under this Agreement and remitting such taxes, duties, and other governmental charges to the appropriate authorities. As agreed by the parties, payment of all fees under this Section 6(b) shall be as follows: (i) Merchant shall pay the fees by credit card or ACH at the time of ordering, or (ii) DoorDash shall invoice Merchant on a monthly basis and Merchant shall pay the invoice within seven (7) days of receipt of such invoice. If any fee is not paid in full by the due date, DoorDash may assess interest on the unpaid amount for the period beginning on the Payment Date and ending on the date that the amount is paid in full. The amount of interest to be paid shall not exceed the maximum rate under applicable law.

# 7. Payment Processing.

Payment processing services for Merchants on the DoorDash Marketplace are provided by Stripe and are subject to the Stripe Connected Account Agreement, which includes the Stripe Services Agreement. By agreeing to these Terms, Merchant agrees to be bound by the Stripe Connected Account Agreement and the Stripe Services Agreement, as the same may be modified by Stripe from time to time. As a condition of DoorDash enabling payment processing services through Stripe, Merchant agrees to provide DoorDash accurate and complete information about Merchant's representative and its business, and Merchant authorizes DoorDash to share it and transaction information related to Merchant's use of the payment processing services provided by Stripe. Stripe has been audited by a PCI-certified auditor and is certified to PCI Service Provider Level 1.

# 8. Merchant Content and Trademark; Photographs of Menu Items.

1. During the Marketplace Term or PickUp Term, as applicable, Merchant grants to DoorDash a royalty-free, non-exclusive, limited, revocable, non-transferable, non-sublicenseable right and license to use and display the Merchant Content in the provision of providing services to Merchant. As used herein, "Merchant Content" includes, without limitation, menus, photographs (either provided by Merchant or on Merchant's website), trademarks, logos and other materials provided by Merchant to DoorDash.

2. If photographs of Merchant's menu items are not available or if they do not meet DoorDash's requirements, as reasonably determined by DoorDash, then Merchant consents to DoorDash engaging a professional photographer to take photographs of Merchant's menu items and display such photographs on the DoorDash Marketplace as representations of Merchant's menu items; provided that Merchant may contact DoorDash support to have such photographs removed from the Merchant's store listing and, in such event, DoorDash will comply in a timely manner.

# 9. Confidential Information.

1. The term "Confidential Information" shall mean any confidential or proprietary business, technical or financial information or materials of a party ("Disclosing Party") provided to the other party ("Receiving Party") in connection with this Agreement, whether orally or in physical form, and shall include the terms of this Agreement. Without limiting the foregoing, DoorDash Data is the Confidential Information of DoorDash.

2. Confidential Information does not include information that: (i) was rightfully known to the Receiving Party without restriction on use or disclosure prior to such information's being disclosed to the Receiving Party in connection with this Agreement; (ii) was or becomes public domain other than by the fault of the Receiving Party; (iii) was or is received by the Receiving Party on a non-confidential basis from a third party that, to the Receiving Party's knowledge, was not at the time

under any obligation to maintain its confidentiality; or (iv) the Receiving Party can demonstrate by documentary records was independently developed by the Receiving Party without access to, use of or reference to any Confidential Information.

3. The Receiving Party shall: (i) not access or use Confidential Information other than as necessary to exercise its rights or perform its obligations in accordance with this Agreement; (ii) except subject to its compliance with Section 9(d), not disclose or permit access to Confidential Information other than to its or any of its employees, officers, directors, consultants, agents, independent contractors, service providers, subcontractors and legal advisors ("Representatives") who need to know such Confidential Information for purposes of the Receiving Party's exercise of its rights or performance of its obligations under and in accordance with this Agreement, and prior to any such disclosure are bound by written confidentiality and restricted use obligations at least as protective of the Confidential Information as the terms set forth in this Section; and (iii) safeguard the Confidential Information from unauthorized use, access or disclosure using at least the degree of care it uses to protect its most/similarly sensitive information and in no event less than a reasonable degree of care.

4. If the Receiving Party is compelled by applicable Law to disclose any Confidential Information then, to the extent permitted by applicable Law, the Receiving Party shall promptly notify the Disclosing Party in writing of such requirement so that the Disclosing Party can seek a protective order or other remedy or waive its rights under Section 9(c) and provide reasonable assistance to the Disclosing Party, at the Disclosing Party's sole expense, in opposing or seeking protective limitations on disclosure.

## 10. Data Privacy and Security.

1. <u>General.</u> Merchant agrees not to access, collect, store, retain, transfer, use or otherwise process in any manner DoorDash Data, including without limitation Personal Information, except as required to perform under this Agreement. Merchant shall keep DoorDash Data secure from unauthorized access and maintain the accuracy and integrity of DoorDash Data in Merchant's custody or control by using appropriate organizational, physical and technical safeguards. If Merchant becomes aware of any unauthorized access to DoorDash Data, Merchant will immediately notify DoorDash, consult and cooperate with investigations and potentially required notices, and provide any information reasonably requested by DoorDash. Merchant agrees to implement and use security procedures, protocols or access credentials as reasonably requested by DoorDash and will be responsible for damages resulting from Merchant's failure to comply. Merchant will not allow any third party to use the DoorDash Platform; copy, modify, rent, lease, sell, distribute, reverse engineer or otherwise attempt to gain access to the source code of the DoorDash Platform; damage, destroy or impede the services provided through the DoorDash Platform; transmit injurious code; or bypass or breach any security protection on the DoorDash Platform.

2. <u>Delivery API.</u> During the Term, DoorDash grants to Merchant a non-exclusive, royalty-free, non-assignable, non-transferable, non-sublicensable, revocable, limited, fully paid-up license to access the Delivery API solely to transmit information to facilitate the DoorDash Drive services. Merchant will not and will not permit or authorize any third party to (i) sell, license, rent, resell, lease, assign (except as permitted herein), transfer, or otherwise commercially exploit the Delivery API; (ii) circumvent or disable any security or other technological features or measures of, or otherwise gain or attempt to gain unauthorized access to the Delivery API; (iii) reverse engineer, dissemble, decompile, or otherwise attempt to derive the source code or the underlying ideas, algorithms, structure, or organization of the Delivery API; (iv) use the Delivery API in any manner or for any purpose that violates any law or regulation; and (v) use the Delivery API for a reason other than as specifically provided or intended under this Agreement. Each Party agrees not to perform any action with the intent of introducing to the other Party's systems, products, or services (including the Delivery API) any viruses, worms, defect, Trojan horses, malware, or any items of a destructive nature.

## 11. Termination.

Merchant may terminate this agreement for any reason at any time upon 7 days prior written notice. DoorDash may terminate this agreement for any reason at any time upon written notice. Email shall suffice for written notice. Neither Merchant nor DoorDash will be required to pay any fee in connection with a termination by either party, or be liable to the other as a result of termination of this Agreement for any damages, for the loss of goodwill, prospective profits or anticipated income, or on account of any expenditures, investments, leases or commitments made by either Merchant or DoorDash.

# 12. Modifications.

DoorDash reserves the right, at its sole discretion, to change, suspend, or discontinue the Platform (including without limitation, the availability of any feature or content) at any time. DoorDash may, at its sole discretion, remove Merchant Products or Stores from the DoorDash Marketplace if DoorDash reasonable determines that such Merchant Product or Merchant Store could subject DoorDash to undue regulatory risk, health and safety risk, or other liability. DoorDash also may revise these Terms from time to time. The changes will not be retroactive, and the most current version of the terms will be at https://www.doordash.com/merchant/merchant-terms/. We will notify Merchants of material revisions via a service notification or an email to the email address associated with your account. By continuing to access or use the Services after those revisions become effective, you agree to be bound by the revised Terms.

# 13. Representations and Warranties; Additional Responsibilities; Warranty Disclaimer.

1. Each party represents and warrants that it will comply with all applicable laws and regulations in its performance of this Agreement, including without limitation (i) all applicable data protection and privacy laws, and (ii) all applicable laws related to third party intellectual property and other proprietary rights.

2. Each party represents and warrants that it will comply with all applicable laws and regulations in its performance of this Agreement, including without limitation (i) all applicable data protection and privacy laws, and (ii) all applicable laws related to third party intellectual property and other proprietary rights.

3. Merchant further represents, warrants and agrees that (i) it will comply with all applicable laws, rules, standards and regulations relating to licenses, health (including Proposition 65 in California), food packaging and accessory items (including but not limited to foodware, plasticware, and other disposable restaurant supplies), and food safety and sanitation, (ii) it has informed DoorDash of any required consumer-facing warnings, charges, opt-in requirements, and instructions associated with Merchant Product(s) and it will inform DoorDash of any such warnings, charges, opt-ins, and instructions that become required in the future, (iii) it will disclose common allergens in any Merchant's menu items listed on the DoorDash Marketplace, (iv) it will not include any age-restricted products (including but not limited to alcohol and tobacco) in Merchant's menus on the DoorDash Marketplace or request delivery of any age-restricted products through the DoorDash Platform without first entering into a separate agreement with DoorDash memorializing the promotion, sale and delivery of such products in compliance with the laws of the applicable state in which such products will be sold, (v) title to Merchant Products transfers from Merchant directly to the DoorDash End Customer once such Merchant Product leaves the physical possession of the Merchant, (vi) it will not disclose any information related to a Dasher or a consumer to a third party (except as required to comply with law or pursuant to a court order) and (vii) it will comply with its obligations under Section 2(b)(iii) and 2(b)(iv) of this Agreement.

4. EXCEPT AS EXPRESSLY SET FORTH HEREIN, TO THE EXTENT PERMITTED BY APPLICABLE LAW, DOORDASH HEREBY EXPRESSLY DISCLAIMS ALL WARRANTIES, EXPRESS, IMPLIED OR STATUTORY, REGARDING THE DOORDASH PLATFORM, THE DELIVERY API, EQUIPMENT OR SERVICES, INCLUDING BUT NOT LIMITED TO ANY IMPLIED WARRANTIES OF MERCHANTABILITY, TITLE, SATISFACTORY QUALITY OR RESULTS, OR FITNESS FOR A PARTICULAR PURPOSE AND NON-INFRINGEMENT. Merchant acknowledges that the operation of the Platform may from time to time encounter technical or other problems and may not necessarily continue uninterrupted or without technical or other errors and DoorDash shall not be responsible to Merchant or others for any such interruptions, errors, or problems or an outright

discontinuance of the Platform nor for any guarantee of results with respect to the DoorDash services contemplated herein. Both Parties acknowledge that neither party has any expectation or has received any assurances for future business or that any investment by a party will be recovered or recouped or that such party will obtain any anticipated amount of profits by virtue of this Agreement.

## 14. Indemnification.

Each party (the **"Indemnifying Party"**) will defend, indemnify, and hold harmless the other party, its subsidiaries and affiliates, and their respective officers, directors, shareholders, employees, and agents (the **"Indemnified Party"**) from and against any and all claims, damages, losses and expenses (including reasonable attorney's fees) (collectively **"Losses"**) with respect to any third-party claims arising out of or related to: (i) any bodily injury (including death) or damage to tangible or real property to the extent caused by the Indemnifying Party's personnel and, in the case of DoorDash, Dashers (or, in the case of Merchant as the Indemnifying Party, caused by the Merchant Products); (ii) any claims that the Indemnifying Party breached its representations,warranties or covenants set forth in Section 10 and Section 13 of this Agreement; (iii) the violation of the intellectual property of the third party by the Indemnifying Party's logos, trademarks, trade names, menus, documentation, or other intellectual property (collectively, "Materials"). In addition, Merchant will defend, indemnify and hold harmless DoorDash from any and all Losses related to any violation or alleged violation of any applicable retail food or other health and safety code, rule, or regulation related to Merchant Product(s), except to the extent such Losses were caused directly by the gross negligence or willful misconduct of DoorDash. In each case the Indemnified Party shall provide the Indemnifying Party with (a) prompt notice of any claims such that the Indemnifying Party is not prejudiced by any delay of such notification, (b) the option to assume sole control over defense and settlement of any claim, and (c) reasonable assistance in connection with such defense and settlement (at the Indemnifying Party's expense). The Indemnified Party may participate in the defense or settlement of such a claim with counsel of its own choice and at its own expense; however, the Indemnifying Party shall not enter into any settlement agreement that imposes any obligation on the Indemnified Party without the Indemnified Party express prior written consent. DoorDash assumes no liability, and shall have no liability, for any infringement claim pursuant to section 14(iii) above based on Merchant's access to and/or use of the DoorDash Platform following notice of such an infringement claim; any unauthorized modification of the DoorDash Platform by Merchant; or Merchant's combination of the DoorDash Platform with third party programs, services, data, hardware, or other materials which otherwise would not result in such infringement claim.

## 15. Limitation of Liability.

EXCEPT WITH RESPECT TO DAMAGES ARISING FROM VIOLATIONS OF LAW OR WILFUL MISCONDUCT, UNPAID FEES OWED BY MERCHANT IN EXCESS OF THE BELOW LIMIT, AND AMOUNTS PAYABLE TO THIRD PARTIES UNDER SECTION 14 (INDEMNIFICATION), TO THE EXTENT PERMITTED BY APPLICABLE LAW, (I) NEITHER PARTY WILL BE LIABLE TO THE OTHER UNDER THIS AGREEMENT, FOR INDIRECT, SPECIAL, PUNITIVE, OR CONSEQUENTIAL DAMAGES, OR FOR LOST PROFITS, LOST REVENUES, HARM TO GOODWILL, OR THE COSTS FOR PROCURING REPLACEMENT SERVICES, WHETHER BASED ON TORT, CONTRACT OR ANY OTHER LEGAL THEORY, AND WHETHER OR NOT SUCH PARTY HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES, AND (II) EACH PARTY'S MAXIMUM AGGREGATE LIABILITIES RELATED TO OR IN CONNECTION WITH THIS AGREEMENT SHALL NOT EXCEED THE TOTAL AMOUNT PAID OR PAYABLE BY ONE PARTY TO THE OTHER PARTY IN THE TWELVE (12) MONTH PERIOD IMMEDIATELY PRECEDING THE INCIDENT GIVING RISE TO THE LIABILITY. THE FOREGOING DISCLAIMER SHALL NOT APPLY TO THE EXTENT PROHIBITED BY LAW.

## 16. Insurance.

During the term of the Agreement and for one year after, each party will maintain adequate insurance in amounts not less than as required by law or that is common practice in such party's business. Upon request, each party will provide the other with current evidence of coverage. Such insurance shall not be cancelled or materially reduced without thirty (30) days prior written notice. In no event shall the limits of any insurance policy be considered as limiting the liability of a party under this Agreement.

# 17. Dispute Resolution.

PLEASE READ THE FOLLOWING SECTION CAREFULLY. IT REQUIRES YOU TO ARBITRATE DISPUTES WITH THE COMPANY (DOORDASH) AND LIMITS THE MANNER IN WHICH YOU CAN SEEK RELIEF. THIS SECTION 17 OF THIS AGREEMENT SHALL BE REFERRED TO AS THE "ARBITRATION AGREEMENT".

1. **Scope of Arbitration Agreement.** Any dispute, controversy or claim arising out of, relating to or in connection with this contract, including the breach, termination or validity thereof, shall be finally resolved by binding arbitration, rather than in court, except that (1) you may assert claims in small claims court if your claims qualify, so long as the matter remains in such court and advances only on an individual (non-class, non-representative) basis; and (2) you or the Company may seek equitable relief in court for infringement or other misuse of intellectual property rights (such as trademarks, trade dress, domain names, trade secrets, copyrights, and patents). This Arbitration Agreement shall apply, without limitation, to all claims that arose or were asserted before the Effective Date of this Agreement. CASES HAVE BEEN FILED AGAINST THE COMPANY—AND OTHERS MAY BE FILED IN THE FUTURE—THAT ATTEMPT TO ASSERT CLASS ACTION CLAIMS, AND BY ACCEPTING THIS ARBITRATION AGREEMENT YOU ELECT NOT TO PARTICIPATE IN SUCH CASES. IF YOU AGREE TO ARBITRATION WITH THE COMPANY, YOU ARE AGREEING IN ADVANCE THAT YOU WILL NOT PARTICIPATE IN OR SEEK TO RECOVER MONETARY OR OTHER RELIEF IN ANY SUCH CLASS, COLLECTIVE, AND/OR REPRESENTATIVE LAWSUIT. INSTEAD, BY AGREEING TO ARBITRATION, YOU MAY BRING YOUR CLAIMS AGAINST THE COMPANY IN AN INDIVIDUAL ARBITRATION PROCEEDING. IF SUCCESSFUL ON SUCH CLAIMS, YOU COULD BE AWARDED MONEY OR OTHER RELIEF BY AN ARBITRATOR.

2. **Arbitration Rules and Forum.** This Arbitration Agreement is governed by the Federal Arbitration Act in all respects. To begin an arbitration proceeding, you must send a letter requesting arbitration and describing your claim to DoorDash's registered agent. The arbitration will be conducted by JAMS under its rules and pursuant to the terms of this Agreement. Disputes involving claims and counterclaims under $250,000, not inclusive of attorneys' fees and interest, shall be subject to JAMS's most current version of the Streamlined Arbitration Rules and procedures available at http://www.jamsadr.com/rules-streamlined-arbitration/; all other claims shall be subject to JAMS's most current version of the Comprehensive Arbitration Rules and Procedures, available at http://www.jamsadr.com/rules-comprehensive-arbitration/. JAMS's rules are also available at www.jamsadr.com/ (under the Rules/Clauses tab) or by calling JAMS at 800-352-5267. Payment of all filing, administration, and arbitration fees will be governed by JAMS's rules. If the arbitrator finds that you cannot afford to pay JAMS's filing, administrative, hearing and/or other fees and cannot obtain a waiver of fees from JAMS, the Company will pay them for you. In addition, the Company will reimburse all such JAMS's filing, administrative, hearing and/or other fees for claims with an amount in controversy totaling less than $10,000. If JAMS is not available to arbitrate, the parties will select an alternative arbitral forum. You may choose to have the arbitration conducted by telephone, video conference, based on written submissions, or in person in the country where you live or at another mutually agreed location.

3. **Arbitrator Powers.** The arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of this Arbitration Agreement including, but not limited to any claim that all or any part of this Arbitration Agreement is void or voidable. The arbitration will decide the rights and liabilities, if any, of you and the Company. The arbitration proceeding will not be consolidated with any other matters or joined with any other proceedings or parties. The arbitrator will have the authority to grant motions dispositive of all or part of any claim or dispute. The arbitrator will have the authority to award monetary damages and to grant any non-monetary remedy or relief available to an individual under applicable law, the arbitral forum's rules, and this Agreement (including this Arbitration Agreement). The arbitrator will issue a written statement of decision describing the essential findings and conclusions on which any award (or decision not to render an award) is based, including the calculation of any damages awarded. The arbitrator shall follow the applicable law. The arbitrator has the same authority to award relief on an individual basis that a judge in a court of law would have. The arbitrator's decision is final and binding on you and the Company.

4. **Waiver of Jury Trial.** YOU AND THE COMPANY WAIVE ANY CONSTITUTIONAL AND STATUTORY RIGHTS TO SUE IN

COURT AND RECEIVE A JUDGE OR JURY TRIAL. You and the Company are instead electing to have claims and disputes resolved by arbitration, except as specified in Section 17(a) above. There is no judge or jury in arbitration, and court review of an arbitration award is limited.

5. **Waiver of Class or Consolidated Actions; Severability.** YOU AND THE COMPANY AGREE TO WAIVE ANY RIGHT TO RESOLVE CLAIMS WITHIN THE SCOPE OF THIS ARBITRATION AGREEMENT ON A CLASS, COLLECTIVE, OR REPRESENTATIVE BASIS. ALL CLAIMS AND DISPUTES WITHIN THE SCOPE OF THIS ARBITRATION AGREEMENT MUST BE ARBITRATED ON AN INDIVIDUAL BASIS AND NOT ON A CLASS BASIS. CLAIMS OF MORE THAN ONE CUSTOMER OR USER CANNOT BE ARBITRATED OR LITIGATED JOINTLY OR CONSOLIDATED WITH THOSE OF ANY OTHER CUSTOMER OR USER. If, however, this waiver of class or consolidated actions is deemed invalid or unenforceable with respect to a particular claim or dispute, neither you nor the Company is entitled to arbitration of such claim or dispute. Instead, all such claims and disputes will then be resolved in a court as set forth in Section 21, and all other provisions of this Section 17 (Dispute Resolution) shall remain in force. If any provision of this Section 17 is adjudged to be void or otherwise unenforceable, in whole or in part, the void or unenforceable provision shall be severed and such adjudication shall not affect the validity of the remainder of this Section 17.

6. **Opt Out.** You may opt out of this Arbitration Agreement. If you do so, neither you nor the Company can force the other to arbitrate as a result of this Agreement. To opt out, you must notify the Company in writing no later than 30 days after first becoming subject to this Arbitration Agreement. Your notice must include your name and address, your DoorDash username (if any), the email address you used to set up your DoorDash account (if you have one), and a CLEAR statement that you want to opt out of this Arbitration Agreement. You must send your opt-out notice to: merchantoptout@doordash.com. If you opt out of this Arbitration Agreement, all other parts of this Agreement will continue to apply to you. Opting out of this Arbitration Agreement has no effect on any other arbitration agreements that you may have entered into with us or may enter into in the future with us. NOTWITHSTANDING ANYTHING TO THE CONTRARY HEREIN, NOTHING IN THIS AGREEMENT SHALL SUPERSEDE, AMEND, OR MODIFY THE TERMS OF ANY SEPARATE AGREEMENT(S) BETWEEN YOU AND THE COMPANY.

7. **Survival. This Arbitration Agreement will survive any termination of your relationship with the Company.**

8. **Modification. Notwithstanding any provision in the Agreement to the contrary, we agree that if the Company makes any future material change to this Arbitration Agreement, it will not apply to any individual claim(s) that you had already provided notice of to the Company.**

# 18. Franchisees

Franchisees operating a restaurant concept licensed by Merchant may participate in the Program pursuant to the terms and conditions of this Agreement provided that the individual franchisee: (1) is in compliance with its franchise agreement; and (2) enters into an agreement in substantially the same form as the Supplemental Agreement provided by DoorDash to the Franchisee

# 19. Partner Code of Conduct.

Merchant agrees to comply with the https://www.doordash.com/partner/code-of-conduct, which may be updated by DoorDash from time to time.

# 20. Communications from DoorDash.

Merchant agrees to accept and receive communications from DoorDash or Dashers, including via email, text message, calls, and push notifications to the cellular telephone number Merchant provides to DoorDash. Merchant acknowledges that Merchant may receive communications generated by automatic telephone dialing systems and/or which will deliver prerecorded messages sent by or on behalf of DoorDash, its affiliated companies and/or Dashers. Merchant may opt out of such communications in Merchant's Account

Settings or by replying "STOP" from the mobile device receiving such messages.

# 21. General Provisions.

Nothing in these Terms is to be construed as creating an agency, partnership, or joint venture relationship between DoorDash and Merchant, and except as expressly set forth herein, each party shall be responsible for its own costs of performance hereunder. As set forth on the Sign-Up Sheet executed between Merchant and DoorDash, these Terms form part of an Agreement between the parties, which supersedes all prior agreements and communications of the parties, oral or written, with respect to the subject matter hereof. The rights and obligations set forth in these Terms, which by their nature should, or by their express terms do, survive or extend beyond the termination or expiration of these Terms shall so survive and extend. Except as set forth herein, no amendment to, or waiver of, any provision of this Agreement will be effective unless in writing and signed by both parties. The waiver by any party of any breach or default will not constitute a waiver of any different or subsequent breach or default. This Agreement is governed by and interpreted in accordance with the laws of the State of California without regard to the conflicts of laws principles thereof. Except as set forth above in Section 17 ("Dispute Resolution"), the parties hereby consent to exclusive jurisdiction in the courts of San Francisco, California. Merchant may not assign this Agreement in whole or in part without DoorDash's prior written consent. DoorDash may freely assign this Agreement. This Agreement will be binding upon, and inure to the benefit of, the permitted successors and assigns of each party, but shall not confer any rights or remedies upon any other third party. All notices, requests, consents and other communications hereunder must be in writing, and delivered by overnight courier to the addresses set forth on the Sign-Up Sheet (or any updated address properly noticed hereunder). DoorDash's address is 901 Market Street, Suite 600, San Francisco, CA 94103. If any provision of this Agreement is held to be invalid, illegal or unenforceable for any reason, such invalidity, illegality or unenforceability will not affect any other provisions of this Agreement, and this Agreement will be construed as if such invalid, illegal or unenforceable provision had never been contained here.