**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Micheli & Shel, LLC, *individually and on behalf of others similarly situated*,<br><br>       Plaintiffs,<br><br>      v.<br><br>GRUBHUB INC., GRUBHUB INC. d/b/a SEAMLESS, SEAMLESS NORTH AMERICA, LLC, UBER TECHNOLOGIES INC., UBER EATS, POSTMATES LLC, and DOORDASH INC.,<br><br>      Defendants. | **DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO COMPEL ARBITRATION AND STAY**<br><br>Case No. 1:21-cv-04995-JMF |

Andrew A. Ruffino
COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018
Tel: (212) 841-1097
Email: aruffino@cov.com

Stacey K. Grigsby
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, N.W.
Washington, D.C. 20001
Tel.: (202) 662-5238
Email: sgrigsby@cov.com

*Counsel for Defendant Uber Technologies, Inc., Uber Eats, and Postmates LLC*

# TABLE OF CONTENTS

I.     INTRODUCTION ...................................................................................................... 1

II.    BACKGROUND ....................................................................................................... 2

     A.    Plaintiff Agrees To Arbitrate Disputes With Uber Eats ................................ 2

     B.    Plaintiff Agrees To Arbitrate Disputes With Postmates ............................... 3

     C.    Plaintiff Files Suit ....................................................................................... 6

III.    ARGUMENT ............................................................................................................ 6

     A.    The FAA Governs The Parties' Arbitration Agreements. ........................... 7

     B.    The Arbitrator Should Decide Threshold Questions of Arbitrability. .................. 8

          1.    The Parties Entered Into Valid Arbitration Agreements............................ 9

          2.    The Parties Clearly and Unmistakably Agreed To Delegate
                Threshold Questions of Arbitrability. ........................................................ 11

     C.    The FAA Requires Enforcement of the Parties' Arbitration Agreements. ........... 13

     D.    This Action Should Be Stayed Pending Arbitration. ............................................ 14

IV.    CONCLUSION........................................................................................................ 14

## **TABLE OF AUTHORITIES**

**Cases**                                                                                                                  **Page(s)**

*Advanced Air Mgmt., Inc. v. Gulfstream Aerospace Corp.*,
   No. B265723, 2017 WL 3887428 (Cal. Ct. App. Sept. 6, 2017)............................................12

*Allied-Bruce Terminix Cos. v. Dobson*,
   513 U.S. 265 (1995)....................................................................................................................7

*AT&T Mobility LLC v. Concepcion*,
   563 U.S. 333 (2011)..............................................................................................................8, 10

*AT&T Techs., Inc. v. Commc'ns Workers of Am.*,
   475 U.S. 643 (1986)..................................................................................................................13

*Buckeye Check Cashing, Inc. v. Cardegna*,
   546 U.S. 440 (2006)....................................................................................................................8

*Camilo v. Lyft, Inc.*,
   384 F. Supp. 3d 435, 439 (S.D.N.Y. 2019)..............................................................................7

*Contec Corp. v. Remote Sol., Co.*,
   398 F.3d 205 (2d Cir. 2005)....................................................................................................12

*E.E.O.C. v. Waffle House, Inc.*
   534 U.S. 279 (2002)..................................................................................................................13

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
   139 S. Ct. 524 (2019).................................................................................................................9

*Howsam v. Dean Witter Reynolds, Inc.*
   537 U.S. 79 (2002)....................................................................................................................13

*Katz v. Cellco P'ship*,
   794 F.3d 341 (2d Cir. 2015)....................................................................................................14

*Lockhart v. Gen. Motors Corp.*,
   No. 01-CV-2052, 2001 WL 1262922 (C.D.Cal. Sept. 14, 2001) ...........................................10

*Marin Storage & Trucking, Inc. v. Benco Contracting & Eng'g, Inc.*,
   89 Cal. App. 4th 1042 (Cal. Ct. App. 2001) ..........................................................................10

*Meyer v. Uber Techs., Inc.*,
   868 F.3d 66 (2d Cir. 2017)........................................................................................................9

*Moncharsh v. Heily & Blase*,
   3 Cal. 4th 1 (Cal. 1992)............................................................................................................10

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
    460 U.S. 1 (1983)........................................................................................8

*Nguyen v. Barnes & Noble Inc.*,
    763 F.3d 1171 (9th Cir. 2014) ...............................................................10

*PaineWebber Inc. v. Bybyk*,
    81 F.3d 1193 (2d Cir. 1996).....................................................................7

*Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev. (US), LLC*,
    55 Cal. 4th 223 (Cal. 2012)......................................................................9

*Plazza v. Airbnb, Inc.*,
    289 F. Supp. 3d 537, 546 (S.D.N.Y. 2018).............................................7

*Rent-A-Center, W., Inc. v. Jackson*,
    561 U.S. 63 (2010)...............................................................................9, 12

*Ribeiro v. Sedgwick LLP*,
    No. C 16-4507, 2016 WL 6473238 (N.D. Cal. Nov. 2, 2016)...............12

*Sacchi v. Verizon Online LLC*,
    No. 14-CV-423, 2015 WL 765940 (S.D.N.Y. Feb. 23, 2015)................8

*Simeon v. Domino's Pizza LLC*,
    No. 17-CV-5550, 2019 WL 7882143 (E.D.N.Y. Feb. 6, 2019) ..............7

*Starke v. SquareTrade, Inc.*,
    913 F.3d 279 ............................................................................................10

*Valle v. ATM Nat'l, LLC*,
    14-CV-7993, 2015 WL 413449 (S.D.N.Y. Jan. 30, 2015) .....................11

**Statutes**

Cal. Civ. Code, § 1550.......................................................................................9

Cal. Civ. Code, § 1556.....................................................................................10

Cal. Civ. Code § 1638........................................................................................7

Federal Arbitration Act (9 U.S.C. §§ 1-16) ........................................... *passim*

**Other Authorities**

JAMS Comprehensive Arbitration Rules & Procedures, Rule 11(b)
    (effective July 1, 2014), https://www.jamsadr.com/rules-comprehensive-
    arbitration/....................................................................................................12

Defendants Uber Technologies, Inc., Uber Eats,[1] and Postmates, LLC ("Postmates") (collectively, "Uber") respectfully submit the memorandum of law in support of their motion to compel arbitration and to stay this action.

## I.     INTRODUCTION

Plaintiff Micheli & Shel, LLC ("Plaintiff" or "Michaeli's Bakery"),[2] a restaurant, commenced this putative class action against Uber, Grubhub, Inc., and DoorDash, Inc. (collectively, "Defendants"), three online food ordering and delivery platforms.  Plaintiff's complaint alleges that Defendants violated recent New York City legislation that caps delivery fees during the COVID-19 pandemic, Local Law No. 52 of 2020 and Local Law No. 88 of 2020, and seeks declaratory relief.  This suit is flawed in a number of respects, but most fundamentally, it cannot proceed in this Court because Plaintiff has agreed to arbitrate disputes between Plaintiff and Uber Eats and Postmates.

Plaintiff willingly contracted with Uber Eats and Postmates and agreed to those platforms' terms and conditions.  Those terms and conditions require that any dispute "arising out of or in connection with" Plaintiff's agreement with Uber Eats and "any and all disputes between" Plaintiff and Postmates be submitted to arbitration. These terms and conditions also state that any threshold questions of arbitrability, such as whether an issue is arbitrable, must be decided by an arbitrator.

---

[1] In this suit, Plaintiff identifies as defendants Uber Technologies, Inc., Uber Eats, and Postmates, LLC. However, Uber Eats is not a corporate entity, but instead a service.

[2] Plaintiff identifies itself as Micheli & Shel, but also operates under the name Michaeli's Bakery. (Declaration of Zachary Lopez ("Lopez Decl.") ¶ 5).  Micheli & Shel shares a business address with Michaeli's Bakery.

The Federal Arbitration Act ("FAA") and controlling case law require strict enforcement of arbitration agreements, with all doubts resolved in favor of enforceability.  Because Plaintiff is contractually obligated to arbitrate disputes with Uber Eats and Postmates, Plaintiff must pursue its claims in arbitration, and this action should be stayed pending the outcome of such arbitration.

## II.    BACKGROUND

Uber Eats and Postmates enable consumers to place takeout and delivery orders with restaurants, grocers, and other merchants online, and enable couriers to find flexible earning opportunities delivering such orders.  (*See* Compl., ¶ 45). During the COVID-19 pandemic, over half of restaurants were forced to takeout and delivery only business models.  (Compl. ¶ 31). According to Plaintiff's Complaint, Uber and the other defendants served as "a lifeline" to restaurants during the pandemic that helped Plaintiff "to maximize sales and marketing." (Compl. ¶ 45).

### A.    Plaintiff Agrees To Arbitrate Disputes With Uber Eats

On November 13, 2019, Michaeli's Bakery, through its authorized manager, executed a written agreement with Uber Eats ("Uber Eats Order Form").  (Declaration of Jacques Pelham ("Pelham Decl.") ¶ 5, Exhibit A).  The Uber Eats Order Form states that Plaintiff may "access and use [the Uber Eats Platform] subject to the terms and conditions, including an arbitration provision," and incorporates the Uber Eats Terms.  (Pelham Decl. ¶ 5, Exhibit A).  The Uber Eats Order Form includes a live hyperlink that refers to, and when clicked redirects to, the then-effective version of the Uber Eats U.S. Merchant Terms and Conditions ("Uber Eats Terms") on Uber's website.  The top of the first page of the Uber Eats Terms again highlights the arbitration provision, stating:

> BY ACCEPTING THIS AGREEMENT, BY (1) CLICKING A
> BOX INDICATING ACCEPTANCE OR (2) EXECUTING AN
> ORDER FORM OR ADDENDUM THAT REFERENCES

2

> THESE TERMS, MERCHANT AGREES TO THE TERMS OF
> THIS AGREEMENT.
>
> . . .
>
> SECTION 17 OF THIS AGREEMENT CONTAINS
> PROVISIONS THAT GOVERN HOW CLAIMS THAT THE
> PARTIES HAVE AGAINST EACH OTHER ARE RESOLVED,
> INCLUDING WITHOUT LIMITATION *A MANDATORY
> ARBITRATION PROVISION.*

(Pelham Decl. ¶ 5, Exhibit B (emphasis added)).

Section 17.1 of the Uber Eats Terms provides, in relevant part:

> Any dispute, whether contractual or otherwise, arising out of or in
> connection with this Agreement or these dispute resolution
> procedures, including any question regarding its existence,
> performance, validity, or termination, will be referred to and
> finally resolved by arbitration administered by JAMS in
> accordance with its Comprehensive Arbitration Rules and
> Procedures (the "***JAMS Rules***"), which are deemed to be
> incorporated by reference into this clause.

(*Id.*).  This arbitration provision comes with an express delegation clause:

> The parties agree that the arbitrator ("Arbitrator"), and not any
> federal, state, or local court or agency, shall have exclusive
> authority to resolve any disputes relating to the interpretation,
> applicability, enforceability or formation of this Agreement,
> including any claim that all or any part of this Agreement is void
> or voidable.  *The Arbitrator shall also be responsible for
> determining all threshold arbitrability issues, including issues
> relating to whether this Agreement is unconscionable or illusory
> and any defense to arbitration, including waiver, delay, laches, or
> estoppel.*

(*Id.* (emphasis added)).  Section 17.1(vii) also provides in relevant part that "[n]either party may

bring any class, collective, or representative action against the other party."  (*Id.*).

**B.    Plaintiff Agrees To Arbitrate Disputes With Postmates**

On May 12, 2020, Plaintiff executed Postmates' Merchant Agreement ("May Postmates

Agreement").  (Declaration of Zachary Lopez ("Lopez Decl.") ¶ 6, Exhibit A; *see* Compl. ¶¶ 67,

77, 82, see also ¶ 86).  That agreement permitted either party to terminate the May Postmates

Agreement "for convenience upon thirty (30) days prior written notice, which may include

email."  (Lopez Decl. ¶ 6, Exhibit A at 4).

In the fall of 2020, Postmates updated its standard agreements.  On November 5, 2020,

Postmates sent an email to Plaintiff explaining that Postmates was "updating [its] Seller

Agreement and moving it online" ("Email Update").  (Lopez Decl. ¶ 7, Exhibit B).  The Email

Update further explains that the updated terms "will go into effect on December 7th, 2020.  If

you do not terminate the agreement before then, and if you continue to use our Platform

[Postmates], you will be deemed to have accepted the updated Seller Agreement."  *Id.*  The email

"encourage[s]" Plaintiff to read the updated agreement "in its entirety" and also provides a

"highlight" of the new terms including "[a] mutual arbitration provision."  *Id.*  The email

concludes by reiterating that "[b]y continuing to accept or place orders through our Platform

[Postmates] on or after December 12th, 2020, you will be deemed to have accepted the updated

Seller Agreement."  *Id.*

The first page of the updated Postmates agreement ("Updated Postmates Terms")

includes the following summary of changes:

> **PLEASE REVIEW THIS AGREEMENT CAREFULLY, IN
> PARTICULAR THE MUTUAL ARBITRATION
> PROVISION IN THE DISPUTES SECTION, AND THE
> LIMITATION OF LIABILITY SECTION.**
>
> By using the Platform or the Postmates Merchant Dashboard, or
> signing or agreeing to a Sign-Up Form, [Plaintiff] also
> acknowledges and agrees that it has read and fully understands the
> terms of this agreement, and has entered this agreement based on
> its own judgment and the advice of independent legal counsel (if
> sought).

(Lopez Decl. ¶ 8, Exhibit C, at 1).  The disputes section of the Updated Postmates

Terms provides, in relevant part:

> The parties mutually agree to resolve any and all disputes between
> them exclusively through final, binding, and individual arbitration
> instead of filing a lawsuit in court (except as otherwise provided
> below).  However, this mutual arbitration provision does not cover
> disputes that, as a matter of law, may not be subject to pre-dispute
> arbitration agreements.

(*Id.* at 8).  The arbitration provision further states that all issues of arbitrability

must be decided by an arbitrator:

> Only an arbitrator, and not any federal, state, or local court or
> agency, will have the exclusive authority to resolve any dispute
> relating to the interpretation, applicability, enforceability, or
> formation of this mutual arbitration provision, including without
> limitation any dispute concerning arbitrability.

(*Id.* at 10).

In addition, the Updated Postmates Terms includes a class action waiver, stating that:

> To the greatest extent permitted by applicable law, the parties
> agree that any legal proceeding arising out of or relating to this
> agreement, will be conducted solely on an individual basis. Both
> parties agree not to seek to have any legal dispute heard as a class
> action, a representative action, a collective action, a private
> attorney-general action, or in any proceeding in which either party
> acts or proposes to act in a representative capacity. The parties
> further agree that no proceeding will be joined, consolidated, or
> combined with another proceeding, without the prior written
> consent of all parties to any such proceeding.

(*Id.* at 11).  Finally, the Updated Postmates Terms sets forth a procedure by which Plaintiff could

opt out of the mutual arbitration provision, but there is no indication that Plaintiff ever exercised

that option.  (Lopez Decl., ¶¶ 8, 10, Exhibit C).

Plaintiff continued to use Postmates after December 12, 2020, the date by which Plaintiff

had to terminate the agreement to opt out of the Updated Postmates Terms.  (Lopez Decl. ¶ 10,

Exhibit D; *see* Compl. ¶ 83).  Plaintiff also did not contact Postmates, or register any "questions or concerns" via the Help Center.  (Lopez Decl. ¶ 10).

      **C.**     **Plaintiff Files Suit**

Notwithstanding Plaintiff's agreements with Postmates and Uber Eats, Plaintiff filed this suit on June 7, 2021.  ECF No. 1.  The gravamen of Plaintiff's Complaint is that it was allegedly overcharged for its use of the Uber Eats and Postmates platforms.  (*See, e.g.,* Compl., ¶¶ 56-63).  The Complaint makes no mention of the arbitration provision in its agreements with Postmates and Uber.   Although Defendants informed Plaintiff that the restaurant is bound by arbitration provisions, Plaintiff refused to dismiss this suit.

**III.**    **ARGUMENT**

The Federal Arbitration Act governs the parties' arbitration provisions in the Uber Eats Terms and Updated Postmates Terms.  Issues of contract formation and interpretation concerning the agreements are governed by California state law.  (*See* Updated Postmates Terms p. 12 ("This agreement is governed by the law of California, except that the mutual arbitration provision is governed by the Federal Arbitration Act (9 U.S.C. §§ 1-16)"); Uber Eats Terms § 17.1 ("If the FAA and JAMS Rules are found to not apply to any issue that arises under this Agreement or the enforcement thereof, then that issue shall be resolved under the laws of the state of California.")).

The terms of the Uber Eats and Postmates' agreements reflect that the parties clearly and unmistakably delegated threshold issues of arbitrability to be resolved by an arbitrator, not the courts.  This alone warrants issuance of an order compelling Plaintiff to arbitrate its claims.  But even if this Court were to consider the enforceability of the parties' agreements to arbitrate, this Court should compel arbitration because both the Uber Eats Terms and the Updated Postmates

Terms plainly require Plaintiff to arbitrate this dispute.  This dispute belongs before an arbitrator, and this action should be stayed pending the outcome of the arbitration.

### A.       The FAA Governs The Parties' Arbitration Agreements.

The FAA governs the arbitration provisions in the Uber Eats Terms and the Updated Postmates Terms for two independent reasons.

*First*, the FAA controls because the Uber Eats Terms and the Updated Postmates Terms involve interstate commerce.  *See* 9 U.S.C. § 2.  The Supreme Court has broadly interpreted the FAA to have expansive reach coinciding with that of the Commerce Clause.  *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 273-77 (1995).  The FAA requires enforcement of an arbitration agreement for any transaction "affecting interstate commerce." *PaineWebber Inc. v. Bybyk*, 81 F.3d 1193, 1198 (2d Cir. 1996).  Courts routinely apply the FAA where, as here, the transactions at issue involve internet-based platforms and services.  *See, e.g., Camilo v. Lyft, Inc.*, 384 F. Supp. 3d 435, 439 (S.D.N.Y. 2019) (applying FAA to internet-based rideshare service agreement); *Plazza v. Airbnb, Inc.*, 289 F. Supp. 3d 537, 546 (S.D.N.Y. 2018) (applying FAA to online platform for renting property); *see also, Simeon v. Domino's Pizza LLC*, No. 17-CV-5550, 2019 WL 7882143, at *2 (E.D.N.Y. Feb. 6, 2019) (applying FAA to agreement for pizza delivery services).

*Second*, both agreements expressly provide that the FAA controls.  *See* Cal. Civ. Code § 1638 ("The language of a contract is to govern its interpretation . . . .").  Section 17.1(ix) of the Uber Eats Terms states that, "[n]otwithstanding any choice of law or other provision in this Agreement, the parties agree and acknowledge that this Agreement evidences a transaction involving interstate commerce and that the Federal Arbitration Act . . . will govern its interpretation and enforcement and proceedings pursuant thereto."  (Pelham Decl. ¶ 5, Exhibit B).  Similarly, the dispute section on page 10 of the Updated Postmates Terms states, "Postmates

7

and the Merchant expressly agree that this mutual arbitration provision is a licensing agreement

governed exclusively by the FAA.  Postmates and the Merchant expressly agree that the FAA

will exclusively govern the interpretation and enforcement of this mutual arbitration provision,

and that the FAA will apply to any and all disputes between the parties." (Lopez Decl. ¶ 8,

Exhibit C).  This, too, brings the parties' agreements within the ambit of the FAA.  *See, e.g.,*

*Buckeye Check Cashing, Inc. v. Cardegna,* 546 U.S. 440, 442-43 (2006) (analyzing arbitration

agreement under FAA where parties expressly agreed the FAA would govern).

       The FAA manifests Congress's intent to ensure the "rapid and unobstructed enforcement

of arbitration agreements," reflecting a public policy that strongly favors arbitration and requires

courts to enforce arbitration agreements according to their terms.  *See* 9 U.S.C. § 4; *Moses H.*

*Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 22-23 (1983); *AT&T Mobility LLC v.*

*Concepcion*, 563 U.S. 333, 339-46 (2011); *Sacchi v. Verizon Online LLC*, No. 14-CV-423, 2015

WL 765940, at *9 (S.D.N.Y. Feb. 23, 2015) ("Broad arbitration clauses enjoy a presumption of

arbitrability").

     **B.**    **The Arbitrator Should Decide Threshold Questions of Arbitrability.**

       The parties also agreed through the Uber Eats Terms and the Updated Postmates Terms

to delegate to an arbitrator the determination of certain threshold issues concerning their

arbitration agreements.

       Section 17.1 of the Uber Eats Terms provides that the arbitrator "shall . . . be responsible

for determining all threshold arbitrability issues, including issues relating to whether this

Agreement is unconscionable or illusory and any defense to arbitration, including waiver, delay,

laches, or estoppel." (Pelham Decl. ¶ 5, Exhibit B, § 17.1).  Postmates Terms likewise states:

> Only an arbitrator, and not any federal, state, or local court or
> agency, will have the exclusive authority to resolve any dispute

> relating to the interpretation, applicability, enforceability, or
> formation of this mutual arbitration provision, including without
> limitation any dispute concerning arbitrability.

(Lopez Decl. ¶ 8, Exhibit C, at 10.)

Parties to a contract "can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy," and the FAA operates on such arbitration agreements just as it does on any other. *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010). Accordingly, the delegation clauses in the parties' agreements must be enforced so long as the arbitration agreements (1) are valid and (2) delegate threshold arbitrability questions to the arbitrator by "clear and unmistakable" evidence. *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 530 (2019).

### 1.   *The Parties Entered Into Valid Arbitration Agreements.*

Issues of contract formation and interpretation concerning these agreements are governed by California law. (*See* Lopez Decl. ¶ 8, Exhibit C, at 11 ("This agreement is governed by the law of California"); Pelham Decl. ¶ 5, Exhibit B, § 17.1(ix) (if the FAA and JAMS Rules are found to "not apply to any issue that arises under this Agreement or the enforcement thereof, then that issue shall be resolved under the laws of the state of California.")). In California, general principles of contract law determine whether the parties have entered into a binding agreement to arbitrate. *Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev. (US), LLC*, 55 Cal. 4th 223, 236 (Cal. 2012). The elements of contract formation under California law are (1) parties capable of contracting, (2) mutual assent, (3) a lawful object, and (4) sufficient cause or consideration. Cal. Civ. Code, § 1550; *see also Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 66 (2d Cir. 2017) (holding California law is substantially similar to New York law with respect to

contract formation); *Starke v. SquareTrade, Inc.*, 913 F.3d 279, 290 n.7 & n.8 (2d Cir. 2019) (same).  Each of these elements has been met here.

Plaintiff cannot plausibly contend that its agreements with Uber Eats and Postmates lack any of the elements of contract formation.  With few exceptions not applicable here, "[a]ll persons are capable of contracting."  Cal. Civ. Code, § 1556.  The purpose of resolving disputes through arbitration is lawful and is indeed favored under both federal and state law.  *See Concepcion,* 563 U.S. at 339-346; *Moncharsh v. Heily & Blase*, 3 Cal. 4th 1, 9 (Cal. 1992).  And "it is well settled that mutual promises made by parties to a contract to submit claims to arbitration constitute sufficient consideration to support the agreement."  *E.g., Lockhart v. Gen. Motors Corp.*, No. 01-CV-2052, 2001 WL 1262922, at *2 (C.D.Cal. Sept. 14, 2001).  On the issue of mutual assent, for Uber Eats, Plaintiff manifested its assent to the arbitration provision by signing the Uber Eats Order Form incorporating the Uber Eats Terms.  (*See* Compl., ¶ 83); *see also, e.g., Marin Storage & Trucking, Inc. v. Benco Contracting & Eng'g, Inc.*, 89 Cal. App. 4th 1042, 1049 (Cal. Ct. App. 2001) ("[O]rdinarily one who signs an instrument which on its face is a contract is deemed to assent to all its terms.").

For Postmates, Plaintiff demonstrated its agreement to the Updated Postmates Terms, which contained an arbitration provision, through its continued use of the platform, after receiving clear notice that such conduct would constitute assent to the modified terms.  The terms Postmates emailed to Plaintiff on November 5, 2020 required "no affirmative action," and thus the validity of the agreement "depends on whether the user has actual or constructive knowledge" of the terms and conditions.  *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1176 (9th Cir. 2014).

10

The email sent to Plaintiff constituted actual notice of the arbitration provision.  The email specifically "highlight[ed]" the new terms including "[a] mutual arbitration provision." (Lopez Decl. ¶ 7, Exhibit B). The Email Update used short sentences and bullet points.  (*Id.*).  It also included a hyperlink to the Updated Postmates Terms in two places, and the entire email is visible on a screen at the same time.  The notification stated in plain terms that "if you continue to use our Platform, you will be deemed to have accepted the updated Seller Agreement" and reiterated that "[b]y continuing to accept or place orders through [Postmates] on or after December 12th, 2020, you will be deemed to have accepted the updated Seller Agreement.  If you have any questions or concerns, please contact us via our Help Center."  *Id.; see, e.g., Valle v. ATM Nat'l, LLC*, 14-CV-7993, 2015 WL 413449, at *3 (S.D.N.Y. Jan. 30, 2015) (finding mutual assent established when plaintiff continued to use her credit card after defendant mailed letter and notice of changes to agreement).  The agreement also gave Plaintiff the opportunity to opt out of the arbitration provision.  (Lopez Decl. ¶ 8, Exhibit C, at 10).  Plaintiff neither contacted the Help Center, nor opted out of the arbitration agreement.  Plaintiff continued to use the Postmates service on or after December 12, 2020.  (Compl. ¶ 83; Lopez Decl., ¶ 10, Exhibit D).  Plaintiff thus assented to the updated terms including the arbitration provision.

> 2.    *The Parties Clearly and Unmistakably Agreed To Delegate Threshold Questions of Arbitrability.*

As noted above, the Uber Eats Terms and Updated Postmates Terms each contain language expressly delegating threshold questions of arbitrability to the arbitrator.  Section 17.1 of the Uber Eats Terms grants the arbitrator "exclusive authority to resolve any disputes relating to the interpretation, applicability, enforceability or formation of this Agreement, including any claim that all or any part of this Agreement is void or voidable," and further specifies that the arbitrator would "be responsible for determining all threshold arbitrability issues."  (Pelham

Decl. ¶ 5, Exhibit B § 17.1.)  The disputes section on page 10 of the Updated Postmates Terms likewise specifies that "[o]nly an arbitrator, and not any federal, state, or local court or agency, will have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability, or formation of this mutual arbitration provision, including without limitation any dispute concerning arbitrability."  (Lopez Decl. ¶ 8, Exhibit C at 10.)

This language clearly and unmistakably delegates threshold questions of arbitrability to the arbitrator.  *See, e.g., Rent-A-Center*, 561 U.S. at 68 (contract language granting arbitrator exclusive authority to resolve disputes relating to enforceability constituted delegation provision).  In addition, Section 17.1 of the Uber Eats Terms expressly incorporates by reference the JAMS Comprehensive Arbitration Rules and Procedures (Pelham Decl. ¶ 5, Exhibit B § 17.1), which in turn specify that "[j]urisdictional and arbitrability disputes, including disputes over the formation, existence, validity, interpretation or scope of the agreement under which Arbitration is sought, and who are proper Parties to the Arbitration, shall be submitted to and ruled on by the Arbitrator."  (JAMS Comprehensive Arbitration Rules & Procedures, Rule 11(b) (effective July 1, 2014), https://www.jamsadr.com/rules-comprehensive-arbitration/). Incorporation of such rules further evinces the parties' clear and unmistakable intent to delegate threshold questions of arbitrability to the arbitrator.  *See, e.g., Advanced Air Mgmt., Inc. v. Gulfstream Aerospace Corp.*, No. B265723, 2017 WL 3887428, at *4 (Cal. Ct. App. Sept. 6, 2017) (collecting decisions); *Ribeiro v. Sedgwick LLP*, No. C 16-4507, 2016 WL 6473238, at *2 (N.D. Cal. Nov. 2, 2016) (agreement "clearly and unmistakably delegated the issue of arbitrability to arbitration by incorporating the JAMS Comprehensive Arbitration Rules and Procedures"); *accord Contec Corp. v. Remote Sol., Co.*, 398 F.3d 205, 208 (2d Cir. 2005) (when "parties explicitly incorporate [into arbitration agreements] rules that empower an arbitrator to

decide issues of arbitrability, the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator").

The delegation clauses in the Uber Eats Terms and the Postmates Terms are dispositive. This Court need not decide whether the parties' agreements to arbitrate are actually valid and enforceable to grant this motion because threshold questions of arbitrability must be resolved by an arbitrator.

### C.   The FAA Requires Enforcement of the Parties' Arbitration Agreements.

Even if this Court were to look beyond the parties' delegation clauses, the FAA would require that Plaintiff's claims be submitted to arbitration in accordance with the terms of the parties' agreements.  In deciding whether to compel arbitration under the FAA, courts generally consider (1) whether the parties have a valid agreement to arbitrate and (2) whether the agreement covers the dispute in question.  *See Howsam v. Dean Witter Reynolds, Inc.* 537 U.S. 79, 83 (2002).  There can be no serious question that the arbitration clauses in those terms cover the instant dispute, and Plaintiff has no basis for contending otherwise.

The language of the parties' agreements "defines the scope of disputes subject to arbitration."  *E.E.O.C. v. Waffle House, Inc.* 534 U.S. 279, 289 (2002).  Given the presumption in favor of arbitrability, "[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.  Doubts should be resolved in favor of coverage," particularly where the arbitration clauses in question are written broadly.  *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986).

Here, the Uber Eats Terms and the Postmates Terms feature arbitration clauses of expansive scope.  The Uber Eats Terms arbitration clause encompasses "*[a]ny dispute,* whether contractual or otherwise, arising out of or in connection with this Agreement or these dispute

13

resolution procedures, including any question regarding its existence, performance, validity, or termination." (Pelham Decl. ¶ 5, Exhibit B § 17.1 (emphasis added)). The Updated Postmates Terms arbitration clause is equally broad, encompassing "*any and all disputes*" between the parties. (Lopez Decl. ¶ 8, Exhibit C, at. 8 (emphasis added)). The foregoing language unambiguously covers Plaintiff's claims based on alleged overcharging for Uber Eats and Postmates. (*See* Compl., ¶¶ 53-61.)

     **D.**    **This Action Should Be Stayed Pending Arbitration.**

Because Plaintiff's claims fall within the scope of the parties' arbitration agreements and must proceed in arbitration, if at all, this action should be stayed pending the outcome of such arbitration. *See Katz v. Cellco P'ship*, 794 F.3d 341, 347 (2d Cir. 2015) ("[T]he text, structure, and underlying policy of the FAA mandate a stay of proceedings when all of the claims in an action have been referred to arbitration and a stay requested.").

**IV.**    **CONCLUSION**

For the reasons explained above, Uber respectfully requests that the Court enter an order (1) compelling Plaintiff to submit its claims to arbitration and (2) staying this action pending the outcome of the arbitration.

Dated:  August 2, 2021

<div style="margin-left:50%">

COVINGTON & BURLING LLP

By: _/s/ Stacey K. Grigsby_

Stacey K. Grigsby

Stacey K. Grigsby
One CityCenter
850 Tenth Street, N.W.
Washington, D.C. 20001
Tel.: (202) 662-5238
Email: sgrigsby@cov.com

Andrew A. Ruffino
The New York Times Building
620 Eighth Avenue
New York, NY 10018
Tel.: (212) 841-1000
aruffino@cov.com

*Counsel for Defendant Uber Technologies, Inc., Uber Eats, and Postmates LLC*

</div>