UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------X
                                            :

MICHELI & SHEL, LLC,                                    :

                              :

                    Plaintiff,            :

                              :            21-CV-4995 (JMF)

         -v-            :

                              :            <u>OPINION AND ORDER</u>

GRUBHUB INC. et al.,                                    :

                              :

                    Defendants.            :

                              :
------------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

       In this putative class action, Plaintiff Micheli & Shel, LLC, a bakery located in New York

City, sues Grubhub, Inc., Postmates LLC, Uber Eats, and DoorDash Inc., four national food

delivery services, alleging violations of a New York City local law enacted during the COVID-

19 pandemic that limits the fees that food delivery services can charge restaurants for their

services.[1]  The question presented here is not whether Plaintiff's claims have merit, but whether

they can even be brought in this forum.  Defendants argue that Plaintiff agreed to arbitrate its

claims on an individual basis and, thus, move to compel arbitration and to stay this litigation.

The Court agrees with respect to Plaintiffs' claims against Grubhub, Uber Eats, and DoorDash

because, in each instance, Plaintiff did, in fact, agree to arbitration.  In Postmates's case,

however, the Court concludes that Plaintiff did not actually agree to arbitrate its claims.

---

[1]     Although the Complaint names as Defendants Grubhub Inc.; Grubhub Inc. d/b/a
Seamless; and Seamless North America, LLC., *see* ECF No. 1, Grubhub represents, and Plaintiff
does not dispute, that it acquired Seamless on December 31, 2014, and that Seamless North
America, LLC, no longer exists as a separate corporate entity, *see* ECF No. 53 ("Wilson Decl."),
¶ 11.  Accordingly, the Court refers to all three Defendants here as Grubhub.

Accordingly, and for the reasons that follow, the motions of Grubhub, Uber Eats, and DoorDash to compel arbitration and stay are GRANTED, but Postmates's motions are DENIED.

## BACKGROUND

The relevant facts — taken from the Complaint and sworn declarations submitted in connection with Defendants' motions — are undisputed. Most relevant to Defendants' motions are the terms of their respective contracts with Plaintiff. The Court will summarize each in turn.

### A. Plaintiff's Contract with Grubhub

On October 30, 2019, Plaintiff signed up to work with Grubhub. ECF No. 53 ("Wilson Decl."), ¶ 5. Adir Michaeli, as "owner," completed the sign-up process, which included signing the Grubhub Restaurants and Services Form. *Id.* ¶¶ 6-7. In doing so, Michaeli checked a box affirming the following:

> I certify that I am the duly authorized representative of Restaurant, and that I have carefully reviewed and agree to the Grubhub Restaurant Terms set forth at https://get.grubhub.com/legal/restaurant-terms ("Terms"), which are incorporated herein and made a part of this Agreement. [Grubhub] may modify the Terms at any time at its sole discretion, provided that such modifications will be applied only prospectively. You agree that [Grubhub] has the right to notify you of updated Terms by posting them on the Systems. You should review the Terms before using the Services. **The Terms contain a mandatory arbitration provision that affects your legal rights. Please read it.**

ECF No. 53-1 ("Grubhub Form"), at 2 (emphasis in original). The first paragraph of the Grubhub Terms, available at the hyperlink in the Form, emphasizes in bold, all-caps text that

**"THE SECTION ENTITLED 'DISPUTE RESOLUTION' HAS A MANDATORY ARBITRATION PROVISION. IT AFFECTS RESTAURANT'S LEGAL RIGHTS. PLEASE READ IT."** ECF No. 53-2 ("Grubhub Terms"), at 1 (emphasis in original).

In turn, the arbitration provision provides:

> Restaurant and [Grubhub] agree that all claims or disputes arising out of the Agreement will be decided by an arbitrator through arbitration and not by a judge or jury ("Arbitration Agreement"). This Arbitration Agreement is governed by

the Federal Arbitration Act ("FAA") and evidences a transaction involving commerce.  This arbitration will be conducted before a single arbitrator under the Commercial Arbitration Rules of the American Arbitration Association ("AAA") . . .

Grubhub Terms 5.  The arbitration provision also includes the following class action waiver:

The parties agree to bring any claim or dispute in arbitration on an individual basis only, and not as a class or collective action, and there will be no right or authority for any claim or dispute to be brought, heard, or arbitrated as a class or collective action ("Class Action Waiver").  Regardless of anything herein and/or the applicable AAA Rules, the interpretation, applicability or enforceability of the Class Action Waiver may only be determined by a court and not an arbitrator.

*Id*.  The terms were last updated October 15, 2018.  Wilson Decl. ¶ 9.

## B.  Plaintiff's Contract with Uber Eats

Michaeli signed Plaintiff up with Uber Eats on November 13, 2019.  ECF No. 66

("Pelham Decl."), ¶ 5.  Uber Eats is operated by Portier, LLC, a subsidiary of Uber

Technologies.  *Id*. ¶ 3.  When Michaeli registered Plaintiff with Uber Eats, he signed the Uber

Eats Order Form.  ECF No. 66-1 ("Uber Eats Form").  The first section, "General Terms," stated

that the agreement was "subject to the terms and conditions, including an arbitration provision,

currently available at [link], as may be updated from time to time."  *Id*.  Clicking on the link

brought up the "Uber Eats U.S. Merchant Terms and Conditions," ECF No. 66-2 ("Uber Eats

Terms"), which included the following arbitration provision:

Any dispute, whether contractual or otherwise, arising out of or in connection with this Agreement or these dispute resolution procedures, including any question regarding its existence, performance, validity, or termination, will be referred to and finally resolved by arbitration administered by JAMS in accordance with its Comprehensive Arbitration Rules and Procedures (the "JAMS Rules"), which are deemed to be incorporated by reference into this clause.  The parties agree that the arbitrator ("Arbitrator"), and not any federal, state, or local court or agency, shall have exclusive authority to resolve any disputes relating to the interpretation, applicability, enforceability or formation of this Agreement, including any claim that all or any part of this Agreement is void or voidable. The Arbitrator shall also be responsible for determining all threshold arbitrability issues, including issues relating to whether this Agreement is unconscionable or

illusory and any defense to arbitration, including waiver, delay, laches, or
estoppel.

Uber Eats Terms § 17.1.  The Uber Eats Terms also included the following class action waiver:

"Neither party may bring any class, collective, or representative action against the other party,

and will preclude a party from participating in or recovering relief under any current or future

class, collective, consolidated, or representative action brought against the other party by

someone else."  Uber Eats Terms § 17.1(vii).

**C.  Plaintiff's Contract with DoorDash**

Michaeli signed up to create an account for Plaintiff with DoorDash on January 21, 2020.

ECF No. 60 ("Sommers Decl."), at ¶ 6.  To do so, he completed the DoorDash Sign-Up Sheet,

ECF No. 60-1 ("DoorDash Form"), and signed the DoorDash Merchant Terms of Use, ECF No.

60-2 ("DoorDash Terms").[2]  The first section of the Merchant Terms of Use calls attention to

Section 17, governing arbitration of claims, as follows:

> SECTION 17 OF THIS AGREEMENT CONTAINS PROVISIONS THAT
> GOVERN HOW CLAIMS THAT YOU AND WE HAVE AGAINST EACH
> OTHER ARE RESOLVED, INCLUDING, WITHOUT LIMITATION, ANY
> CLAIMS THAT AROSE OR WERE ASSERTED BEFORE THE EFFECTIVE
> DATE OF THIS AGREEMENT.  IN PARTICULAR, SECTION 17 SETS
> FORTH OUR ARBITRATION AGREEMENT WHICH WILL, WITH LIMITED
> EXCEPTIONS, REQUIRE DISPUTES BETWEEN US TO BE SUBMITTED
> TO BINDING AND FINAL ARBITRATION.  UNLESS YOU OPT OUT OF
> THE ARBITRATION AGREEMENT: (1) YOU WILL ONLY BE PERMITTED
> TO PURSUE CLAIMS AND SEEK RELIEF AGAINST US ON AN
> INDIVIDUAL BASIS, NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY
> CLASS OR REPRESENTATIVE ACTION OR PROCEEDING; AND (2) YOU
> ARE WAIVING YOUR RIGHT TO SEEK RELIEF IN A COURT OF LAW
> AND TO HAVE A JURY TRIAL ON YOUR CLAIMS.  THE ARBITRATION
> AGREEMENT COULD AFFECT YOUR RIGHT TO PARTICIPATE IN
> PENDING PROPOSED CLASS ACTION LITIGATION.  PLEASE SEE
> SECTION 17 FOR MORE INFORMATION REGARDING THIS
> ARBITRATION AGREEMENT, THE POSSIBLE EFFECTS OF THIS

---

[2]     References to page numbers in the DoorDash Terms are to the page numbers
automatically generated by the Court's Electronic Case Filing ("ECF") system.

ARBITRATION AGREEMENT, AND HOW TO OPT OUT OF THE
ARBITRATION AGREEMENT.

DoorDash Terms 4.  Section 17, in turn, states that, subject to two exceptions not relevant here,

"[a]ny dispute, controversy or claim arising out of, relating to or in connection with this contract,

including the breach, termination or validity thereof, shall be finally resolved by binding

arbitration, rather than in court."  *Id.* § 17.1.  It further specifies that arbitration will be "governed

by the Federal Arbitration Act in all respects," *id.* § 17.2, conducted by JAMS, *id.*, and that

> [t]he arbitrator, and not any federal, state, or local court or agency, shall have
> exclusive authority to resolve any dispute relating to the interpretation,
> applicability, enforceability or formation of this Arbitration Agreement,
> including, but not limited to any claims that all or any part of this Arbitration
> Agreement is void or voidable.

*Id.* § 17.3.  The agreement also includes a class action waiver, *id.* § 17.5, and a provision that

allows a merchant to "opt out of this Arbitration Agreement." *id.* § 17.6.  The latter provision

further states that "[i]f you do [opt out], neither you nor the Company can force the other to

arbitrate as a result of this Agreement.  To opt out, you must notify the Company in writing no

later than 30 days after first becoming subject to this Arbitration Agreement."  *Id.*  DoorDash

represents, and Plaintiff does not dispute, that Plaintiff did not exercise its right to opt out of the

arbitration provision.  Sommers Decl. ¶ 11.

DoorDash updated its Merchant Terms of Use on May 12, 2020, *id.* ¶ 12, *see* ECF No.

60-4, on June 17, 2020, Sommers Decl. ¶ 14, *see* ECF No. 60-5, on December 2, 2020, Sommers

Decl. ¶ 17, *see* ECF No. 60-6, on February 1, 2021, Sommers Decl. ¶ 20, *see* ECF No. 60-7, and

on June 1, 2021, Sommers Decl. ¶ 22, *see* ECF No. 60-8.  Each time, DoorDash sent an email to

Plaintiff advising it of the changes.  Sommers Decl. ¶ 16.  DoorDash submitted two such emails,

which each appear to have a clear header or subject line — "Updated Online Merchant Terms"

and "We've Updated our Online Merchant Terms" — and include a link to the revised terms

prominently in the first line of the email. *Id*. ¶¶ 18, 23.  Some of the updates modified the arbitration agreement, but the core provisions relevant to this case, including the delegation of the question of arbitrability to the arbitrator and the class action waiver, remained unchanged.

## D. Plaintiff's Contract with Postmates

Finally, on May 12, 2020, Michaeli signed Plaintiff up to work with Postmates.  ECF No. 65 ("Lopez Decl."), ¶ 6.  Notably, the contract that Plaintiff signed at that time — the Postmates Merchant Agreement, ECF No. 65-1 ("Postmates Terms")[3] — did not include an arbitration agreement, *see* ECF No. 75 ("Pl.'s Opp'n"), at 11.  In addition, the Postmates Merchant Agreement specified that "[t]his Agreement may be amended only by a written document executed by both Parties."  Postmates Terms 6.

On November 5, 2022, Postmates sent all merchants with which it contracted, including Plaintiff, an email stating that it was "updating [the] Seller Agreement and moving it online." ECF No. 65-2 ("Postmates Modification Email").  The email noted that "[a] mutual arbitration provision has been added" as well as a "[m]odification provision allowing Postmates to modify the terms."  *Id.*  One of the first paragraphs of the new terms, ECF No. 65-3 ("Postmates Modified Terms"), provided as follows: "**PLEASE REVIEW THIS AGREEMENT CAREFULLY, IN PARTICULAR THE MUTUAL ARBITRATION PROVISION IN THE DISPUTES SECTION** . . . ."  *Id.* at 1.  The arbitration provision, in turn, stated that "[t]he parties mutually agree to resolve any and all disputes between them exclusively through final, binding, and individual arbitration instead of filing a lawsuit in court" and that the arbitration will be "governed exclusively by the FAA."  *Id.* at 8-10.  The agreement includes a delegation

---

[3]      References to page numbers in the Postmates Merchant Agreement are to the page numbers automatically generated by the Court's ECF system.

clause, instructing that "[o]nly an arbitrator, and not any federal, state, or local court or agency, will have the exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability, or formation of this mutual arbitration provision, including without limitation any dispute concerning arbitrability." *Id*. at 10.  It too includes an opt-out provision, which allows a merchant to opt-out of the arbitration provision within thirty days of acceptance of the agreement, as well as a class action waiver.  *Id*.

## LEGAL STANDARDS

Under the Federal Arbitration Act, ("FAA"), 9 U.S.C. § 1 *et seq.*, parties may contract to arbitrate their disputes, and such agreements are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  *Id*. § 2.  The FAA "embodies a national policy favoring arbitration" founded upon "a desire to preserve the parties' ability to agree to arbitrate, rather than litigate, [their] disputes."  *Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 118 (2d Cir. 2012) (cleaned up).  Indeed, Congress passed the Act in order to counteract "judicial hostility" toward arbitration, *Allied-Bruce Terminix Cos., Inc. v. Dobson*, 513 U.S. 265, 270-72 (1995), and to "place[] arbitration agreements upon the same footing as other contracts," *Schnabel*, 697 F.3d at 118 (quotation marks omitted).  Arbitration remains, however, "a matter of consent, and thus is a way to resolve those disputes — *but only those disputes* — that the parties have agreed to submit to arbitration."  *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 299 (2010) (internal citations and quotation marks omitted).

"The threshold question facing any court considering a motion to compel arbitration is therefore whether the parties have indeed agreed to arbitrate."  *Schnabel*, 697 F.3d at 118.  Whether or not the parties have agreed to arbitrate is a question of state contract law.  *Specht v.*

*Netscape Commc'ns Corp.*, 306 F.3d 17, 26 (2d Cir. 2002).[4]  "If the court finds that the parties agreed to arbitrate, it should then consider whether the dispute falls within the scope of the arbitration agreement." *Id.*  The FAA, however, "allows parties to agree by contract that an arbitrator, rather than a court, will resolve threshold arbitrability questions as well as underlying merits disputes." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 527 (2019).  If the parties make such a delegation, the only job that remains for the court is to determine "the fundamental question of whether they formed the agreement to arbitrate in the first place." *Doctor's Assocs., Inc. v. Alemayehu*, 934 F.3d 245, 251 (2d Cir. 2019); *see also id.* ("[W]e first look to see if an agreement to arbitrate was formed, then determine if it contains a delegation clause. . . . Arguments that an agreement to arbitrate was never formed . . . are to be heard by the court even where a delegation clause exists." (quoting *Edwards v. Doordash, Inc.*, 888 F.3d 738, 744 (5th Cir. 2018))).  The party seeking to compel arbitration "bears [the] initial burden of demonstrating that an agreement to arbitrate was made"; the burden then shifts to the party resisting arbitration to show that the agreement is inapplicable or invalid.  *Hines v. Overstock.com*, 380 F. App'x 22, 24 (2d Cir. 2010) (summary order); *see also Harrington v. Atlantic Sounding Co., Inc.*, 602 F.3d 113, 124 (2d Cir. 2010).

---

[4]     Here, even though two of the contracts at issue (for DoorDash and Uber Eats) include choice-of-law provisions adopting California law, the law of New York — the state where Plaintiff is located and entered the contracts at issue — applies to the question of contract formation.  *See Schnabel*, 697 F.3d at 119 ("Applying the choice-of-law clause to resolve the contract formation issue would presume the applicability of a provision before its adoption by the parties has been established.").  In any event, the Second Circuit has held that "New York and California apply substantially similar rules for determining whether the parties have mutually assented to a contract term."  *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 74 (2d Cir. 2017) (internal quotation marks omitted).

**DISCUSSION**

Applying the foregoing standards, the Court concludes that Plaintiff is obligated to arbitrate its claims against Grubhub, Uber Eats, and DoorDash.  By contrast, Plaintiff is not obligated to arbitrate its claims against Postmates.  The Court will begin with the motions of Grubhub, Uber Eats, and DoorDash, which can be addressed together.

**A.  Plaintiff Must Arbitrate Its Claims Against Grubhub, Uber Eats, and DoorDash**

Significantly, Plaintiff does not dispute that it entered into valid contracts with Grubhub, Uber Eats, and DoorDash, pursuant to which it agreed to arbitration of "all claims or disputes arising out of the Agreement," Grubhub Terms 5, "[a]ny dispute, whether contractual or otherwise, arising out of or in connection with this Agreement," Uber Eats Terms § 17.1, or "[a]ny dispute, controversy or claim arising out of, relating to or in connection with this contract," DoorDash Terms § 17.1, respectively.  Instead, Plaintiff's principal argument is that this dispute does not fall within the ambit of its arbitration agreements.  *See* Pl.'s Opp'n 8.  But whether its arguments on that score are valid is not for this Court to say because, in the case of each delivery service, the contract at issue plainly delegates the question of arbitrability to the arbitrator.  *See* Uber Eats Terms § 17.1 ("The Arbitrator shall also be responsible for determining all threshold arbitrability issues, including issues relating to whether this Agreement is unconscionable or illusory and any defense to arbitration, including waiver, delay, laches, or estoppel."); DoorDash Terms § 17.3 ("The arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of this Arbitration Agreement including, but not limited to any claims that all or any part of this Arbitration Agreement is void or voidable."); Grubhub

Terms 5 ("This arbitration will be conducted before a single arbitrator under the Commercial

Arbitration Rules of the American Arbitration Association ("AAA")).[5]

Conspicuously, Plaintiff addresses the issue of delegation in just one paragraph of its

opposition, arguing, without citation, that "it is axiomatic that if the Court finds that the

arbitration agreements do not apply to this dispute, neither do the delegation clauses subsumed

within them."  Pl.'s Opp'n 15.  But the Supreme Court has repeatedly held that courts must

analyze the validity of a delegation provision on its own terms, without regard to whether the

underlying dispute is subject to arbitration.  *See, e.g.*, *Rent-A-Center, W., Inc. v. Jackson*, 561

U.S. 63, 70 (2010) ("An agreement to arbitrate a gateway issue is simply an additional,

antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA

operates on this additional arbitration agreement just as it does on any other."); *Henry Schein,*

*Inc.*, 139 S. Ct. at 529 ("When the parties' contract delegates the arbitrability question to an

arbitrator, a court may not override the contract. . . .  That is true even if the court thinks that the

argument that the arbitration agreement applies to a particular dispute is wholly groundless.").

Indeed, the Court has held that a delegation clause "is valid under § 2 [of the FAA] 'save upon

such grounds as exist at law or in equity for the revocation of any contract,'" *Rent-A-Center*, 561

---

[5]      Although the Grubhub Terms do not contain an explicit delegation clause, the Second
Circuit has held that "when . . . parties explicitly incorporate rules that empower an arbitrator to
decide issues of arbitrability, the incorporation serves as clear and unmistakable evidence of the
parties' intent to delegate such issues to an arbitrator."  *Contec Corp. v. Remote Sol., Co.*, 398
F.3d 205, 208 (2d Cir. 2005).  Rule 7(a) of the AAA Commercial Arbitration Rules states that
"[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any
objections with respect to the existence, scope, or validity of the arbitration agreement or to the
arbitrability of any claim or counterclaim."  AAA Commercial Arbitration Rules and Mediation
Procedures, R-7(a) (Oct. 1, 2013); *see also Mobile Real Est., LLC v. NewPoint Media Grp., LLC*,
460 F. Supp. 3d 457, 473 n.9 (S.D.N.Y. 2020) (holding that AAA rules require the delegation of
threshold questions of arbitrability to an arbitrator).

U.S. at 70 (quoting 9 U.S.C. § 2), and "unless [a plaintiff] challenge[s] the delegation provision specifically, [a court] must treat it as valid under § 2, and must enforce it under §§ 3 and 4, leaving any challenge to the validity of the Agreement as a whole for the arbitrator," *id*. at 72. Plaintiff makes no such challenge here.  Accordingly, the Court is compelled to conclude that the threshold questions of arbitrability with respect to Plaintiff's claims against Uber Eats, Grubhub, and DoorDash are for the relevant arbitrator to decide and, thus, that their motions to compel arbitration must be granted.

The Uber Eats, Grubhub, and DoorDash Terms each also include a class action waiver. *See* Grubhub Terms 5; Uber Eats Terms § 17.1(vii); DoorDash Terms § 17.5.  Grubhub's waiver specifies that "the interpretation, applicability and enforceability of the Class Action Waiver may only be determined by a court and not an arbitrator."  Grubhub Terms 5.  Plaintiff asserts that the Uber Eats and DoorDash contracts include similar provisions, *see* Pl.'s Opp'n 16-17, but the citations that Plaintiff provides are incorrect and the contracts do not appear to contain similar provisions.[6]  In any event, the Supreme Court and the Second Circuit have consistently held that class action waivers like the ones at issue here are generally enforceable and do not make an arbitration agreement unconscionable.  *See, e.g.*, *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1619 (2018) ("Congress has instructed federal courts to enforce arbitration agreements according to their terms — including terms providing for individualized proceedings.");  *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 352 (2011) (holding that the FAA preempts a California judicial

---

[6]     DoorDash's revised contract of June 1, 2021, ECF No. 60-8 ("DoorDash Modified Terms"), to which Plaintiff argues it has not assented, *see* Pl.'s Opp'n 14-15, does include such a provision.  *See* DoorDash Modified Terms § 17(g) ("Notwithstanding any other provision in this Agreement, any claim that all or part of this Waiver of Class or Consolidated Actions is unenforceable, unconscionable, void or voidable may be determined only by a court of competent jurisdiction and not by an arbitrator.").  This is immaterial, however, for the reasons described above.

rule classifying collective-arbitration waivers in consumer contracts as unconscionable);

*American Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 236 (2013) ("The class-action

waiver merely limits arbitration to the two contracting parties.  It no more eliminates those

parties' right to pursue their statutory remedy than did federal law before its adoption of the class

action for legal relief in 1938."); *Sutherland v. Ernst & Young LLP*, 726 F.3d 290, 296 (2d Cir.

2013) (holding that class action waivers mut be enforced absent a "contrary congressional

command"); *Horton v. Dow Jones & Co., Inc.*, 804 F. App'x 81 (2d Cir. 2020) (summary order)

("[A] contractual proscription against class actions is neither unconscionable nor violative of

public policy.").  Plaintiff argues — again, without citation — that, "[s]ince the Arbitration

Agreements do not apply to this dispute . . . it follows that the class action waivers, subsumed in

the Service Agreements, also do not apply to Plaintiff's claims."  Pl.'s Opp'n 15.  But here too,

the Court must analyze the validity of the class action waivers at issue independently from the

underlying disputes.  *See, e.g.*, *Rent-A-Center*, 561 U.S. at 72 ("Application of the severability

rule does not depend on the substance of the remainder of the contract.  Section 2 operates on the

specific 'written provision' to 'settle by arbitration a controversy' that the party seeks to

enforce."); *see also Saizhang Guan v. Uber Techs. Inc.*, 236 F. Supp. 3d 711, 733-34 (E.D.N.Y.

2017).  Once again, Plaintiff fails to raise a specific challenge to the validity of the class action

waivers.  Accordingly, the Court finds that the class action waivers are valid and that Plaintiff

must proceed with individual arbitration.

## B.  Plaintiff Did Not Agree to Arbitrate Its Claims Against Postmates

By contrast, the Court concludes that Plaintiff did not agree to arbitrate its claims against

Postmates.  Significantly, there is no dispute that Plaintiff's *initial* agreement with Postmates did

not contain any arbitration clause.  Postmates's motion to compel arbitration depends instead on

the Postmates *Modified* Terms, which do include an arbitration clause.  Postmates Modified

Terms 8-10.  Postmates argues that the Postmates Modified Terms are enforceable "because

Plaintiff was on notice of the revised terms, and consented to be bound by the revised contract."

ECF No. 77 ("Uber & Postmates Reply"), at 6.  Plaintiff disagrees, countering that Postmates

cannot establish "that Plaintiff was aware of any update," let alone that "Plaintiff affirmatively

assented to be bound by [the revised terms]."  Pl.'s Opp'n 14.  Confronted with similar facts,

courts have reached different conclusions with respect to the enforceability of such modified

terms.  *Compare, e.g.*, *Schnabel*, 697 F.3d at 113 ("[T]he email did not provide sufficient notice

to the plaintiffs of the arbitration provision, and the plaintiffs therefore could not have assented

to it solely as a result of their failure to cancel their enrollment in the defendants' service."), *with*

*Starkey v. G Adventures, Inc.*, 796 F.3d 193, 197 (2d Cir. 2015) ("[Defendant's] emails thus

sufficiently directed [the plaintiff's] attention to the Booking Terms and Conditions by means of

a hyperlink and language advising [the plaintiff] to click on the hyperlink.").

The Court need not and does not resolve the parties' disagreement because Postmates's

motion to compel arbitration fails for a more fundamental reason: The initial agreement that

Plaintiff signed unambiguously prohibits unilateral modification.  Instead, it provides that "[t]his

Agreement may be amended *only* by a written document executed by both Parties, which may

include electronic signatures."  Postmates Terms 6 (emphasis added).  By conspicuous contrast,

another provision in the agreement specifies that "Postmates reserves the right to update the

Postmates' Privacy Policy at any time without notice to Merchant."  *Id.* at 2.  And even more to

the point, the Postmates Modified Terms, which Plaintiff did not sign, provide that "Postmates

may update or modify this agreement at any time without prior notice, and such changes will be

effective immediately."  Postmates Modified Terms 11.  The problem for Postmates is that the

initial contract, by its plain terms, allowed for modification only by a written document signed by both parties. It follows that the Postmates Modified Terms, which were not signed by Plaintiff, are not effective as to Plaintiff and that the original agreement, which concededly includes no arbitration agreement, governs their relationship. *See* Cal. Com. Code § 2209(2) ("A signed agreement which excludes modification or rescission except by a signed writing cannot be otherwise modified or rescinded."); *Hoston v. J.R. Watkins Co.*, 300 F.2d 869, 872 (9th Cir. 1962) ("It . . . appears to be the law of California that an express provision in a contract . . . to the effect that a document constitutes the entire agreement between the parties and shall not be varied, changed or modified except in writing signed by the parties, is a valid provision.").[7] Accordingly, Postmates's motion to compel arbitration must be and is denied.

## CONCLUSION

For the reasons stated above, the Court grants the motions of Grubhub, Uber Eats, and DoorDash to compel arbitration. In addition, the Court grants their requests to stay this action pending these arbitrations. *See* 9 U.S.C. § 3 ("[T]he court . . . , upon being satisfied that the issue involved in such suit or proceeding is referrable to arbitration . . . , *shall* on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." (emphasis added)); *Katz v. Cellco P'ship*, 794 F.3d 341, 347 (2d Cir. 2015) ("[T]he text, structure, and underlying policy of the FAA mandate a stay of proceedings

---

[7] Because the original Postmates contract includes a California choice-of-law provision, Postmates Terms 6, the Court applies California law to issues of contract interpretation (as opposed to formation). In any event, the result would be the same under New York law. *See* N.Y. Gen. Oblig. Law § 15-301(1) ("A written agreement . . . which contains a provision to the effect that it cannot be changed orally, cannot be changed by an executory agreement unless such executory agreement is in writing and signed by the party against whom enforcement of the change is sought."); *TrueNorth Cap. Partners LLC v. Hitachi Metals, Ltd.*, 723 F. App'x 22 (2d Cir. 2018) (summary order) ("New York law . . . enforces the requirement of a signed writing before the parties may depart from a contractual term.").

when all the claims in an action have been referred to arbitration and a stay requested.").  By

contrast, Postmates's motions to compel arbitration and for a stay are denied.  Postmates shall

answer the Complaint within **twenty-one days of the date of this Opinion and Order**.  *See*

ECF No. 54.[8]  By separate Order, the Court will schedule an initial conference as to Postmates.

The Clerk of Court is directed to terminate ECF Nos. 51, 58, and 63.

SO ORDERED.

Dated: March 1, 2022
New York, New York

_____
JESSE M. FURMAN
United States District Judge

---

[8]      In a footnote in its reply memorandum of law, Postmates posits that, even if the
Postmates Modified Terms do not apply, "Plaintiff's claim would still be subject to dismissal"
due to a forum selection clause in the original contract.  Uber & Postmates Reply 9 n.3; *see also*
Postmates Terms 5 ("The Parties expressly consent to the exclusive jurisdiction and venue of the
state and federal courts located in San Francisco County, California.").  The Court does not reach
the issue here as a party may not raise an issue in such a perfunctory fashion.  *See, e.g.*, *Medacist
Sols. Grp., LLC v. CareFusion Sols., LLC*, No. 19-CV-1309 (JMF), 2021 WL 293568, at \*5
(S.D.N.Y. Jan. 28, 2021) ("An argument 'relegated to a footnote . . . does not suffice to raise [an]
issue.'" (quoting *Pirnik v. Fiat Chrysler Autos., N.V.*, 327 F.R.D. 38, 43 n.2 (S.D.N.Y. 2018)).